# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| | ) CASE NO. 2:17-cv-00826-jfc |
| **Margaret Mazur, Plaintiff,** | ) |
| **Pro Se** | ) Judge Conti |
| | ) |
| **vs.** | ) **BRIEF IN SUPPORT OF MOTION** |
| | ) **FOR SANCTIONS FOR** |
| | ) **SPOLIATION &** |
| **Southwestern Veterans Center &** | ) **MANUFACTURING EVIDENCE** |
| **Department of Military and Veterans Affairs** | ) DATE: October 14, 2018 |
| **Defendant(s)** | ) JURY TRIAL DEMANDED |

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION AND MANUFACTURING EVIDENCE

**NOW COMES** the Plaintiff, Ms. Mazur, and moves this Court pursuant to Federal Rule of Civil

Procedure 37(b) and this Court's inherent power to enter an order granting default judgment

against Defendants Southwestern Veterans Center (SWVC) and Department of Military and

Veterans Affairs (DMVA) as sanction for willful withholding and spoliation of relevant

evidence. Ms. Mazur states as follows:

### SPOLIATION OF EVIDENCE

1. **May 16, 2016 Bank Sheet from First National Bank (Teller Becky) destroyed by**

   **SWVC: Exhibit 1 (#7-9)** shows that Darren Lindsay (SWVC) received the official May 16,

   2016 Bank Sheet (8 ½ X11") from Becky and that the amount of the Bank Sheet added up to

   the amount of the replenishment check. **Exhibit 2** shows that Defendants claim they did not

   preserve this evidence. This evidence is relevant because Ms. Mazur stated in the Pre

   Disciplinary Conference (PDC) of May 26, 2016 that she used the Bank Teller Sheet to

   verify that she received the correct amount from the bank.  Defendants have stated under oath

in depositions that Ms. Mazur did **not** count the money at the bank. Their statements are based on assumptions as they have no first hand knowledge and were not at the bank when the money was withdrawn. Failure to provide this document in discovery and claiming that they did not preserve it hinders Ms. Mazur's ability in disproving Defendants repeated false statements that "she did **not** count the money at the bank" and that "she did not bring the full amount of the withdrawal back to the SWVC Accounting office".  (**Exhibit 3 (#3)**)

2. **May 16, 2016 Sheet from Becky (Bank Teller) given to Ms. Mazur with Amounts from First National Bank destroyed by SWVC:** Ms. Mazur received a small piece of paper (3X5") from Becky on May 16, 2016 after she received all the packets of money listing the amounts of each denomination (Ex.: 2500, 1100, 500, 184, etc.) These amounts matched the amounts listed on the Bank Sheet that Ms. Mazur used to verify amounts received. This piece of paper is mentioned by Dusty Miller in the police report (#91034 under seal with the Court). This paper was confiscated by Darren Lindsay in the afternoon of May 16, 2016. When Ms. Mazur requested any and all documentation of SWVC that relates to the bank disbursement of $4,784, they stated they were not in possession of any such documents (**Exhibit 2 (#2)**). Neither the official bank sheet showing the disbursement nor the talley sheet was provided to Ms. Mazur. The question is: What did Darren Lindsay do with the documents and were they destroyed instead of being preserved or simply still in the Agency possession and not provided?

3. **May 16, 2016 SWVC video footage from parking lot and front desk not preserved:** This video footage would have shown the truth of Ms. Mazur's details and timelines in her witness statement. Darren Lindsay's and Sharon Warden's statements of events in their

witness statements would be disproven by the video footage. The order of what and when things happened are in contention. The order of when things happened is very relevant as time frames are extremely important to determine who's statement is credible. Ms. Mazur's employer stated Sharon Warden didn't have enough time to take the money that is alleged to have been missing/stolen and doesn't even believe the alleged missing $500 was ever in her possession. (**Exhibit 3 (#3)**) Since there were **NO** witnesses and SWVC/DMVA were operating on a "belief or assumption"; SWVC's obligation to preserve and provide video footage was crucial to set a clear time frame of when things happened and to verify whose statements of events regarding the alleged missing $500 is accurate.

4. **May 18, 2016 Police Report #91034 evidence to arrest Ms. Mazur destroyed or not provided:** Rich Adams' deposition answer states that DMVA legal received the evidence (**Exhibit 4, Pg 32 Ln 1-3**) allegedly stated by Detective Thomas Nee that he had enough evidence to arrest and handcuff Ms. Mazur. Interrogatories state that SWVC/DMVA did not retrieve police report #91034 evidence which clashes with Rich Adams' deposition testimony under oath. (**Exhibit 5, Pg 9 #18**) This evidence claimed by Rich Adams to be in possession of legal goes to the center of the controversy of whether or not such evidence exists and is relevant. If Rich Adams' statement made under oath is true, then that evidence is still in the possession of Agency Counsel (legal) and not provided during discovery or was willfully destroyed to keep Ms. Mazur from receiving the evidence through discovery. Rich Adams in depositions stated under oath that he relied upon the "evidence" that Thomas Nee purported to have enough evidence to arrest and handcuff Ms. Mazur in his decision to suspend Ms. Mazur without pay. Production of the "evidence" is crucial to show that the Agency's stated

reasons for disparate treatment of Ms. Mazur was pretext.

Ms. Mazur exhausted attempts to exercise her due process rights to see and rebut the alleged evidence. Ms. Mazur deserves the alleged evidence in possession of SWVC/DMVA legal in order to have the opportunity to rebut the alleged evidence and exercise her due process rights to rebut the "evidence". The alleged evidence cited resulted in loss of pay for Ms. Mazur and documents residing in her employment record branding her as a thief. The false charges documented and remaining in her employment record has restricted her ability to obtain meaningful employment since May 26, 2017. Either SWVC/DMVA has and can provide the alleged evidence as stated by Richard Adams or his sworn testimony is false.

5. **May 26, 2016 written Pre-Disciplinary Conference notes from Jamie Cuthbert, Barry Lowen and Jennifer McClain Miller destroyed:** There are different accounts of what was said in the May 26, 2016 PDC. Ms. Mazur and Jennifer McClain-Miller (**Exhibit 6, Pg 43 Ln 20 - Pg 44 Ln 15**) recollect different versions of what was said and are in contradiction to Jamie Cuthbert's typewritten notes. There are things that were said that are not reflected in the typewritten notes and things that were not said that are in the typewritten notes. This is relevant as there is no way to verify or support the accuracy of the typewritten notes. The notes were destroyed sometime in July 2016 according to Defendants. (**Exhibit 5, Pg 7-8 Doc. Request #9**)

6. **May 26, 2016 Proposed Discipline Letter for Sharon Warden is manufactured evidence:** Darren Lindsay is listed as the author of the proposed discipline letter for Sharon Warden. (**Exhibit 7**). Darren Lindsay adamantly denies under oath  that he had anything to do with this letter and had never seen it prior to his deposition. (**Exhibit 8, Pg 54 Ln 7 - Pg 55 Ln**

**20**) This is highly relevant as it is apparent that someone from SWVC or DMVA other than Darren Lindsay authored and drafted the proposed discipline without Darren Lindsay's knowledge. Jamie Cuthbert signed a letter of discipline citing an oral reprimand for Sharon Warden on July 1, 2016, (**Exhibit 9**) yet Defendants refuse to state who authored the proposed discipline letter (**Exhibit 7**). The document is fraudulent and manufactured to create the impression that Sharon Warden was disciplined. Darren Lindsay denies that he authored or signed the document. Use of manufactured evidence constitutes the crime of forgery and is deserving of severe sanctions. The manufactured document does not even cite any proposed discipline despite the title of the document. The absurdity of a "written" oral reprimand only shows the wide disparity and absurdity of disparate disciplinary treatment of Ms. Mazur and Sharon Warden when both had possession of the money and the opportunity to take the alleged missing $500. The Agency putting forth a forged document proves pretext in their reasons provided for the disparate treatment and is deserving of severe sanctions.

7. **Sharon Warden's June 3, 2016 PDC was staged:**  On June 2, 2016, a meeting was held to determine discipline for Sharon Warden and Ms. Mazur. The email that Kim Kreiser sent to Jerry Beck on August 12, 2016 stated:

> "A meeting was held with Chief Counsel, Mike Barrett on June -2nd;-Andrew Ruscavage, Kim Kreiser, Jennifer McClain- Miller, and via phone Rick Adams, Barry Lowen, and Jamie Cuthbert. It was decided that we could not charge anyone with theft, but Margaret was ultimately responsible for the money until it was to be counted. She left it unattended on Ms. Warden's chair. Although Ms. Warden found the money on her chair, she was not ultimately responsible for the money; Ms. Mazur placed Ms. Warden in that situation. Ms. Warden was counseled on the matter. It was decided to offer a pre-grievance settlement (PGS) for a time-served suspension with a final warning."

Notice that the July 1, 2016 oral reprimand letter (**Exhibit 9**) isn't mentioned to Jerry Beck by Kim Kreiser in the August 12, 2016 email. It is stated as "Ms. Warden was counseled on

the matter." Additionally, in the Document 26 discovery request regarding Ms. Mazur's discipline, it is stated:

> "The grievance was filed by the steward on June 1, 2016. However, prior to that time, a decision had been made regarding the discipline to be imposed and that it would be a time-served suspension."

The June 2, 2016 decision was prior to Sharon Warden's June 3, 2016 PDC. It is improper to reach a decision prior to the PDC.  Jennifer McClain-Miller was asking leading questions in Sharon Warden's PDC to elicit coached answers. She gave Sharon Warden the opportunity to give further information that she and Sharon Warden had previously discussed before the PDC: "I feel like you're forgetting something…" (**Exhibit 10, Pg 2**) Sharon Warden's answer: "I think we counted the canteen." (**Exhibit 10, Pg 3**) Since Sharon Warden and Ms. Mazur started their work day at 6 a.m. on May 16, 2016, they left at 2 p.m. **before** the canteen closed for the day. The counting of the canteen is regularly counted each day at 3 p.m., the time when the canteen closes. Hence, video footage from May 17, 2016 would show that Sharon Warden counted the money from the canteen by herself prior to her clocking in at 8 a.m.  Ms. Mazur's May 19, 2016 witness statement states that Sharon Warden left the canteen funds on the filing cabinet unattended on the morning of May 17, 2016 (**Exhibit 11, Pg 2 Ln 29**) Sharon Warden's PDC was a sham and is an attempt to give the appearance that SWVC/DMVA was investigating her. A decision before the June 3, 2016 PDC was clearly made for Sharon Warden to only receive 'counseling'. In Sharon Warden's PDC, she admitted leaving money unattended several times. The reason provided for the disparate discipline to Ms. Mazur was the false statement by Kim Kreiser that Ms. Mazur left money unattended: "Based on the facts of the case, Margaret was responsible for the money

and she left it unattended; that's the difference." Ms. Mazur never left money unattended as the money was in her possession and control at all times **until** Sharon Warden took possession of the money. The stated reason for the disparate discipline to Ms. Mazur is not provable and is pretext for the real reason of discrimination.

8.   SWVC had control over the evidence and had an obligation to preserve it when they initiated a police report for theft on May 18, 2016 and when Ms. Mazur:

   a.   Verbally opposed SWVC/DMVA actions and accusations at the May 16, 2016 PDC.

   b.   Verbally opposed Kim Kreiser's and Jennifer McClain-Miller's actions regarding the Final Warning Letter received by Ms. Mazur on June 13, 2016.

   c.   Opposed SWVC/DMVA's disparate actions in an email sent to Jamie Cuthbert on June 1, 2016. (**Exhibit 12**)

   d.   Opposed SWVC/DMVA actions in an email sent to Andrew Ruscavage on June 14, 2016. (**Exhibit 13**)

   e.   Opposed Kim Kreiser's and Jennifer McClain-Miller's illegal actions regarding the Unwarranted Suspension and Final Warning Letter without evidence in an email dated July 12, 2016 and July 13, 2016. (**Exhibit 14**)

   The duty to preserve evidence attaches *when litigation can be reasonably foreseen*. (See *Medcorp, Inc. v. Pinpoint Technologies, Inc*. (D.Colo. June 15, 2010) 2010 WL 250030113.

9.   The destruction or loss was accompanied by a "culpable state of mind" by SWVC and DMVA agents as they initiated a police report on May 18, 2016 and this police report (#91034) was active with a status of "investigation ongoing" until February 28, 2018. They had the obligation to preserve ALL evidence to make it possible for a thorough investigation

to take place and for Ms Mazur to have the opportunity to have the due process right to rebut

alleged evidence used to justify wrongful and disparate discipline. SWVC/DMVA had the

duty to save all paperwork pertaining to Ms. Mazur's discipline as they were forewarned that

litigation was probable considering the multiple events of opposition by Ms. Mazur for

discipline received.

> Spoliation inference rule is a negative evidentiary inference.  When applying the rule,
> courts will review the altered document with inference against the spoliator and in favor
> of the opposing party.  The theory behind spoliation inference is that when a party has
> destroyed evidence, it shows that the party had consciousness of guilt or other reasons to
> avoid evidence.  Hence, the court will conclude that the evidence was not in spoliator's
> favor.

> American Bar Association Rule 3.4 prohibits a lawyer from destroying or assisting
> another in destroying evidence pertaining to a case.  Likewise Title 18 of United States
> Code Sections 1503, 1510, 1512 and 1519 prohibits a party from destroying or assisting
> another in destroying evidence, and provides for criminal prosecution against the
> wrongdoer.  Under Title 18 United States Code Section 1519, a wrongdoer can be fined
> in huge amounts and imprisoned up to 20 years.

10. The evidence that was destroyed or not provided through discovery was highly "relevant" to

the claims by Ms. Mazur. Ms. Mazur has been robbed of the opportunity to use the above

cited evidence to rebut the claims made against her. The evidence was destroyed as it

interfered with and did not support SWVC/DMVA's plan to charge Ms. Mazur with a crime

of theft. There is no valid reason to destroy evidentiary documents/video footage when

discipline against an employee is decided and the evidentiary documents or video could show

the truth of the matter. Video footage would have made it possible to answer "**admitted**" in a

large portion of discovery in **Exhibit 5 Page 1-9**. Defendants denied Ms. Mazur her due

process right to challenge and rebut the Employer's "evidence" they supposedly had to

support discipline against her. Ms. Mazur has a due process right to have an opportunity to

rebut whatever "evidence" the employer has to discipline her. An Employer acting on mere "belief"or assumptions, bias and hearsay to discipline/fire an employee is highly improper. Destruction, forgery and failure to provide the above documents and video footage is highly deserving of sanctions.

11. If the video footage from the SWVC parking lot and from the front desk of SWVC had been preserved and provided, the footage would have shown and been used to refute Darren Lindsay and Sharon Warden's version of events listed in their witness statements made on May 19, 2016. The video footage would have a clear timestamp of:

(a) when Ms. Mazur left and returned from the bank.

(b) when Sharon Warden came back to the accounting office after Ms. Mazur returned from the bank.

(c) when Ms. Mazur went out to the parking lot to check her car.

(d) when Darren Lindsay returned to the facility.

(e) when Sharon Warden came out to the parking lot after sending Ms. Mazur out to check her car.

(f) the order of events in the parking lot.

(g) when Darren Lindsay and Ms. Mazur left the parking lot and headed to the accounting office.

(h) when Sharon Warden returned to the accounting office from her smoke break.

A reasonable factfinder could conclude that the evidence that was not preserved would have supported the claims by Ms. Mazur. If the evidence would have supported the claims of SWVC/DMVA, they would have preserved the evidence to support their claims.

Spoliation of evidence is an act that is prohibited by American Bar Association's Model

Rules of Professional Conduct, Rule 37 of Federal Rules of Civil Procedure, and Title 18 United States Code.  Sanctions for spoliation are preventative, punitive and remedial in nature.

12. The spoliation of evidence mentioned above and the manufacturing of documents displays deceit and lack of concern by SWVC/DMVA to follow  laws, rules, regulations and provide only truthful and verified facts to support their actions. The Agency is **required** to do a fair and thorough investigation prior to taking disciplinary action. Commonwealth Disciplinary rules state:

> *Investigation*
> A thorough and objective investigation of facts and circumstances surrounding the incident must be conducted prior to taking disciplinary action. The investigation must include an interview with the employee in which the employee is provided with the specifics of the charges and is given the opportunity to explain their actions.  If a union-covered employee requests it, they have the right to union representation at the investigatory interview. This is known as the employee's "Weingarten right."
>
> Before disciplinary action is taken, it is important to determine that there is just cause for that action. There are seven criteria for demonstrating just cause:
> - The employee was forewarned of the possible consequences of their conduct (e.g. at employee orientation or in a management directive)
> - The rule is reasonably related to the orderly, efficient and safe operation of the commonwealth's business and/or the performance expected of the employee.
> - There was a thorough investigation into the employee's conduct.
> - The investigation was conducted fairly and objectively.
> - **There is substantial evidence that the employee acted as charged. (Emphasis added)**
> - The commonwealth has applied its rules equally and without discrimination to all employees.
> - The degree of discipline was related to the seriousness of the offence and the employee's service record.

13. The facts show that a fair and thorough investigation was **not** conducted. There cannot be a fair and thorough investigation when there are contradictions in statements unresolved, evidence not being preserved in the light of opposition, and acting on "beliefs" instead of

evidence to discipline Ms. Mazur. SWVC/DMVA are accustomed to being the final word on

whatever they decide without being held accountable for their actions as evidenced by

Andrew Ruscavage stating: "Then at what point does someone sit her down and explain there

is no appeal process?" (**Exhibit 15**)

> (*Victor Stanley, Inc. v. Creative Pipe, Inc*. (D.Md. Sept. 9, 2010) ___F.R.D. ___, 2010
> WL 3530097 ("*Victor Stanley II*"); *see Leon v. IDX Systems Corp*. (9th Cir. 2006) 464
> F.3d 951 (duty to preserve); *Henry v. Gill Indus*. (9th Cir. 1993) 983 F.2d 943, 948
> (prejudice is when spoliation substantially denies a party the ability to support or defend
> the claim).)

14. SWVC/DMVA's wrongful actions have prejudiced Ms. Mazur's ability to present important

evidence that would have lended further support for her case and rebutted the witness

statements of Darren Lindsay and Sharon Warden before a jury against the Defendants. The

destroyed or evidence not produced would not support SWVC's and DMVA's version of

what happened regarding the alleged missing $500 and the disparate treatment afforded Ms.

Mazur.

## CONCLUSION

For the reasons stated above, Ms. Mazur respectfully asks the Court to sanction the Defendants

and grant a default judgment against Defendants for purposely failing to preserve highly

relevant evidence that goes toward the truth of the matters addressed or such other actions that

the Court determines.

/s/ Margaret Mazur   October 14, 2018

## CERTIFICATE OF SERVICE

I, Margaret Mazur, certify that the **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION AND MANUFACTURING EVIDENCE**  has been electronically served to the following:


Scott Bradley
sbradley@attorneygeneral.gov


*/ s / Margaret Mazur, Pro Se  September 14, 2018*

243 Ekastown Rd
Sarver, PA 16055
724-602-2930
margmystr@gmail.com