IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET MAZUR, | } |
| | } No. 2:17-cv-00826-JFC |
| Plaintiff, | } |
| | } |
| vs. | } Judge Conti |
| | } |
| SOUTHWESTERN VETERANS CENTER and | } |
| DEPARTMENT OF MILITARY AND VETERANS | } |
| AFFAIRS, | } |
| | } *Electronically Filed.* |
| Defendants. | } |

**RESPONSE TO PLAINTIFF'S MOTION FOR
SANCTIONS FOR SPOLIATION AND MANUFACTURING EVIDENCE (Doc. # 112)**

AND NOW, come the defendants, Southwestern Veterans Center ("SWVC") and Department of Military and Veterans Affairs ("DMVA"), by their attorneys, Scott A. Bradley, Senior Deputy Attorney General, and Keli M. Neary, Chief Deputy Attorney General, Chief, Litigation Section, and respond to the Motion for Sanctions for Spoliation and Manufacturing Evidence (Doc. # 112) previously filed by Plaintiff in this matter:

1. Plaintiff initiated this *pro se* employment rights action by filing a complaint with this Court on June 22, 2017. See Complaint (Doc. # 1).

2. The Defendants answered the Complaint on August 11, 2017, and the parties engaged in discovery. Discovery is now closed.

3. Plaintiff has now filed the present Motion for Sanctions for Spoliation and Manufacturing Evidence (Docs. # 112-113). By Text Order (Doc. # 114) entered on October 16, 2018, Defendants were directed to respond to the motion by November 5, 2018.

4. By this motion, Plaintiff seeks "an order granting default judgment against Defendants Southwestern Veterans Center (SWVC) and Department of Military and Veterans Affairs

(DMVA) as sanction for willful withholding and spoliation of relevant evidence." Motion (Doc. # 112), at 1.

5. In Tabon v. University of Pennsylvania Health System, 2012 WL 2953216 (E.D.Pa. 2012), the court set forth the applicable legal standard for claims of spoliation:

> 'Spoliation [of evidence] occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012)(citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995)). '[A] finding of bad faith is pivotal to a spoliation determination.' Id. at 79. '[T]he burden of proof on a spoliation claim lies with the party asserting that spoliation of evidence has taken place.' Williams v. Klem, No. 07-1044, 2010 WL 38123 50, at *2 (M.D.Pa. Sept. 22, 2010)(citing Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107-08 (3d Cir. 2001)). '"A party that reasonably anticipates ensuing litigation has an affirmative duty to preserve evidence that may be relevant."' AMG Nat'l Trust Bank v. Ries, No. 06-4337, 2011 WL 3099629, at *4 (E.D.Pa. July 22, 2011) (quoting Travelers Prop. Cas. Co. v. Cooper Crouse–Hinds, LLC, No. 05-6399, 2007 WL 2571450, at *4 (E.D.Pa. Aug.31, 2007)). In employment discrimination cases, a duty to preserve arises when the defendant receives notice of an EEOC charge. Chirdo v. Minerals Techs., Inc., No. 06-5523, 2009 WL 2195135, at *3 (E.D.Pa. July 23, 2009).

Tabon v. University of Pennsylvania Health System, 2012 WL 2953216, at *2.

6. The Tabon court went on to explain the sanctions available on a founded claim of spoliation:

> Upon a showing of spoliation, the court must determine whether sanctions are appropriate by considering:
>
>> '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.'
>
> Bull, 665 F.3d at 74 (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)). Potential sanctions include: 'dismissal of a claim or the entry of judgment in favor of a prejudiced party; the suppression of evidence; an adverse evidentiary inference, such as the

"spoliation inference"; fines; and attorney fees and costs.' <u>Id.</u> at *4 (*citing* <u>Paramount Pictures Corp. v. Davis</u>, 234 F.R.D. 102, 110-11 (E.D.Pa. 2005)).  However, '"[t]here is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court."'  <u>AMG</u>, 2011 WL 3099629, at *4 (*quoting* <u>Paramount</u>, 234 F.R.D. at 111).

  'The spoliation inference permits a fact finder to infer that the "destroyed evidence might or would have been unfavorable to the position of the offending party."'  <u>Paramount</u>, 234 F.R.D. at 112.  A spoliation inference is inappropriate when the circumstances indicate the evidence has been lost or accidently destroyed.  <u>Bull</u>, 665 F.3d at 79 (*citing* <u>Brewer</u>, 72 F.3d at 334).

<u>Tabon v. University of Pennsylvania Health System</u>, 2012 WL 2953216, at *3.

    7.  Plaintiff goes on in her motion and brief to identify and argue a number of instances where she believes that the Defendants willfully destroyed or manufactured evidence related to this matter.

    8.  These include documents from the bank, SWVC video footage and the handwritten notes from Plaintiff's May 26, 2016 PreDisciplinary Conference.

    9.  Plaintiff also asserts that the June 3, 2016 PreDisciplinary Conference for another employee involved in this incident "was staged."  Motion (Doc. # 112), at ¶ 7.

    10.  The Defendants oppose the motion.

    11.  With respect to the Bank Teller Sheets, the record appears to show that Darren Lindsay obtained a teller sheet which listed the denominations of the cash Plaintiff received from the bank on May 16, 2016.  However, it does not appear that this sheet was made part of the investigation.  Nor does it appear that Plaintiff made any request to see this teller sheet during her disciplinary process.

    12.  Undersigned counsel made a request for the document in order to respond to Plaintiff's discovery request but was advised that the document was not available.  Accordingly,

in response to Plaintiff's request for this document, Plaintiff was advised that "Defendants are not in possession of this documents." (Doc. # 113-2), at 1 (re DOCUMENT REQUEST 1).

13. In addition, the Deputy Commandant at SWVC, Barry Lowen, has executed an affidavit, which provides further insight into this issue:

> 11. I have been advised by SWVC's Accountant, Darren Lindsay, that the bank teller sheets used on May 16, 2016, were just scrap pieces of paper that were used to write the denominations of the bills and the quantity of each bill denomination that SWVC was to receive from the bank. The teller at the bank would also have a similar type note which would be on scrap paper as well.
>
> 12. The bank teller would usually keep her paper unless SWVC requested it to compare the bill denominations and quantities against SWVC's sheet.  These papers were used for the purpose of letting the SWVC employee going to the bank know what they would be receiving from the bank in terms of bill denominations and quantities of each bill denomination.
>
> 13. The Accounting Department would do this so that there wouldn't be any question as to how many stacks of money by denomination SWVC should be getting.  Typically, the Accounting Department never kept the sheets after returning to the facility and counting the funds.
>
> 14. Thus, it appears that the sheets from May 16, 2016, were discarded on or about that same day.

Lowen Affidavit, at ¶¶ 11-14.

14. With respect to the handwritten notes taken by any SWVC/DMVA personnel at Plaintiff's May 26, 2016 PDC, the Defendants responded to Plaintiff's discovery request as follows:  "This request is Objected to as it is subject to Attorney/Client privilege; without waiving the foregoing objections, personal written notes were purged in July 2016 after the grievance was settled." See (Doc. # 113-5), at 7-8 (re DOCUMENT REQUEST 9).

15. Further, per Deputy Commandant Lowen:

> 4. At SWVC, it is standard practice for handwritten notes to be taken at a PDC.  These notes are then used to create the PDC minutes.

4

    5.      After the PDC minutes are created, or sometimes after the disciplinary matter comes to a final resolution, all handwritten notes are purged from the disciplinary record and destroyed. However, the PDC minutes are retained.

    6      I have personally reviewed the disciplinary record for this matter and there are no handwritten notes in the file.

Lowen Affidavit, at ¶¶ 4-6.

16. With respect to the video, there was no request for video review or preservation made by SWVC/DMVA during the investigation, nor was such a request made by Plaintiff or her union at that time or thereafter. Consequently, no video was reviewed and/or preserved at the time of the incident or of the investigation.

17. Therefore, the Defendants responded to Plaintiff's discovery request as follows: "Security camera footage at this time was set to be overwritten every sixty (60) days; therefore, Defendants are not in possession of this request." See (Doc. # 113-2), at 1 (re DOCUMENT REQUEST 3).

18. The video equipment employed by SWVC/DMVA does have recording capability, but unless a request is made to pull or preserve video, the system overwrites the previous video within sixty (60) days. Therefore, any available video from May 16, 2016, would have been recorded over by July 15 or 16, 2018. See Lowen Affidavit, at ¶¶ 7-10.

19. Although Plaintiff was suspended on May 26, 2016, Plaintiff returned to work on June 8, 2016, pursuant to a grievance settlement with Plaintiff's union. In July 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC apprised Defendants of the Charge of Discrimination through a notice dated August 10, 2016. Plaintiff did not file the instant suit until June 22, 2017.

20. As stated above, "a duty to preserve arises when the defendant receives notice of an EEOC charge." Tabon v. University of Pennsylvania Health System, 2012 WL 2953216, at *2.

21. Instantly, it appears that, with respect to the tangible evidence identified by Plaintiff, *e.g.*, the teller sheet, the video and the handwritten PDC notes, these were all unavailable soon after Plaintiff returned to work, and well before received notice of Plaintiff's first EEOC Charge of Discrimination on or after August 10, 2016.

22. Thus, based on this timeline, an inference of bad faith does not arise. Indeed, there is no evidence that Defendants acted with bad faith in failing to produce the requested items because there is no indication that this evidence was lost or destroyed after the duty to preserve arose. See Bull v. United Parcel Serv., Inc., 665 F.3d at 79 (finding that a party's withholding of evidence must have been done intentionally to conclude that spoliation occurred)(cited in Tabon, *supra*).

23. Moreover, bank teller sheets, the handwritten PDC notes and surveillance video were purged and overwritten, respectively, in accordance with the Defendants' ordinary business policies and practices. Cf. United States v. Nelson, 2012 WL 2019166, *2 (3d Cir. 2012) (finding no evidence that tapes were destroyed to prevent another party's use of them where prison policy was to recycle tapes)(cited in Tabon, *supra*). Finally, beyond Plaintiff's conclusory allegations, there is no evidence that the Defendants destroyed any evidence as a litigation tactic.

24. Plaintiff also identifies "Evidence showing that the Police had enough evidence to arrest and handcuff Ms. Mazur allegedly in possession of SWVC/DMVA." Motion (Doc. # 112), at ¶ 4. It is undersigned counsel's understanding that while several individuals from SWVC/DMVA spoke with the police, they did not provide any physical evidence to the police. Therefore, there was nothing to produce in discovery. Beyond that, the Defendants cannot know what was in the mind of the police when the statement was made that they had enough to arrest and handcuff Plaintiff. See Lowen Affidavit, at ¶¶ 15-16.

25. Defendants assert that any sanctions are inappropriate because their failure to produce any evidence at issue did not involve bad faith or intentional destruction. Rather, Defendants submit that the evidence is not available as a result of routine business policies and practices at a time when the Defendants were unaware of any pending or imminent legal action. Accordingly, Plaintiff's motion should be denied in this regard.

26. Finally, as far as Plaintiff's claim that evidence regarding Sharon Warden's PreDisciplinary Conference was "manufactured" and that the proceeding was "staged," all such claims are denied. Plaintiff was provided with documents related to Sharon Warden's PreDisciplinary Conference. These documents speak for themselves.

WHEREFORE, the Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Sanctions for Spoliation and Manufacturing Evidence (Doc. # 112).

Respectfully submitted,

JOSH SHAPIRO
Attorney General

s/ Scott A. Bradley
Scott A. Bradley
Senior Deputy Attorney General
Attorney I.D. No. 44627

Keli M. Neary
Chief Deputy Attorney General

Office of Attorney General
Litigation Section
1521 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Phone: (412) 565-3586
Fax:    (412) 565-3019

Date: November 5, 2018