## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Margaret Mazur, Pro Se | ) | **2:17-cv-00826-JFC** |
| Plaintiff, | ) | |
| | ) | **Judge Conti** |
| v. | ) | |
| | ) | **PLAINTIFF'S BRIEF IN SUPPORT OF** |
| Southwestern Veterans Center and | ) | **MOTION FOR SUMMARY JUDGMENT** |
| Dept. of Military and Veterans Affairs | ) | |
| Defendants. | ) | **Filed Electronically: January 17, 2019** |

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I.   Introduction.................................................................................................... 1
II.  Summary of the Case…..................................................................................... 5
III. Statement of Undisputed Facts........................................................................ 6
IV.  Governing Standard.......................................................................................... 6
V.   Legal Argument
    A. Discrimination/Disparate Treatment Based on Race…............................... 7
    B. Harassment Leading to a Hostile Working Environment…........................ 16
    C. Retaliation for Having Engaged in Opposition to Agency Violations of Law, 17
       Rule Policy and Regulation Under EEOC's Opposition Clause
    D. Pretext for Agency's Actions…................................................................... 19
VI.  Evidentiary Hearing Still Pending For Bad Faith Issues…............................. 20
VII. Conclusion........................................................................................................ 20

## I.   INTRODUCTION

**Supporting Evidentiary Materials are cited by the relevant paragraphs in the**

**Statement of Genuine Material Facts not in dispute. Ex: [¶#]**

1.  Plaintiff, hereafter Margaret Mazur, moves for a Motion for Summary Judgment in the above entitled case. Margaret Mazur contends that due to admissions, discovery documents, depositions, her Affidavit and case history that there are no genuine issues of material facts in dispute. The issues in the above captioned Complaint of Discrimination, Disparate Treatment, Retaliation and the creation of a Hostile Working Environment (HWE) all stem from a false accusation and unsubstantiated charge of theft (3921) against Margaret Mazur

which resulted in an unpaid suspension without pay, loss of reputation, and eventually loss of a 10-year career as an employee of the State of Pennsylvania.

2.  Margaret Mazur (white) worked in a three-person Accounting office with her supervisor, Darren Lindsay (black), and her similarly situated co-worker, Sharon Warden (black). [¶1]

3.  On May 16, 2016, after Margaret Mazur returned to the Accounting office from participating in laundry inventory from 6 a.m. to approximately 11 a.m., Sharon Warden asked if she would make a bank run for the replenishment of Residents Funds. No Agency vehicle was available so Margaret Mazur used her own vehicle for the bank run. At the bank, she counted the money with the teller using the teller's sheet to verify the amount received matched the replenishment check. She brought the money directly back to the Accounting Department to turn over to Sharon Warden, who was responsible for disbursing residents funds. [¶5]

4.  Margaret Mazur kept the money under her care and observation in the locked Accounting office until Sharon Warden returned to the office from a smoke break and took control of the replenishment money [¶38]. Sharon Warden began counting the replenishment money alone. After a short period of time, she requested Margaret Mazur help her with the completion of the count. Margaret Mazur assisted with the remainder of the count by verifying that banded money packets contained the correct amount as labeled. [¶6]

5.  At the end of the count, Sharon Warden made a statement that $500 was missing. There was no confirming count to verify her statement that $500 was missing was true. [¶8] Immediately after Sharon Warden made the statement that $500 was missing, she asked Margaret Mazur to go check her car [¶41] and she called the bank and left a message asking them to verify that they were not over by $500. Margaret Mazur complied and left Sharon

Warden in the Accounting office alone with the replenishment money. [¶8] The bank later returned the call and left a message that the bank funds balanced and they were not over.

6. Within 3 to 5 minutes, while Margaret Mazur was out in the parking lot, Sharon Warden came out with Julia Myers to go on a smoke break. [¶10] Several employees had keys to the Accounting office. While Sharon Warden was on a smoke break, Margaret Mazur and her supervisor, Darren Lindsay, returned to the Accounting office to find the replenishment money left unsecured and unattended on top of the file cabinet [¶41]. Darren Lindsay followed Margaret Mazur into her office and drilled her about the bank run. He allowed Sharon Warden to join him in the interrogation when she returned from her smoke break. [¶13] After the hostile interrogation, Darren Lindsay had Sharon Warden (alone) write down the number of stacks on the file cabinet. [¶8]

7. Margaret Mazur asked her supervisor to search her car, her purse, her office and her person before leaving for the day and he refused. [¶17] When Margaret Mazur left the Accounting office to clock out at 2 p.m., the replenishment money was still on top of the file cabinet with Sharon Warden and Darren Lindsay still in the Accounting office [¶7].

8. On May 18, 2016, two days after $500 was alleged missing by Sharon Warden [¶10], Margaret Mazur's black supervisor, Darren Lindsay, initiated a Police Report of Theft wherein Margaret Mazur was listed as the number one suspect [¶18]. Darren Lindsay admitted talking to the police at least three times. The police never questioned Margaret Mazur regarding the alleged missing $500. Four days after the alleged missing $500, Darren Lindsay instituted a Funds Management Policy [¶21].

9.  On May 25, 2016, one day prior to Margaret Mazur's Pre-Disciplinary Conference (PDC) on the charge of theft, Defendants participated in a conference call with Police Detective Thomas Nee. According to the sworn testimony of the participates, Detective Nee stated that he had enough evidence to arrest Margaret Mazur and take her out in handcuffs. Defendants claim that they did not obtain the evidence cited by Detective Nee [¶29].

10. Defendants then took matters into their own hands and decided to charge Margaret Mazur with the crime of theft and DMVA agents had Rich Adams pre-sign a suspension without pay for Margaret Mazur [¶39].

11. On May 26, 2016, Margaret Mazur was notified that she was being charged with the crime of theft at a PDC scheduled for 8:30 a.m. She was given 15 minutes to prepare to defend against the serious charge of the crime of theft when the normal time given to an employee is 24 hours [¶22]. Margaret Mazur did not have time to contact and retain a lawyer. Had she had time to contact a lawyer, the lawyer would have demanded proof/evidence for the charged crime and would have pointed out that the Defendants were unlawfully charging theft in a PDC as they do not have the authority to charge for a crime of theft [¶49].

12. Margaret Mazur attended the PDC without a lawyer and was attacked and accused of theft of the alleged missing $500. She was accused of not counting the money at the bank, leaving the money unattended, and violating Agency policy(s) [¶46]. At the conclusion of the PDC, she was told she was being suspended without pay because, according to Kim Kreiser, "the police had enough to charge her" with theft [¶30]. She did not provide any supporting evidence or proof to suspend Margaret Mazur without pay based on the charge of theft. This action was taken while Margaret Mazur was not formally charged by the police and the

Police investigation of theft was still ongoing. The Police Report, obtained through discovery, and in the case record under seal (Doc 51) shows **no** evidence or proof for the charge of theft for which Margaret Mazur was charged and punished by Defendants [¶24].

13. Throughout the PDC, Margaret Mazur denied the charges and requested any evidence/proof for the charges and the Agency refused her due process rights to see evidence/proof against her to have the opportunity to rebut [¶30 & ¶35]. Margaret Mazur requested that she be allowed to take a lie detector test and was refused. After Kim Kreiser's statement, Jamie Cuthbert printed a pre-signed suspension without pay letter from her computer [¶42]. Margaret Mazur was then required to collect her belongings from her office and was escorted out of the building by Jamie Cuthbert [¶48].

14. Jamie Cuthbert took Margaret Mazur's work badge and key and informed her that she was not allowed on the premises. Sharon Warden had already been hired prior to the $500 incident to become the Assistant to Jamie Cuthbert, HR Analyst, who was assigned to investigate the alleged missing $500. Darren Lindsay had a vested interest to protect Sharon Warden and Jamie Cuthbert had a vested interest to protect her newly hired Assistant, Sharon Warden. Between Margaret Mazur's black supervisor, Darren Lindsay and the assigned investigator for the alleged missing $500, Jamie Cuthbert [¶19], they convinced upper management to support Darren Lindsay's decision to blame and punish Margaret Mazur.

## II.  SUMMARY OF THE CASE

The above captioned Complaint was filed on June 22, 2017 and served on Defendants June 23, 2017. Defendants Answer was due within 30 days. On Defendants request, the Court granted an extension of time to answer by August 13, 2017. Defendants filed an answer on August 11, 2017.

The Complaint alleges that Defendants discriminated against Margaret Mazur based on race, disparate treatment, harassment leading to a HWE, being denied her Constitutional 5th and 14th due process rights, and retaliation for having engaged in protected activity through the EEOC opposition clause where she complained to managers about the unfair treatment and violations of Agency "zero tolerance" policies, DMVA work rules and the Commonwealth disciplinary rules. This Motion challenges the Defendants stated reasons for their actions. Their reasons are pretext and Margaret Mazur provides proof that the real reason for their actions was discrimination based on race and disparate treatment. The Employer did not meet their burden to prove their actions were justified as there was no verifiable evidence to support their adverse actions against Margaret Mazur.

## III.  STATEMENT OF MATERIAL FACTS UNDISPUTED

Plaintiff's Statement of Genuine Material Facts Undisputed are provided as a separate document.

## IV.  GOVERNING STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing there is no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat the motion for summary judgment, the responding party must present admissible evidence sufficient to establish any of the elements that are essential to the moving party's case and for which that party will bear the burden of proof at trial. See id.; Taylor v. List, 880 F. 2d 1040, 1045 (9th Cir. 1989). The Court may grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show the movant is entitled to

summary judgment and if the responding party fails to properly address the moving party's

assertion of fact as required by Rule 56(c). See Fed. R. Civ. P. 56(e).

The responding party cannot point to mere allegations or denials contained in the pleadings.

It is not enough for the non-moving party to produce a mere "scintilla" of evidence. Celotex

Corp., at 252. Instead, the responding party must set forth, by affidavit or other admissible

evidence, specific facts demonstrating the existence of an actual issue for trial. See KRL v.

Moore, 384 F. 3d 1105, 1110 (9th Cir. 2004).

## V.  LEGAL ARGUMENT

### A.  DISCRIMINATION BY THE DEFENDANTS IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; SPECIFICALLY ON RACE AND DISPARATE TREATMENT

1.  Darren Lindsay treated Sharon Warden with preferential treatment because of her race and

protected Sharon Warden from discipline for many provable violations of work rules. Some

examples of violations are: she left the money box that she was responsible for unlocked and

unattended on a regular basis [¶3], she got a haircut on company time [¶16], she had $72

missing from the money box that she was responsible for [¶2], she was short of funds by $90

on the day she was going to make a replenishment run [¶4], she regularly had discrepancies

in bank deposit totals she prepared for deposit, she took excessive breaks every day [¶1], she

bullied Margaret Mazur, [Mazur Affidavit ¶16] Darren Lindsay allowed Ashley Chiappelle

(Barry Lowen's secretary at the time) to regularly do part of Sharon Warden's responsibility

of filing. Margaret Mazur's breaks and lunch times were heavily monitored, she was

threatened with PDCs and she was given harsh discipline of a suspension without pay and a

final warning for an unprovable violation of not keeping proper custody and control of

replenishment money [¶40].

> Title VII forbids employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

2. Margaret Mazur was not reimbursed for $1,167.00 in wages lost due to the unjustified suspension without pay. The suspension letter at paragraph 4 stated she would be reimbursed if the charge was found to be unsupported. [Supporting Evidentiary Materials are cited by the relevant paragraph in the Statement of Genuine Material Facts not in dispute. Ex: [¶24]

3. Margaret Mazur and her similarly situated co-worker, Sharon Warden, were charged with the same violations regarding the May 16, 2016  incident where $500 was alleged missing [¶23]. Margaret Mazur was awarded an unpaid suspension and a Final Warning Letter while Sharon Warden was only given an Oral Reprimand for the same charges [¶11 & ¶25]. Defendants participated in Margaret Mazur's May 26, 2016 PDC which resulted in her suspension without pay based on a charge of theft. Their own admissions that they did not have evidence for a charge of theft disproves their cited reasons for an unpaid suspension for Margaret Mazur. Margaret Mazur was deprived of her Constitutional Fifth and Fourteenth Amendment rights to due process. She was not allowed to see or rebut evidence against her for the charge of  theft.

4. On May 18, 2016, Darren Lindsay, a black supervisor and Agent of the Employer, initiated a Police Report for theft in which Margaret Mazur was named as the number one suspect [¶18]. In close proximity to the Police report, Margaret Mazur was charged with the crime of theft and suspended without pay on May 26, 2016 based on a statement at the end of the PDC from Kim Kreiser that the Police had enough evidence to charge her with the reported theft

of $500 [¶30]. Since the Defendants were charging Margaret Mazur with theft, and the police

said they **had** enough evidence, the Defendants are required by the Commonwealth

Disciplinary rules to obtain all available information for the accusation prior to taking

disciplinary action. SWVC is not a law enforcement agency and had no authority to charge

Margaret Mazur through the disciplinary process with the crime of theft. Barry Lowen and

Kim Kreiser are guilty of defamation per se by accusing Margaret Mazur of theft, a criminal

offense, where there was no proof to support the charge. Gordon v. Boyles, 99 P.3d 75, 79

(Colo. App. 2004).

5. Both Sharon Warden and Margaret Mazur were identified in a police report (#91034) as

suspects. Margaret Mazur was charged with theft without a scintilla of supporting evidence

in a May 26, 2016 PDC. Sharon Warden was not charged, investigated, or questioned for

theft [¶23]. Margaret Mazur was suspended without pay which is an adverse action.

Proximity is met as Margaret Mazur was suspended without pay for theft 8 days after she

was identified as the number on suspect in a police report.

> The standard for "adverse action" in the 10th Circuit is to be "liberally construed." Heno
> v. Sprint/United Mgmt. Co. 208 F.3d 847, 857 ( 10th Cir. 2000). Actions which pose no
> immediate consequence but potentially harm future employment prospects may be
> adverse actions. Burlington Industries Inc. v. Ellereth, 524 U.S. 742, 761 (1998).

6. The police did not question either of the identified suspects. The police obtained all their

information from Darren Lindsay and Barry Lowen (neither of whom qualify as witnesses

due to them having no first hand knowledge) [¶30]. The police report in the case file under

seal (Doc #51) shows **no** evidence to charge Margaret Mazur for the crime of theft.

> "Circumstances giving rise to an inference of discrimination" may arise in many
> contexts. For example, the Plaintiff may show actions or remarks by decision makers
> reflecting discriminatory animus, preferential treatment given to employees outside the
> protected class, or questionable timing of an employment decision. Plotke v. White, 405

F.3d 1092, 1101 (10th Cir. 2005).

7. Darren Lindsay conducted the interviews for the "witness" statements collected on May 19, 2016 for Sharon Warden and Margaret Mazur [¶7]. When Darren Lindsay spoke with the police on May 20, 2016, he had previously interviewed Sharon Warden and Margaret Mazur on May 19, 2016 to obtain "witness" statements. He misrepresented the information he gathered to the police [¶18 & ¶20]. By misrepresenting the information gathered, he wrongly influenced the police investigation to focus solely on Margaret Mazur for the alleged theft [¶9]. Margaret Mazur's employee performance review (EPR) [¶18] was given to her on the same day that she was listed in the police report as the number one suspect. Margaret Mazur's 10-year track record of receiving excellent EPRs conflicts with a charge of theft and her Employer's statements that she is dishonest, doesn't do her job to the best of her ability and doesn't follow rules, policies and procedures.

8. Darren Lindsay stated he participated in at least three calls with Detective Nee. One of these calls was a conference call on May 25, 2016 in which Defendants were allegedly told that the Police had enough evidence to arrest Margaret Mazur and take her out in handcuffs [¶29]. None of these alleged calls with the police are included in the police report #91034.

9. A suspension without pay for theft and a final warning without any proof or evidence for the action is an adverse employment action. It alters Margaret Mazur's compensation, terms, conditions of or privileges of employment. Margaret Mazur was robbed of income and time towards her retirement through the unsubstantiated suspension without pay. A suspension without pay listing theft permanently resides in Margaret Mazur's employment records [¶49]. She is not able to advance her career and obtain future meaningful employment with a

suspension without pay listing theft permanently in her employment record. She was a career

employee who was forced out of her state career due to violations of discrimination and

harassment leading to a HWE.

> A Title VII plaintiff must prove that she suffered an adverse employment action in
> order to satisfy step one of *McDonnell Douglas. See Sarullo* v. *U.S. Postal Serv.,* 352
> F.3d 789, 797 (3d Cir. 2003). We have described an adverse employment action "as
> an action by an employer that is serious and tangible enough to alter an employee's
> compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l
> Sec. Servs.,* 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation marks omitted).

10. Defendants unproven articulated reasons for giving Margaret Mazur and Sharon Warden

extremely different discipline are pretext for the real reason of discrimination and disparate

treatment. With the Final Warning permanently in Margaret Mazur's employment  record,

she could be fired for basically any reason regarding money issues. The fact that she worked

in the Accounting office and regularly handled money indicates that even a minor error

would result in her termination as stated in the Final Warning Letter. Defendants placing

Margaret Mazur back in the Accounting office after accusing/punishing her for theft is

unworthy of belief as a thief placed in an accounting office is analogous to having a fox

guard a hen house.

11. Defendants' statement that Margaret Mazur didn't count money at the bank or bring the total

amount of the replenishment money back to the facility [¶46] is refuted by the actual

typewritten PDC notes which state: "I counted the money at the bank along with the bank

teller off her sheet". Margaret Mazur's PDC statement that she brought the entire amount

($4,784) back from the bank to the Accounting office discredits the Defendants' statements.

Defendants agents Barry Lowen and Darren Lindsay had reviewed the bank video footage

from May 16, 2016 and could not glean any information from the footage to support their

assumptions [¶50]. They failed to preserve the May 16, 2016 bank footage. The bank

admitted that there was no error on their part and that their cash records did not show an

overage of $500 (the alleged missing money amount) [¶18].

12. Defendants allege that Margaret Mazur left money unattended [¶46]. She explained in the

PDC that it was impossible to leave the money unattended because she was alone in a locked

Accounting office with the money in her control and sight at all times until Sharon Warden

took possession of the money. In contrast, her similarly situated comparator, Sharon Warden,

admits regularly leaving money alone and unattended in her PDC [¶47]. On May 16, 2016

when Margaret Mazur and her supervisor returned to the Accounting office from the parking

lot, the replenishment money was on the file cabinet [¶13]. Sharon Warden had sole custody

of the money when Margaret Mazur was sent to her car by Sharon Warden who left the

replenishment money unsecured and unattended when she went on a smoke break.

13. SWVC agents had the duty and failed to preserve the May 16, 2016 video footage of the

hallway leading to the Accounting office [¶50]. The footage would have shown that no one

except Sharon Warden entered the Accounting office while Margaret Mazur was alone with

the money in her control and in her sight at all times until her co-worker took possession of

the money and started counting it. Defendants also had the duty and failed to preserve the

video footage of the parking lot.

14. Defendants alleged that Margaret Mazur failed to follow procedures. There were no money

handling procedures in effect until May 20, 2016 (4) days after the alleged missing money

incident [¶21]. Defendants failed and refused to identify and provide any existing procedures

that Margaret Mazur violated and failed and refused to provide any proof/evidence of how

she violated any existing procedure. Defendants have no documented proof of a consistent

past practice or custom of money handling prior to the incident of the alleged missing $500.

> We hold that, to do so, the plaintiff generally must submit evidence which: **1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.** *See Fuentes* v. *Perskie,* 32 F.3d 759, 763 (3d Cir. 1994).

15. Darren Lindsay (black) protected Sharon Warden (black) by refusing to do his fiduciary

responsibility to immediately launch a fair, objective and complete investigation into Sharon

Warden's claim of $500 missing, require a complete count of money on hand to verify $500

was actually missing, and to present actual facts instead of suppositions to his superiors.

Margaret Mazur (white) told Darren Lindsay to check her car, purse, and office and he

refused. [¶17] He concentrated his efforts to blame Margaret Mazur for an allegation of $500

missing. "**Best efforts**" can only be applied on the day an allegation of $500 missing.

Exerting "efforts" after the day the alleged $500 is missing is a fruitless exercise. He

purposely failed to tell his superiors the fact that Sharon Warden had left the replenishment

money unattended on the file cabinet to go on a smoke break. Everything he told his

superiors indicated Margaret Mazur was to blame because she made the replenishment run as

evidenced by Kim Kreiser's statement: she "didn't have any evidence that Sharon Warden

was careless or negligent with money left in her possession". [¶40] Darren Lindsay's

"witness" statement and misrepresentation of information to the police supports the fact that

he focused all the blame on Margaret Mazur (white) and protected Sharon Warden (black)

from being held accountable.

16. Defendants have changed their stated reason for Margaret Mazur's disparate discipline from

stating in the May 26, 2016 PDC 'she stole $500' to 'she left money unattended which
resulted in the loss of $500'. Defendants have never seen or had any evidence that Margaret
Mazur stole money, no evidence that she left money unattended, that she lost money, and
they have no evidence that $500 was ever missing as no confirming count was made to verify
the allegation. Sharon Warden's stated 'mental count' is not verifiable and is not admissible
evidence in a Court of Law.

17. The real reason for the Agency action was race discrimination and disparate treatment
without just cause. The facts show their many cited reasons cannot be proven.
Commonwealth disciplinary rules require that the employee be given any supporting
evidence/proof for the charges against them for them to exercise their due process rights to
rebut prior to any discipline being awarded [¶38]. The deciding official was influenced by
Darren Lindsay's conclusions based on race and Jamie Cuthbert's conflict of interest and
bias. Margaret Mazur has repeatedly requested Jamie Cuthbert's investigative findings and
any evidence uncovered in her investigation [¶43] and the Employer adamantly refused to
provide any findings of the investigation and directed Margaret Mazur to the Right to Know
(RTKL) process [¶37].

> **At trial, the plaintiff must convince the factfinder "both that the reason was false,
> and that discrimination was the real reason."** Hicks, --- U.S. at ----, 113 S.Ct. at 2752;
> see id. at ----, 113 S.Ct. at 2754 ("It is not enough ... to disbelieve the employer; the
> factfinder must believe the plaintiff's explanation of intentional discrimination."
> (emphasis in original)). The fact finder's rejection of the employer's proffered, legitimate
> reason permits, but does not compel, a verdict for the plaintiff. See Hicks, --- U.S. at ----,
> 113 S.Ct. at 2749. **The test is whether the plaintiff ultimately persuades the factfinder
> that the employment decision was caused by bias, and for that purpose both the
> plaintiff's prima facie case and the fact finder's rejection of the employer's proffered
> evidence are circumstantial evidence of unlawful discrimination.** See Hicks, --- U.S.
> at ----, 113 S.Ct. at 2749.

18. Barry Lowen and Richard Adams chose to support Margaret Mazur's black supervisor in his discrimination and disparate treatment to Margaret Mazur without following Commonwealth Disciplinary rules requiring a full and fair investigation [¶43]. They denied her due process rights as they failed to preserve the police report information cited by the police which was given to legal after the May 25, 2016 conference call. Defendants pre-decided to suspend Margaret Mazur without pay based on the alleged statement the police had enough to charge for theft [¶39].

> This basic framework under Title VII illustrates that, to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either **(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action**. See, e.g., Hicks, --- U.S. at ----, 113 S.Ct. at 2479; Ezold v. Wolf, Block, Schorr & Solis-Cohen, **983 F.2d 509**, 523 (3d Cir.1992) (quoting Burdine, 450 U.S. at 256, 101 S.Ct. at 1095), cert. denied, --- U.S. ----, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). **In other words, because the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons,** see Hicks, --- U.S. at ----, 113 S.Ct. at 2749,  **Baxter Healthcare Corp., 13 F.3d 1120, 1122-24 (7th Cir.1994); Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir.1993).**

19. The final warning letter significantly changed Margaret Mazur's working conditions, because she could be terminated for any accusation of  a minor error of money handling [¶49]. The fact that Darren Lindsay stole money out of the cash box in the past [¶2] and has the ability to repeat the action and blame the loss on Margaret Mazur evidences how easy it would be for her to lose her career based on another false accusation.

> The Supreme Court has defined a "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761.

**B.  HARASSMENT LEADING TO A HOSTILE WORKING ENVIRONMENT**

20. The Director for all six Pennsylvania Veterans homes, Andrew Ruscavage, issued a directive instructing SWVC and DMVA managers and HR employees to "push back" against Margaret Mazur [¶28]. This action authorized recipients of the directive to retaliate against her for using the EEOC opposition clause to oppose her disparate and unfair treatment starting on the day of the May 26, 2016 PDC. This is a direct violation of Federal Law under the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a).

21. Within two days of Barry Lowen receiving Andrew Ruscavage's authorization and direction for retaliation (push back) against Margaret Mazur; he directed her supervisor to require her to obtain a doctor's note before she could return to work from sick leave when she was not on a leave restriction letter for sick leave abuse and had a 10-year history of never being accused of abusing sick leave. This requirement caused her unnecessary expense and loss of sick leave. She was unable to get an appointment so she had to spend a day in the waiting room to be seen in between appointments in order to obtain a doctor's note. The time and attendance supervisor, Jamie Cuthbert, stated in depositions that Margaret Mazur was not one to abuse sick leave. [¶28]

22. After the Ruscavage direction to "push back", Margaret Mazur's work was heavily scrutinized, her breaks and lunches were monitored, she was routinely threatened with PDCs, she was subjected to ridicule and belittled. (EX: Her supervisor frequently told her "You Ain't Nobody" and sang "You're No Good, You're No Good, You're No Good.") He would corner Margaret Mazur in her office, intimidate and yell at her over minor issues without getting the facts and without allowing her to have union representation as required by the

Weingarten Act. Her complete employment conditions changed from being a valued and trusted employee to being viewed as a problem employee because she exercised her rights to oppose unjustified and unfair treatment. [¶34]

23. Kim Kreiser, Head of DMVA HR, solicited complaints against Margaret Mazur when she said in an email, "If she becomes disruptive to the workplace, please let us know". [¶37]

> "A prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Allstate,* 778 F.3d at 449 (internal quotation marks omitted).

24. Margaret Mazur has demonstrated a temporal proximity between the protected activity of opposition to Defendants unlawful discipline of a disparate suspension without pay awarded on May 26, 2016 [¶12] (while her co-worker remained at work with no discipline) and the June 8, 2016 final warning issued to Margaret Mazur on June 13, 2016.

## C.  RETALIATION FOR HAVING ENGAGED IN OPPOSITION TO AGENCY VIOLATIONS OF LAW, RULE POLICY AND REGULATION UNDER EEOC'S OPPOSITION CLAUSE

25. Defendants alleged that Margaret Mazur was ultimately responsible for the alleged missing money and had more culpability. Darren Lindsay as the supervisor and the Accountant had the ultimate responsibility for all Accounting funds. He did not have a money handling procedure in place and he did not require or document a complete count of the money on hand on May 16, 2016 after he was notified of $500 allegedly missing [¶8]. Defendants cannot assign ultimate responsibility to an employee that does not have ultimate authority and they cannot assign culpability for money lost when they can not even prove money was lost. Defendants terminating Margaret Mazur over an unprovable allegation of $500 lost is a

retaliatory action in response to Margaret Mazur opposing their unlawful employment

actions.

> Section 704(a) of Title VII forbids an employer from discriminating against an
> employee "because he has opposed any practice made an unlawful employment
> practice by this subchapter, or because he has made a charge, testified, assisted, or
> participated in any manner in an investigation ... under this subchapter." 42 U.S.C. §
> 2000e-3(a). It is similarly unlawful under § 5(d) of the PHRA for an employer "to
> discriminate in any manner against any individual because such individual has
> opposed any practice forbidden by this act, or because such individual has made a
> charge ... under this act." 43 Pa.S. § 955(d). Woodson v. Scott Paper Co., 109 F.3d
> 913, 920 (3d Cir. 1997).

Margaret Mazur also has met the requirement to show "the timing of the alleged retaliatory

action must be 'unusually suggestive' of retaliatory motive before a causal link will be

inferred." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (quoting Robinson

v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)).

26. Jennifer McClain-Miller stated that **"<u>unfortunately</u>"** Sharon Warden had possession of the

money unobserved and she was culpable also [¶5]. The Agency head counsel admitted

"despite best efforts" the Agency was unable to determine how the money became missing

and could not determine what happened to the missing money [¶8]. Again, Defendants have

**NO** proof that $500 was even missing so they had no just cause to discipline anyone for loss

of money.

27. Defendants proferred explanations for their actions against Margaret Mazur have no

credibility or veracity as their statements are not backed up by evidence, are based on hearsay

and 3rd party information, and there are no witnesses with first hand information. The

unnecessary delay of two days to contact the police, not doing an immediate lockdown and

not conducting a documented complete count of money on hand after being made aware that

$500 was allegedly missing, along with their failure to initiate a thorough and objective investigation in accordance with Commonwealth Disciplinary Requirements evidences that Defendants willfully violated their own rules, policies and procedures [¶15]. Darren Lindsay's failure to act immediately shows there was no earnest or serious attempt to determine what happened to the alleged missing $500. The decision was made prior to May 18, 2018 to place the blame on Margaret Mazur. She had to request a replacement of the alleged missing $500 with no proof to accompany the request. [¶14 & ¶15]

28. As stated in Celotex, 477 U.S. at 322-3, the Court concluded that summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial. The moving party is "entitled to judgment as a matter of law" because the Defendants have failed to make a showing sufficient of any admissible proofs to support their adverse disciplinary actions taken against Margaret Mazur and fail to provide a believable non-discriminatory legitimate reason for the disparate treatment to her and her co-worker.

**D. PRETEXT FOR AGENCY'S ACTIONS**

29. Defendants have multiple inconsistencies and contradictions in the evidentiary record and in discovery and depositions for their explanations of why they took disciplinary actions against Margaret Mazur; from Jamie Cuthbert's UC Fraud [¶32 & ¶33] to the phony Pre-Grievance Settlement between Jennifer McClain-Miller and Union Representative John Galuska [¶26 & ¶27]. These inconsistencies and contradictions will allow a reasonable factfinder to find that the articulated reasons for the Agency's actions are unworthy of belie and that Summary

Judgment should be awarded in favor of Margaret Mazur as a matter of law on each of her claims of Discrimination, Disparate Treatment, Harassment and Retaliation.

## VI.   EVIDENTIARY HEARING STILL PENDING FOR BAD FAITH ISSUES

30. Margaret Mazur reserves the right to supplement her Brief in Support of Motion for Summary Judgment after the Evidentiary Hearing scheduled for January 22, 2019.

## VII.  CONCLUSION

For Defendants to prevail, they would need to present clear and convincing evidence to support their disparate and discriminatory actions taken against Margaret Mazur. They cannot meet this burden.

Considering that Margaret Mazur has given enough direct and circumstantial evidence for a factfinder to believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions, Margaret Mazur is entitled to Summary Judgement as a matter of law on all complaint issues.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Respectfully submitted,


/s/ Margaret Mazur

## <u>CERTIFICATE OF SERVICE</u>

I, Margaret Mazur, do hereby certify that on January 17, 2019, I served the foregoing Brief in

Support of Summary Judgment by electronic service to the following:

Scott Bradley

<u>sbradley@attorneygeneral.gov</u>

<u>/ s / Margaret Mazur</u>

Margaret Mazur, Pro Se
243 Ekastown Rd
Sarver, PA 16055
724-602-2930
margmystr@gmail.com

Date: January 17, 2019
