# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Margaret Mazur, Pro Se | ) | **2:17-cv-00826-JFC** |
| Plaintiff, | ) | |
| | ) | **Judge Conti** |
| v. | ) | |
| | ) | **PLAINTIFF'S STATEMENT OF ISSUES OF** |
| | ) | **GENUINE MATERIAL FACTS** |
| Southwestern Veterans Center and | ) | **NOT IN DISPUTE** |
| Dept. of Military and Veterans Affairs | ) | |
| Defendants. | ) | **Electronically Filed: January 17, 2019** |

Plaintiff, hereafter, Margaret Mazur, in support of her motion for summary judgment or summary

adjudication of issues, submits that the following material facts are undisputed.

### STATEMENT OF ISSUES OF GENUINE MATERIAL FACTS NOT IN DISPUTE

**ISSUE NO. 1: DISCRIMINATION BASED ON RACE/DISPARATE TREATMENT**

1. <u>WARDEN TOOK DAILY BREAKS EXCEEDING AUTHORIZED BREAKS</u> **(1-11)**
   **(1)**Margaret Mazur, a white person was employed as an Accounting Assistant and worked in an office with two other employees. **(2)**Darren Lindsay, a black supervisor, regularly gave preferential treatment to Sharon Warden, a black employee, employed as an Accounting Assistant. [EXH 11] **(3)**He allowed Sharon Warden to take excessive breaks over the allotted breaks allowed by Agency rules. [EXH 2 & 54] **(4)**Sharon Warden was not disciplined for taking excessive breaks. **(5)**The breaks allowed are two 15 minute breaks in a 7.5 hour work day. [EXH 15] **(6)**Sharon Warden, on average, took 4 or more additional breaks during an average day. **(7)**Margaret Mazur was restricted to the two authorized 15 minute breaks. [EXH 36] **(8)**Oftentimes, Sharon Warden and Darren Lindsay would have long discussions during working hours about the "hood" while Margaret Mazur was working. **(9)**They would use lingo that Margaret Mazur didn't understand and tell her to look it up in the Urban Dictionary. **(10)**The last thing she was directed by Sharon Warden and Darren Lindsay to look up was "tossed salad". **(11)**Margaret Mazur was treated with disdain because she did not fit in with her supervisor and her coworker. [EXH 58]
      SUPPORTING EVIDENCE:
      a. Exh 2: Lindsay Deposition - Excessive Breaks Pg 5 (57:6-10)
      b. Exh 11: Police Report Under Seal on Record, Doc #51, Pg 1 (Races Listed)
      c. Exh 15: AFSCME Article 7, Rest Periods
      d. Exh 36: June 14, 2016 Cuthbert Email - Mazur breaks
      e. Exh 54: Warden Violated Work Performance Time & Attendance Rule Pg 2, 1.h. / Lindsay Violated Work Performance Rule Pg 2.i. & Unauthorized Behavior Rule Pg 4, #7
      f. Exh 58: Mazur Affidavit #1 (Excessive Breaks) #2 (Urban Dictionary)

2. <u>LINDSAY STOLE $72 OUT OF CASH BOX IN DECEMBER 2014</u> **(12-24)**
   **(12)**In December 2014, Darren Lindsay stole $72 out of the cash box on the last day before Sharon Warden went on her week-long vacation. He was not disciplined for the theft. [EXH 2 & 54] **(13)**Margaret Mazur counted the cash box every day at the beginning of the day and at the

end of the day for the time she was responsible for it to make sure it balanced. **(14)**On the last day before Sharon Warden was to return from vacation; Margaret Mazur counted the safe and the cash box because a replenishment of resident funds needed to be done. **(15)**She found that the amount that was supposed to be on hand was $72 short and she verified that fact with documentation. **(16)**It was not possible to know that the amount was $72 short until counting the total amount of money on hand from the cash box and the safe. [EXH 58] **(17)**Darren Lindsay stated in an interrogatory that Margaret Mazur lied when she said the cash box balanced. [EXH 13 & 54] **(18)**He then states in depositions that she said the money did not balance. [EXH 2] **(19)**Margaret Mazur would not have been aware that Darren Lindsay stole $72 until she did a complete count of the safe and the cash box. **(20)**She also wouldn't be able to determine if the $72 was taken from the cash box or the safe as there was no turnover count of funds from Sharon Warden to Margaret Mazur before Sharon went on vacation. **(21)**Sharon Warden was not disciplined for the cash box being $72 short while it was in her control. [EXH 54 & 58] **(22)**Darren Lindsay admitted in depositions that he did not have authority to steal the $72. **(23)**His explanation of why he stole the $72 was to test his employees. **(24)**This action is a form of entrapment for his employees and is not proper for a supervisor that has fiduciary responsibilities. [EXH 2 & 54]

SUPPORTING EVIDENCE:

a. Exh 2: Lindsay Deposition - No Authority to steal $72 Pg 2 (29:9-13) / Mazur said money box didn't balance Pg 2 (26:6-11)

b. Exh 13: Interrogatory #1 - $72 Incident

c. Exh 54: Lindsay Violated Use of Property Rule Pg 3, #3 & #4 / Warden Violated Work Performance Rule Pg 1, 1.a. / Lindsay Violated Work Performance Rule Pg 1, 1.e. and 1.i. / Lindsay Violated Unauthorized Behavior Rule Pg 4, #3, #5 & #10

d. Exh 58: Mazur Affidavit #3 ($72 Incident)

3. __WARDEN REGULARLY LEFT CASH BOX UNLOCKED/UNATTENDED__ **(25-34)**
**(25)**Sharon Warden was assigned responsibility for dispersing funds from the bank window in the Accounting office to the VA home residents from 9 a.m. to 11:30 a.m. [EXH 6] **(26)**She would regularly take unscheduled breaks to smoke, leaving the bank window open and the cash box unlocked and unattended. [EXH 2 & 54] **(27)**This necessitated Margaret Mazur having to cover Sharon Warden's responsibilities, which impeded her from getting her own work done. **(28)**When Margaret Mazur reported to Darren Lindsay that Sharon Warden was taking excessive breaks, she heard Darren Lindsay tell Sharon Warden, "Margaret has an issue with you taking breaks while the bank window is open". **(29)**This caused tension and resentment between Sharon Warden and Margaret Mazur. **(30)**He did not discipline Sharon Warden for taking breaks during her responsibility of keeping the bank window open nor did he stop her excessive breaks. [EXH 54] **(31)**She continued to take smoking breaks in addition to her regular breaks whenever she decided she wanted a smoking break. **(32)**When Sharon Warden took breaks during the open hours of the bank window, Darren Lindsay instructed Margaret Mazur to take responsibility for the cash box without benefit of a turnover count and without requiring Sharon Warden to perform her assigned tasks. [EXH 54 & 58] **(33)**By covering for Sharon Warden and being required to disburse money from the cash box without a turnover count, Sharon Warden and Darren Lindsay placed Margaret Mazur in the position of being subjected to blame if the cash box was found to be short of funds. [EXH 58] **(34)**Darren Lindsay had the fiduciary and supervisory responsibility to require Sharon Warden to be present during the required hours for residents to obtain money. [EXH 54 & 60]

SUPPORTING EVIDENCE:
a. Exh 2: Lindsay Deposition - Excessive Breaks Pg 5 (57:5-10) / Cash Box Unlocked/Unattended Pg 5 (57:11-17) / Smoke Breaks While Bank Window Open Pg 5-6 (57:18-58:22)
b. Exh 54: Warden Violated Work Performance Rule Pg 1, 1.a. & Pg 2, 1.l. / Warden Violated Use of Property Rule Pg 3, #2 / Lindsay Violated Work Performance Rule Pg 2, 1.i. and Unauthorized Behavior Pg 4, #7
c. Exh 58: Mazur Affidavit #1, 3 & 4 (Excessive Breaks/Cash Box Unattended) / #5 (Had to Cover Bank Window)
d. Exh 60: Job Descriptions, Pg 1, Duty #1 (Petty Cash) / Fiduciary Responsibility, Pg 5-7

4.  WARDEN HAD $90 SHORTAGE FOR FUNDS ON HAND ON MAY 13, 2016 **(35-42)**
    **(35)**On Friday, May 13, 2016, a reconciliation of the cash box and the safe along with checking resident disbursements in Matrix (the Accounting Software Program) was done by Sharon Warden to do a replenishment run. **(36)**Sharon Warden's cash on hand was short by $90 according to resident withdrawal entries in Matrix so she was not able to do a replenishment run. **(37)**Margaret Mazur sat at Sharon Warden's desk for about an hour to help her review two weeks of withdrawal slips to see if any of them were missed for entry in Matrix. **(38)**Margaret Mazur heard Darren Lindsay say he would make up the $90 so replenishment of veterans funds could be done on Monday. **(39)**He said when the discrepancy was found, he would get reimbursed. [EXH 54 & 58] **(40)**Darren Lindsay said he would be in late on Monday and that's when Sharon Warden got a blank check signed by Darren Lindsay and another check signer to be able to replenish on Monday, May 16, 2016. [EXH 51] **(41)**If Margaret Mazur was short $90, she would have been disciplined for the loss by her supervisor according to Agency disciplinary rules regarding loss of funds. [EXH 54] **(42)**He took every opportunity to threaten PDC's and over-scrutinize Margaret Mazur's work for very minor errors after the alleged missing $500 incident. [EXH 53]
    SUPPORTING EVIDENCE:
    a. Exh 51: Copy of Replenishment Check
    b. Exh 53: August 23, 2017 UC Testimony, Pg 55, ¶1 (Potentially Issuing PDC - Absolutely)
    c. Exh 54: Warden Violated Use of Property Rule Pg 3, #2 and Unauthorized Behavior Rule Pg 4, #5/ Lindsay Violated Work Performance Rule Pg 2.i. and Unauthorized Behavior Pg 4, # 7 / Disciplinary Rules, Policies, Procedures - Use of Property Pg 3 #2
    d. Exh 58: Mazur Affidavit #6 (Warden Short by $90)

5.  WARDEN ALONE WITH MONEY FOR FIVE HOURS ON MAY 16, 2016 **(43-50)**
    **(43)**On May 16, 2016, Sharon Warden was alone in the Accounting office with access to the money in the cash box and the Accounting office safe for approximately 5 hours (6 a.m. to 11 a.m.) while Margaret Mazur was doing laundry inventory downstairs in the basement. **(44)**Sharon Warden had sole access to the money box and the safe. **(45)**After the bank window was closed (11:30 a.m.), she counted the money on hand alone before she wrote the amount on the pre-signed check. **(46)**She had the opportunity to take $500 from either the money box or the safe unobserved. [EXH 58] **(47)**Defendants ignored that Sharon Warden was alone and unobserved with the  money on hand for 5 hours. [EXH 18] **(48)**While Margaret Mazur made her round trip to the bank (Approximately 12:20 to 12:40 p.m.), Sharon Warden, once again, was alone with the cash box and the safe. **(49)**Jennifer McClain-Miller admits Sharon Warden "unfortunately" had

3

time alone with the money; [EXH 27] which would have allowed her to take $500. **(50)**Sharon Warden was not questioned about her time alone/unobserved with the money by her supervisor, Darren Lindsay, Jennifer McClain-Miller, the assigned investigator - Jamie Cuthbert or the Police detective even though she was listed on the Police report as the number two suspect. [EXH 11]

    SUPPORTING EVIDENCE:
    a.  Exh 11: Police Report Under Seal on Record, Doc #51, Pg 1-6
    b.  Exh 18: Warden PDC, Pg 8-10
    c.  Exh 27: Miller 4-page Statement (Unfortunately…)Pg 4, Last ¶
    d.  Exh 58: Mazur Affidavit #7 (Warden Alone with Money)

6. <u>DEFENDANTS STATED THEY DON'T BELIEVE MISSING MONEY EVER IN WARDEN'S POSSESSION **(51-59)**</u>

**(51)**On May 16, 2016, within 5 minutes of Margaret Mazur returning from the bank to the Accounting office, Sharon Warden came into the Accounting office from a smoke break. [EXH 9] **(52)**A key is required to enter the Accounting office. **(53)**Sharon Warden took possession of the money and placed it on the file cabinet. **(54)**A short period of time after she started counting the money alone, she called Margaret Mazur out to help count the remainder of the money. [EXH 18 & 58] **(55)**Defendants have stated that they didn't believe Sharon Warden ever had possession of the alleged missing $500. [EXH 49] **(56)**She was not questioned about all the times she was alone with the money on May 16, 2016. **(57)**At her PDC she admitted regularly leaving money unattended and was not disciplined for that admitted offense. [EXH 54] **(58)**Her PDC consisted of a gentle rehearsed questioning with prompts: "I feel you forgot some info Sharon." **(59)**In contrast, Margaret Mazur's PDC consisted of repeated false hostile accusations of theft, leaving money unattended and not counting the money at the bank. [EXH 18]

    SUPPORTING EVIDENCE:
    a.  Exh 9: Witness Statements (Mazur/Warden/Lindsay) - (Within Five Minutes...) Pg 2, Ln 2-4 / (Sent Mazur to Car) Pg 3, Ln 17-18 / (Counted Mentally) Pg 3, Ln 12 & 15 / (Left Money to Go On Smoke Break) Pg 3, Ln 18-19
    b.  Exh 18: PDCs (Mazur/Warden) - Charge #3 Theft, Pg 1 / Kim: "You left it unattended" Pg 4, Ln 15 / Jennifer McClain-Miller: "I feel you forgot some info Sharon" Pg 9, Last ¶
    c.  Exh 49: Interrogatory #3 - Don't believe Warden ever had missing $500
    d.  Exh 54: Warden Violated Work Performance Rule 1.a.
    e.  Exh 58: Mazur Affidavit #8 (Help Count Rest of Money) / #9 (Warden Told Mazur to Check Car) / #10 (Saw Money on File Cabinet)

7. <u>LINDSAY DID NOT LOCKDOWN OFFICE AND SEARCH ON MAY 16, 2016 **(60-66)**</u>

**(60)**On May 16, 2016, Sharon Warden had sufficient opportunity and time to remove a pack of $500 from the replenishment money and place it on her person or in the money box on the file cabinet [EXH 12], in the file cabinet or elsewhere in the Accounting office while unobserved. **(61)**Darren Lindsay did not lockdown the office and require a search. [EXH 54 & 58] **(62)**Margaret Mazur requested that her car, purse and office be checked. [EXH 14] **(63)**Darren Lindsay refused to do a search. **(64)**Kim Kreiser said she didn't know how long it takes to stash or take $500. [EXH 3] **(65)**Darren Lindsay did not call the police to report a possible theft incident. **(66)**Rich Adams stated he didn't believe Margaret Mazur brought the alleged missing $500 back to the facility without foundation. [EXH 4]

    SUPPORTING EVIDENCE:
    a.  Exh 3: Kreiser Deposition - Don't Know How Long to Take $500 Pg 5 (16:5-10)

4

    b.  Exh 4: Adams Deposition - Mazur didn't bring money back to facility Pg 9 (9:2-17)
    c.  Exh 12: Picture of File Cabinet (Shows Money Box on File Cabinet - Warden kept keys)
    d.  Exh 14: Interrogatory #4 - Mazur asked for purse, car, and office to be searched
    e.  Exh 54: Lindsay Violated Work Performance Rule Pg 2.i.
    f.  Exh 58: Mazur Affidavit #13 (No lockdown)

8.  **LINDSAY DID NO COMPLETE COUNT TO VERIFY MONEY MISSING ON MAY 16, 2016 MAZUR HAVING MORE CULPABILITY ARGUMENT FAILS (67-79)**

**(67)**Jennifer McClain-Miller states that she knows Margaret Mazur lost the money because Margaret Mazur told her that the money was in her care. [EXH 1 & 54] **(68)**She also states that Margaret Mazur had more culpability than Sharon Warden for $500 missing. [EXH 27] **(69)**No evidence was provided to show that Margaret Mazur had more culpability or that $500 was actually missing. [EXH 52 & 58] **(70)**Margaret Mazur did not see Sharon Warden doing a mental count. **(71)**She saw Sharon Warden using a calculator during her count and she saw Sharon Warden go immediately to her phone and call the bank after she announced $500 was missing. [EXH 9 & EXH 58] **(72)**Darren Lindsay stated in his May 19, 2016 statement that he and Margaret Mazur looked over the money. [EXH 9 & 54] **(73)**Margaret Mazur did not count the money with Darren Lindsay to verify $500 was missing. **(74)**There was no complete count of money on hand from the money that Sharon Warden left on the file cabinet, the cash box and the safe to verify there was $500 missing. [EXH 58] **(75)**Darren Lindsay holds the position of Accountant, and as such has the ultimate fiduciary responsibility for all funds of the Accounting office. [EXH 60] **(76)**When he became aware of the allegation of $500 missing, he had the fiduciary responsibility to verify that $500 was actually missing. **(77)**Margaret Mazur did not see anyone do a complete count of cash on hand. **(78)**Defendants state that "Ms Warden then totaled the money mentally while looking at the physical bundles", which constituted a second count of the money, and also stated "Only Ms. Warden and Ms. Mazur were present for both of these counts". [EXH 10 & 54] **(79)**Darren Lindsay had Sharon Warden write the number of stacks down alone after he had taken the 3x5 sheet that Margaret Mazur received from the teller that listed the totals of each denomination. [EXH 9, 54 & 58]

    SUPPORTING EVIDENCE:
    a.  Exh 1: McClain-Miller Deposition - Mazur lost money Pg 5 (56:21-57:5)
    b.  Exh 9: Witness Statements (Mazur/Warden/Lindsay) - (Looked Over Money) Pg 5, Ln 8 / (Warden Used Calculator) Pg 2, Ln 8 / (Warden - $500 Missing/Immediately Called Bank) Pg 2, Ln 7-8 / (Writing Number of Stacks) Pg 3, Ln 25-26
    c.  Exh 10: Interrogatory #15 - Warden Mental Count
    d.  Exh 27: Miller 4-page Statement - (Mazur more culpability /Warden Unobserved w/Money) Pg 4, ¶3 & ¶4
    e.  Exh 52: Bushinski Letter (never able to...determine how funds taken) Pg 3, Ln 25-26
    f.  Exh 50: Interrogatory #7 Mazur More Accountability
    g.  Exh 54: McClain-Miller Violated Unauthorized Behavior Rule Pg 4, #10 / Lindsay Violated Unauthorized Behavior Rule Pg 4, #7 & #10
    h.  Exh 58: Mazur Affidavit #8, 9, 13 (No Second Count and No Complete Count) / #8 (Warden Used Calculator)
    i.  Exh 60: Job Descriptions - Lindsay fiduciary responsibility Pg 5-7

9.  **LINDSAY USED HIS POSITION TO INFLUENCE OUTCOME OF POLICE INVESTIGATION (80-82)**

**(80)**Sharon Warden and Darren Lindsay colluded together and influenced the Agency and the police to blame Margaret Mazur for theft by stating that Margaret Mazur didn't count money at the bank and that $500 was verified to be missing. [EXH 2, 6, 9, 18 & 54] **(81)**Darren Lindsay destroyed the bank sheet that he retrieved from the bank and the 3 x 5 sheet that Margaret Mazur brought back from the bank. [EXH 14 & 54] **(82)**This evidence that was destroyed was germane to the investigation as it showed the amount of money disbursed along with the denominations of the money which Margaret Mazur counted along with the bank teller. [EXH 18]

    SUPPORTING EVIDENCE:
   a. Exh 2: Lindsay Deposition: Lindsay erred in interrogatory Smolinksi had enough to arrest (18:21-21:5) Pg 9 Smolinski at Zone 5 Police Department w/Detective Nee
   b. Exh 9: Witness Statements (Mazur/Warden/Lindsay) - (Verified $500 Short) Pg 5, Ln 8 / (Mazur Didn't Count Money at Bank) Pg 3, Ln 23-25
   c. Exh 10: Interrogatory #15 - Warden Mental Count
   d. Exh 14: Interrogatory #1 - Darren Lindsay destroyed bank sheet
   e. Exh 18: PDCs (Mazur/Warden) - (Mazur Counted Money at Bank) Pg 6, Ln 7-8
   f. Exh 54: Warden and Lindsay Violated Unauthorized Behavior Rule Pg 4, #10 / Lindsay Violated Work Performance Rule Pg 1.e. & Pg 2, 1.i.

10. <u>McCLAIN-MILLER MADE FAULTY ILLOGICAL STATEMENT WITH CONTRADICTION</u> <u>**(83-90)**</u>
    **(83)**Jennifer McClain-Miller questioned Sharon Warden in her PDC where she admitted she went on a smoke break after sending Margaret Mazur to her car. [EXH 18] **(84)**In depositions Jennifer McClain-Miller contradicted herself and stated it was the first time she had heard that Sharon Warden left the replenishment money unattended. **(85)**She also stated that if Sharon Warden did take the money; that it was still Margaret Mazur's responsibility if she did for allowing Sharon Warden to take the money. **(86)**Jennifer McClain-Miller states that she knew the money was gone/missing.[EXH 1 & 54] **(87)**She bases this statement on Sharon Warden making a "claim" that $500 was missing. **(88)**Sharon Warden made a claim $500 was missing [EXH 10] and Margaret Mazur made a claim that she asked for her car, purse, and office to be searched. [EXH 1] **(89)**Margaret Mazur does have proof to backup her claim through an interrogatory admission. [EXH 14] **(90)**Sharon Warden's claim that $500 was missing was accepted by Defendants as proof that $500 was indeed missing even though her claim is not verifiable. [EXH 10 & 54]

    SUPPORTING EVIDENCE:
   a. Exh 1: McClain-Miller Deposition - Money Is Missing Pg 9 (138:19-25) / Warden Leaving Money Unattended Pg 9 (139:23-141:25) / Mazur's Fault if Warden Stole Money Pg 3 (42:15-43:7, 46:11-25) / Claim is Not Proof Pg 12 (156:10-15)
   b. Exh 10: Interrogatory #15 - Warden Mental Count
   c. Exh 14: Interrogatory #4 - Mazur asked for purse, car, and office to be searched
   d. Exh 18: PDCs (Mazur/Warden) - (Left Money to Go On Smoke Break) Pg 9, Ln 20-21
   e. Exh 54: McClain-Miller Violated Unauthorized Behavior Rule Pg 4, #7 & #10

11. <u>WARDEN'S PDC WAS STAGED IN RESPONSE TO MAZUR'S JUNE 1, 2016 EMAIL</u> <u>**(91-99)**</u>
    **(91)**Jennifer McClain-Miller had spoken with Sharon Warden prior to her holding her PDC. [EXH 50 & 54] **(92)**Margaret Mazur did not have any extra conversations with Jennifer McClain-Miller and/or Kim Kreiser outside of the May 26, 2016 PDC. [EXH 58] **(93)**Jennifer McClain-Miller does not recall exactly since May 16, 2016, "how many times" she discussed

with Sharon Warden the missing money. [EXH 50] **(94)**Sharon Warden was coached on what answers to give during her PDC as evidenced by the statement, "I feel you forgot some info Sharon". **(95)**Jennifer McClain-Miller did not take disciplinary action for Sharon Warden admitting in her PDC to regularly leaving money unattended and on the date of the alleged missing $500 when she left the replenishment money unattended on the file cabinet and went on a smoke break. [EXH 2, 18 & 54] **(96)**Sharon Warden was PDC'd on June 3, 2016, 18 days from the date of the alleged $500 incident of May 16, 2016, which is 8 days after Margaret Mazur was PDC'd for the same incident and 2 days after Margaret Mazur pointed out she knew Sharon Warden was still at work undisciplined. **(97)**Margaret Mazur was PDC'd on May 26, 2016, 10 days from the date of the alleged $500 incident, a day after the police allegedly made the statement that they had enough evidence to arrest her. **(98)**The oral reprimand for Sharon Warden was put in writing, contrary to Agency Disciplinary Action descriptions. [EXH 31] **(99)**Defendants didn't have any evidence in their possession to charge anyone with theft or loss of money. [EXH 17, 34 & 54]

    SUPPORTING EVIDENCE:
   a. Exh 2: Lindsay Deposition - Warden left money unattended Pg 4 (49:8-11)
   b. Exh 17: PDCs (Mazur/Warden) Kreiser Statement: Police have enough to charge Pg 6, Last ¶
   c. Exh 18: PDCs (Mazur/Warden) - (I feel you forgot some info Sharon) Pg 9, Last Line / (Warden regularly leaving money unattended) Pg 9, Ln 20-21 & Pg 10, Ln 12-16
   d. Exh 31: Disciplinary Actions - Counseling is for minor infraction and not considered discipline / Oral Reprimand is verbal, not in writing
   e. Exh 34: McClain-Miller Email - thank you for your collaboration
   f. Exh 50: Interrogatory #16 - Miller talked to Warden at least once at her PDC
   g. Exh 54: Defendants Violated Unauthorized Behavior Rule Pg 4, #7
   h. Exh 58: Mazur Affidavit #14 (Mazur No Extra Conversations)

12. PROPOSED DISCIPLINE DONE THROUGH UNDOCUMENTED CONFERENCE CALLS (100-109)
**(100)** Defendants didn't write out their proposals of discipline on the proposed discipline form [EXH 26] to the deciding official; proposals were done through undocumented telephone calls. [EXH 25] **(102)**Jennifer McClain-Miller stated that legal decided Margaret Mazur's discipline. [EXH 45] **(103)**Legal offers legal advice for management to make discipline decisions for employees. **(104)**Jennifer McClain-Miller states that she adjudicated the discipline for Sharon Warden. [EXH 27] **(105)**Prior to Sharon Warden being given an Oral Reprimand from Jennifer McClain-Miller, the decision was made to counsel Sharon Warden. **(106)**Sharon Warden was initially counseled when she was a similarly situated employee in the alleged $500 incident and counseling is not considered a disciplinary action. [EXH 31 & 54] **(107)**Jamie Cuthbert prepared the proposed discipline letter for Sharon Warden and listed the document as coming from Darren Lindsay. [EXH 54] **(108)**Darren Lindsay denies proposing any discipline for Sharon Warden. [EXH 2] **(109)**Jamie Cuthbert prepares all proposed discipline letters for SWVC. [EXH 1]

    SUPPORTING EVIDENCE:
   a. Exh 1: McClain-Miller Deposition - Cuthbert prepares all docs for discipline Pg 13 (163:7-165:1) / stating legal made discipline decision Pg 6 (58:14-17) Pg 14 (177:12-15)
   b. Exh 2: Lindsay Deposition - Denied Proposed Discipline for Warden Pg 5 (54:7-55:20)
   c. Exh 25: Kreiser Email to Jerry Beck, (Undocumented Conference Calls) Pg 1, ¶4
   d. Exh 26: Proposed Discipline (Mazur/Warden)

    e. Exh 27: Miller 4-page Statement - (Adjudicated Discipline for Warden) Pg 3, ¶3
    f. Exh 31: Cuthbert Email - Warden Counseled/Disciplinary Actions - Counseling is for minor infractions
    i.   Exh 45: Interrogatory #26 - Barrett made disciplinary decision for Mazur
    g. Exh 54: Defendants Violated Unauthorized Behavior Pg 4 #7 / Cuthbert Violated Work Performance Rule Pg 1.e.

13.  <u>DARREN LINDSAY & SHARON WARDEN INTERROGATED MAZUR</u> **(110-113)**
**(110)**On May 16, 2016, returning from the parking lot, Darren Lindsay followed Margaret Mazur into her office and subjected her to hostile accusations and questions about the bank run. **(111)**During the interrogation from Darren Lindsay, Sharon Warden returned from her smoke break. **(112)**Darren Lindsay did not direct any questions to Sharon Warden regarding the alleged missing $500 or the fact that she had left the replenishment money unattended in the Accounting office while she went on a smoke break. [<u>EXH  2</u>] **(113)**He allowed Sharon Warden to join him in directing a hostile, intimidating interrogation of Margaret Mazur who was in her office. [<u>EXH 15, 54 & 58</u>]
    SUPPORTING EVIDENCE:
    a. Exh 2: Lindsay Deposition - Warden Leaving Money of File Cabinet Pg 4 (49:8-11)
    b. Exh 15: Witness Statements (Mazur/Warden/Lindsay) - (Interrogating Mazur) Pg 5, Ln 9-10
    c. Exh 54: Lindsay Violated Unauthorized Behavior Pg 4, #7
    d. Exh 58: Mazur Affidavit #10 (Lindsay Didn't Question Warden)

14.  <u>MAZUR REQUESTED REPLACEMENT FOR ALLEGED MISSING $500</u> **(114-120)**
**(114)**Between May 17, 2016 and May 20, 2016, Margaret Mazur was required to request from the Comptroller a replacement of the alleged $500 missing from Resident funds. **(115)**In the request given to Margaret Mazur by Darren Lindsay, there was no documentation provided to verify that $500 was missing. [<u>EXH 54</u>] **(116)**This document would have been the same document that Sharon Warden uses to determine the amount for the replenishment check. **(117)**A total of the money on hand from the safe and the cash box determines the amount needed to bring cash on hand back to $6,000. **(118)**The total of money on hand needs to agree with the amount of money listed on hand in Matrix. **(119)**At any given time prior to replenishment, Matrix shows the total amount of withdrawals from the last replenishment and a total of what cash should be on hand considering the total amount of withdrawals from the last date of replenishment. **(120)**The amount on hand in Matrix is brought up to $6,000 after each replenishment by entering the amount of the replenishment check into Matrix. [<u>EXH 58</u>]
    SUPPORTING EVIDENCE:
    a. Exh 54: Lindsay Violated Work Performance Rule Pg 1.a & Pg 2, 1.i.
    b. Exh. 58: Mazur Affidavit #15 (Replacement of Alleged Missing $500)

15.  <u>DEFENDANTS FAILED TO PRESERVE WARDEN'S FORM DETERMINING REPLENISHMENT AMOUNT NEEDED</u> **(121-130)**
**(121)**The amount of money needed for replenishment is figured by subtracting cash on hand from $6,000. **(122)**To help determine replenishment, a form is used to record the total cash on hand from the safe and the cash box. **(123)**Darren Lindsay had the duty to preserve Sharon Warden's form to include it in the police investigation and the request for replacement of funds. **(124)**Comptroller approved the replacement of funds request without Sharon Warden's

determination for replenishment form and proof that $500 was missing. **(125)**No verification was provided to substantiate the need for replacement, just a statement that $500 was missing. [EXH 58] **(126)**DMVA Chief Counsel, Mr. Bushinski's statement that the Agency was not able to determine when the alleged $500 became missing or what happened to it **despite best efforts** shows pretext for Agency's charges of theft against Margaret Mazur. [EXH 52] **(127)**Bushinski's statement and Defendants stating they had no proof that Margaret Mazur stole money supports the charge of theft was pretext for Margaret Mazur's suspension. **(128)**The Agency is not a law enforcement Agency and had no authority to charge the crime of theft against Margaret Mazur in a PDC Notice only the police have the authority to charge a crime of theft. **(129)**Defendants are required to have substantial proof that the employee acted as charged prior to disciplining an employee. **(130)**Defendants delayed initiating an investigation, had no evidence for theft and they didn't have any reliable proof/verification that $500 was even missing. [EXH 18, 25, 26 & 54]

    SUPPORTING EVIDENCE:
   a. Exh 18: PDCs (Mazur/Warden) -  #3 Stealing Theft, Pg 1
   b. Exh 25: Kreiser Email to Jerry Beck (Couldn't Charge Anyone with Theft) Pg 1, ¶4
   c. Exh 26: Mazur Proposed Discipline #3 Stealing Theft
   d. Exh 52: Bushinski Statement (Despite Best Efforts) Pg 3, ¶6
   e. Exh 54: Defendants Violated Requirement to do a Thorough and Objective Investigation Fairly and Objectively, Requirement for Just Cause and Requirement to Apply Rules Equally & Without Discrimination Pg 5
   f. Exh 58: Mazur Affidavit #15 (Cash on Hand Form)

16.   WARDEN GOT HAIRCUT ON COMPANY TIME **(131-135)**
   **(131)**While Margaret Mazur was on suspension without pay, Sharon Warden got a haircut in the Activities room on company time approximately 15 minutes after clocking in to work. **(132)**She was not disciplined for using company time to do personal business. [EXH 2, 53 & 54] **(133)**Margaret Mazur was suspended/fired/terminated for theft without proof to support the discipline [EXH 22] and Sharon Warden, a similarly situated employee in the $500 incident where Margaret Mazur was suspended without pay, was allowed to stay at work having received only counseling for the same incident. [EXH 54] **(134)**According to Darren Lindsay, Barry Lowen, Deputy Commandant, wanted to fire Sharon Warden but was convinced not to by Darren Lindsay. **(135)**Darren Lindsay protected Sharon Warden and regularly gave her preferential treatment by not holding her to the same policies, procedures and rules he held Margaret Mazur to. [EXH 54 & 58]

    SUPPORTING EVIDENCE:
   a. Exh 2: Lindsay Deposition - Haircut Pg 5 (56:17-22)
   b. Exh 22 - May 26, 2016 Suspension Letter Pg 1, ¶2
   c. Exh 53: UC Transcript - Haircut Pg 16, ¶1
   d. Exh 54: Warden Violated Work Performance Rule Pg 2, 1.k. / Defendants Violated Unauthorized Behavior Pg 4, #7 and Disciplinary Rules, Policies and Procedures Pg 5
   e. Exh 58: Mazur Affidavit #16 (Haircut/Lindsay regularly gave Warden preferential treatment)

17.   MAZUR REQUESTED A LOCKDOWN AND SEARCH ON MAY 16, 2016 **(136-142)**
   **(136)**On Monday, May 16, 2016, prior to leaving for the day, Margaret Mazur requested her supervisor search her office, her purse and her car and he refused to do so. [EXH 58] **(137)**Darren Lindsay had the fiduciary responsibility to do a lockdown of the Accounting office immediately

after being notified of the allegation of $500 missing. **(138)**He had the fiduciary responsibility to verify that $500 was actually missing. [EXH 54 & 60] **(139)**There was no documentation of reconciliation of the money Sharon Warden left unattended on the file cabinet, the cash box and the safe. [EXH 21 & 54] **(140)**Darren Lindsay had Sharon Warden write down how many packs of each denomination without a second person counting the money packs with her. [EXH 9 & 54] **(141)**Darren Lindsay allowed Sharon Warden, identified as a suspect, to complete the task alone. **(142)**This action did not verify the amount of money in each packet as a verification would require that the money be manually counted or run through the money counter.

    SUPPORTING EVIDENCE:
    a.  Exh 9: Witness Statements (Mazur/Warden/Lindsay) - (Lindsay Had Warden Write Down Number of Packs) Pg 3, Ln 25-26
    b.  Exh 54: Lindsay Violated Work Performance Rule Pg 2, 1.i. and Unauthorized Behavior Rule Page 4, #7 / Warden Violated Work Performance Pg 1.a.
    c.  Exh 58: Mazur Affidavit #10 & #13 (Search Car, Purse, Office)
    d.  Exh 60: Job Descriptions - Fiduciary Responsibility Pg 5-7

18.  POLICE REPORT OF THE CRIME OF THEFT INITIATED ON MAY 18, 2016 **(143-144)**
    **(143)**On Wednesday, May 18, 2016, a police report of theft was initiated (two days after the alleged missing money incident on May 16, 2016) by Darren Lindsay and Barry Lowen, which was the same day Margaret Mazur received her employee performance review (EPR). **(144)**Margaret Mazur was listed as the number one suspect in the Police report of theft when Defendants admitted they had never seen any evidence and had no evidence in their possession that there was a theft. [EXH 1-6 & 11]

    SUPPORTING EVIDENCE
    a.  Exh 1: Miller Deposition - No proof of theft Pg 7 (80:17-25)
    b.  Exh 2: Lindsay Deposition - No proof of theft Pg 8 (12:17-22)
    c.  Exh 3: Kreiser Deposition - No proof of theft Pg 7 (90:23-25)
    d.  Exh 4: Adams Deposition - No proof of theft Pg 1 (9:2-17)
    e.  Exh 5: Cuthbert Deposition - No proof of theft Pg 1 (10:8-15)
    f.  Exh 6: Lowen/Ruscavage Deposition - No proof of theft Pg 2 (23:4-16) Pg 4 (19:18-22)
    g.  Exh 11: Police Report Under Seal on Record, Doc #51, Pg 1
    h.  Exh 56: EPR

19.  CUTHBERT ASSIGNED AS INVESTIGATOR FOR ALLEGED MISSING $500 **(145-152)**
    **(145)**On Thursday, May 19, 2016, Jamie Cuthbert, the assigned investigator, [EXH 8] took statements from Sharon Warden and Margaret Mazur regarding May 16, 2016 events where Darren Lindsay was the interviewer. [EXH 9] **(146)**Jamie Cuthbert had hired Sharon Warden to be her Administrative Assistant prior to the May 16, 2016 money incident. [EXH 7] **(147)**Jamie Cuthbert had an interest in protecting her newly hired employee. **(148)**Jamie Cuthbert could not be objective in an investigation when she had hired Sharon Warden, one of the suspects in the alleged $500 incident. **(149)**To have a fair and objective investigation, Jamie Cuthbert should have recused herself from investigating Sharon Warden and Margaret Mazur. **(150)**Margaret Mazur previously worked for Jamie Cuthbert and they did not part on good terms. **(151)**Margaret Mazur exhausted attempts to obtain the evidence used to suspend her to no avail. **(152)**To date, Defendants have not provided any evidence to support their disparate disciplinary actions. [EXH 20 & 58]

    SUPPORTING EVIDENCE:

   a. Exh 7: Cuthbert Statement - Hired Warden
   b. Exh 8: Interrogatory #5 - Cuthbert assigned/instructed to conduct investigation
   c. Exh 9: Witness Statements (Mazur/Warden/Lindsay)
   d. Exh 20: Discovery Docs (Doc #7 - Nothing More to Provide)
   e. Exh 58: Mazur Affidavit #17 (Mazur Didn't Part on Good Terms)

20.   LINDSAY MISREPRESENTED FACTS TO POLICE **(153-157)**
   **(153)**On Friday, May 20, 2016, Darren Lindsay knowingly misrepresented facts to Nicole
   Kolesar (the police officer that responded to the theft report #91034 that was initiated on May 18,
   2016) by implying that he was a direct witness with first-hand knowledge to what happened in the
   Accounting office on May 16, 2016. [EXH 11 & 54] **(154)**The erroneous statements made to the
   police were contradictory to Sharon Warden and Margaret Mazur's statements taken on May 19,
   2016. **(155)**Darren Lindsay being the interviewer in the May 19, 2016 statements knew what was
   said in the statements one day prior to speaking with the police. [EXH 9] **(156)**Sharon Warden
   and Margaret Mazur were the only two people that were in the Accounting office when Sharon
   Warden alleged that $500 was missing [EXH 10]. **(157)**Margaret Mazur was named in the Police
   Report as the number one suspect based on Darren Lindsay's statements to the responding Police
   Officer to the report of theft. [EXH 11]
      SUPPORTING EVIDENCE
      a. Exh 9: Witness Statements (Mazur/Warden/Lindsay) - Money Placed On Warden's Chair
      b. Exh 10: Interrogatory #15 - Warden Mental Count (Warden and Mazur only ones in office
         when Warden stated $500 missing)
      c. Exh 11: Police Report Under Seal on Record, Doc #51 - Mazur Handed Money to Warden
      d. Exh 54: Lindsay Violated Unauthorized Behavior Rule Pg 4, #7 & #10

21.   LINDSAY HAD NO POLICY FOR TURNOVER/FUNDS MANAGEMENT **(158-159)**
   **(158)**Darren Lindsay did not have an Accounting practice verbally or in writing of turnover
   counts for the money box, the canteen funds, or replenishment money until May 20, 2016, which
   was four days after the alleged missing $500. [EXH 2 & 21] **(159)**Defendants charged Margaret
   Mazur with theft and improper money handling procedures in her May 26, 2016 PDC when a
   money handling procedure didn't exist on May 16, 2016. [EXH 18, 22 & 58]
   SUPPORTING EVIDENCE:
      a. Exh 2: Lindsay Deposition - No Policy for Turnover (24:6-25:7) Pg 10
      b. Exh 18: PDCs (Mazur/Warden) Pg 1
      c. Exh 21: May 20, 2016 Funds Management Policy
      d. Exh 22: May 26, 2016 Mazur Suspension Letter Pg 1, ¶2
      e. Exh 54: Lindsay Violated Work Performance Pg 1.a. and Pg 2, 1.i.
      f. Exh 58: Mazur Affidavit #11 & #12 (No Money Handling Procedures)

22.   MAZUR GIVEN FIFTEEN MINUTE NOTICE FOR PDC WITH SERIOUS CHARGE OF
   THEFT WITH NO TIME TO GATHER EVIDENCE TO REBUT CHARGES **(160-168)**
   **(160)**On May 26, 2016 Margaret Mazur was given a notice to attend a PDC regarding the serious
   criminal charge of theft/stealing of Agency money with only 15 minutes prior notice. [EXH 16]
   **(161)**Fifteen minutes notice is not enough time to prepare to rebut a serious crime of theft.
   **(162)**Margaret Mazur was given insufficient time to obtain a lawyer to defend against being
   charged with the crime of theft. **(163)**Had she been afforded time to secure a lawyer, the lawyer
   would, as a matter of routine, have demanded proof to support the charge of theft. **(164)**The
   normal prior notice of a PDC is at least 24 hours. [EXH 17] **(165)**Jennifer McClain-Miller stated

the reason the notice for a PDC is given to the employee is so the employee has time to prepare for the PDC. [EXH 1] **(166)**Sharon Warden was afforded a full day prior notice for her staged PDC of June 3, 2016. [EXH 18 & 54] **(167)**Defendants did not accept Margaret Mazur's denial of theft and did not allow her to participate in a lie detector test which she requested. **(168)**Margaret Mazur denied all charges in her PDC and stated she brought the entire amount of the replenishment money back to the facility, and Defendants stated in Margaret Mazur's final warning letter that she "provided no acceptable explanation" for her actions". [EXH 18 & 33]

    SUPPORTING EVIDENCE:

    a. Exh 1: McClain-Miller Deposition - Give notice so you have time to prepare Pg 11 (146:4-23)
    b. Exh 16: Mazur PDC Notice
    c. Exh 17: PDC Notice - Normally 24 Hours Notice
    d. Exh 18: PDCs (Mazur/Warden) - Mazur 15 Minute Notice Pg 1 / Warden One Day Notice Pg 8 / I feel you forgot some info Sharon Pg 9, Last ¶ / Mazur brought entire amount of replenishment money back Pg 3, Ln 14 / Mazur requested lie detector test Pg 5, Ln 25
    e. Exh 33: Mazur Final Warning Letter - No Acceptable Explanation Pg 2, ¶2
    f. Exh 50: Interrogatory #16 - Miller talked w/Warden at least once
    g. Exh 54: Defendants Violated Unauthorized Behavior Pg 4, #7

23. <u>WARDEN'S PDC CHARGE SAME AS MAZUR'S</u> **(169-174)**

**(169)**Sharon Warden's June 3, 2016 PDC charges were: Work Performance <u>1.</u> Neglect of duty or responsibility, including, but not limited to: Failure to perform assigned tasks or a legitimate work assignment; Use of Property <u>2.</u> Loss of or damage to Commonwealth property through carelessness, neglect, or indifferences; Unauthorized Behavior <u>5.</u> Any action which would reflect unfavorably on or discredit the Commonwealth or Department of Military and Veterans Affairs. [EXH 18] **(170)**She was not investigated or charged with theft/stealing (which would be #3). [EXH 19] **(171)**She was not asked about what she did with the money on May 16, 2016 when she went on a smoke break after sending Margaret Mazur out to her car. **(172)**She was not asked if she took the $500. **(173)**She was not charged with leaving the money unattended on a counter while others had keys and access to the Accounting office. [EXH 18] **(174)**Sharon Warden had the same sustained charges (minus theft and stealing charge not sustained) as Margaret Mazur and was given extremely lenient discipline/punishment. [EXH 22, 33, 48 & 54]

    SUPPORTING EVIDENCE:

    a. Exh 18: PDCs (Mazur/Warden) - Warden Charges Pg 8 / Not Asked Pertinent Questions Pg 8-10
    b. Exh 19: Interrogatory #2 - Warden not investigated for theft
    c. Exh 22: May 26, 2016 Mazur Suspension Letter
    d. Exh 33: Mazur Final Warning Letter
    e. Exh 48: July 1, 2016 Warden Oral Reprimand
    f. Exh 54: Defendants Violated Unauthorized Behavior Rule Pg 4, #7

24. <u>DEFENDANTS COULDN'T CHARGE ANYONE WITH THEFT</u> **(175-184)**

**(175)**When Defendants admitted that they could not charge anyone with theft, they breached the contract in the suspension letter by not returning wages Margaret Mazur lost in the suspension without pay ($1,167) after the theft charge was not sustained. [EXH 18, 22 & 25] **(176)**The police report was not closed on June 13, 2016 when Margaret Mazur was returned to work and remained open until February 2018. [EXH 11] **(177)**Margaret Mazur went to the Zone 5 police department

and requested that she be arrested in order to exercise her due process rights to see and rebut any supporting evidence Defendants stated the police had. **(178)**Detective Thomas Nee refused to arrest her or show her the alleged "evidence" so she could exercise her due process rights under the 5th and 14th Constitutional amendments. **(179)**She also asked Defendants to contact the Police and ask that she be arrested and the Defendants said they were not going to press charges. [EXH 58] **(180)**When Margaret Mazur asked Jennifer McClain-Miller why she wasn't arrested, the answer was that Defendants took pity on her. [EXH 1] **(181)**Jennifer McClain-Miller's reason for no arrest is in direct contradiction to Kim Kreiser's statement to Jerry Beck that no one could be charged with theft. [EXH 25] **(182)**The police did not have evidence to charge Margaret Mazur with theft as Defendants (non-witnesses) admitted they didn't have **any** proof to charge her with theft and the police report is void of any proof to charge Margaret Mazur with theft. [EXH 3 & 11] **(183)**Darren Lindsay states that the police were told by Barry Lowen that they were not going to press charges against Margaret Mazur [EXH 2], but the police report for theft remained open until February 2018. [EXH 11] **(184)**The charges of theft had already been charged in Margaret Mazur's May 26, 2016 PDC where she was suspended without pay based on the charge of theft. [EXH 18 & 22]

    SUPPORTING EVIDENCE
   a.  Exh 1: McClain-Miller Deposition - Why Charges Not Filed Pg 8(85:3-5)
   b.  Exh 2: Lindsay Deposition - Barry Not Going to Press Charges Pg 3 (32:4-20)
   c.  Exh 3: Kreiser Deposition - No proof to charge for theft Pg 1 (13:7-11, 13:20-21) Pg 6 (45:18-25)
   d.  Exh 11: Police Report Under Seal on Record, Doc #51
   e.  Exh 18: PDCs (Mazur/Warden) Pg 1 #3 Theft/Stealing
   f.  Exh 22: Mazur Suspension Letter - Contract to return wages when no evidence found Pg 1 ¶2 and ¶4
   g.  Exh 25: Kreiser Email to Jerry Beck - Can't charge anyone with theft Pg 1, Ln 20-21
   h.  Exh. 58: Margaret Affidavit #18 (Requested to be Arrested)

25.  <u>SAME CHARGES FOR SIMILARLY SITUATED EMPLOYEES BUT WIDELY DIFFERENT OUTCOME</u> **(185-192)**
**(185)**The DMVA disciplinary rules require a full and complete investigation of "allegations". **(186)**If an allegation is found by evidence to be true; then and only then is the employee charged with whatever was alleged and disciplined. **(187)**Black's Law Dictionary definition for ALLEGATION: "The assertion, claim, declaration of a party to an action made in a pleading, setting out what he expects to prove. " **(188)**An employee should not be disciplined on an allegation since it robs the employee of their due process rights to see and rebut the "proof" being used for the discipline. **(189)**Sharon Warden and Margaret Mazur were charged with the same charge (failing to maintain proper custody and control of the petty cash replenishment); Kim Kreiser stated Margaret Mazur was suspended "because of the allegations" yet Sharon Warden was not suspended on the same allegations. [EXH 3, 22, 33, 48 & 54] **(190)**Sharon Warden was initially just counseled on the May 16, 2016 incident [EXH 25 & 31] until Margaret Mazur sent an email to Jamie Cuthbert (June 1, 2016) pointing out and opposing the disparate treatment that Sharon Warden was still at work while Margaret Mazur was going to be receiving a letter of firing. [EXH 29] **(191)**This email prompted the June 3, 2016 PDC where Sharon Warden received only an Oral Reprimand [EXH 48] for the same charges where Margaret Mazur was suspended without pay. [EXH 22] **(192)**There was no documentation discussing an Oral Reprimand or any

discipline for Sharon Warden until June 6, 2016 [EXH 32], which is after Margaret Mazur
pointed out the disparate treatment in her June 1, 2016 email to Jamie Cuthbert. [EXH 29]
    SUPPORTING EVIDENCE:
    a.  Exh 3: Kreiser Deposition - Mazur suspended on allegations (72:6-8) Pg 8
    b.  Exh 22: May 26, 2016 Mazur Suspension Letter - Suspended without pay Pg 1, ¶2
    c.  Exh 25: Kreiser Email to Jerry Beck (Warden Counseled) Pg 1, Ln 23
    d.  Exh 27: McClain-Miller 4-page Statement - June 8, 2016 Sharon will receive an Oral
        Reprimand Pg 2, ¶5
    e.  Exh 29: June 1, 2016 Mazur Email to Cuthbert
    f.  Exh 31: Cuthbert Email - Warden counseled / Disciplinary Actions - Counseling is for
        minor infractions
    g.  Exh 32: Kreiser Email - Oral Reprimand for Warden Pg 5
    h.  Exh 33: Mazur Final Warning Letter
    i.  Exh 48: July 1, 2016 Warden Oral Reprimand
    j.  Exh 54: Defendants Violated Unauthorized Behavior Pg 4, #7

26.   GRIEVANCE FILED ON JUNE 1, 2016 WITHOUT MAZUR'S KNOWLEDGE **(193-201)**
**(193)**A grievance was filed on June 1, 2016 by Rita Thomas, but Margaret Mazur was not
informed of a grievance filed as an "employee grievance" for her, didn't initiate a grievance,
didn't authorize the union to file a grievance, and did not sign the grievance. [EXH 28] **(194)**An
employee grievance is initiated by the employee. **(195)**Margaret Mazur was not aware of a
grievance being filed until she obtained a copy much later through discovery requests. **(196)**When
a grievance is filed, there is a step one, two, and three procedure. [EXH 58] **(197)**At step one,
according to Jamie Cuthbert, information packets and evidence is exchanged and that did not
happen between John Galuska and Jennifer McClain-Miller. [EXH 5] **(198)**The Union is legally
required to represent the best interests of its members and that would require the union to request
information/proof (RFI) for the charges against the member(s). [EXH 5] **(199)**Defendants are
required to meet the burden of proof for charges before any discipline is dispersed. **(200)**DMVA
disciplinary rules require that the employee charged with violations must be provided the
supporting evidence/specifics for the charges. [EXH 54] **(201)**Margaret Mazur had to request a
copy of the grievance through discovery requests and has yet to be provided or allowed to see any
just cause/proof for the charges against her. [EXH 58]
    SUPPORTING EVIDENCE:
    a.  Exh. 5: Cuthbert Deposition - Exchanging Info Packets (36:24-37:16)
    b.  Exh. 28: June 1, 2016 Grievance
    c.  Exh. 54: Disciplinary Rules, Policies, Procedures To Provide Specifics of Charges (Pg 5,
        ¶2) and meet the required burden of proof (Pg 5, ¶3)
    d.  Exh. 58: Mazur Affidavit #19 (Grievance)

27.   MAZUR OPPOSED REPRESENTATION FROM GALUSKA **(202-212)**
**(202)**When John Galuska, AFSCME Union Representative, called Margaret Mazur on June 7,
2016, he did not tell her a grievance was filed. **(203)**He told Margaret Mazur he would be meeting
with Jennifer McClain-Miller on June 8, 2016 to discuss bringing her back to work.
**(204)**Margaret Mazur told John Galuska on June 7, 2016 that she didn't want him representing
her unless he was going to say that she was not guilty of any of the charges and for him to
demand any evidence or proof from the Agency for the charges against her. [EXH 53] **(205)**John
Galuska did not do a Request for Information (RFI) [EXH 1] to obtain the alleged evidence that

Defendants stated they had to support the disparate discipline for Margaret Mazur on the charge of theft or the other miscellaneous charges. **(206)**Margaret Mazur was already disciplined for a charge of theft on May 26, 2016. [EXH 22] **(207)**Jennifer McClain-Miller's June 7, 2016 email states that the **plan** was for John Galuska to sign off on the pre-grievance settlement (PGS) on June 8, 2016. **(208)**John Galuska had a legal obligation of fair representation and was required to represent the best interests of Margaret Mazur by making sure Defendants had just cause and proof to support the charge(s) against her, but he did not ask for any proof from Jennifer McClain-Miller. **(209)**Jennifer McClain-Miller stated that she initiated negotiations with John Galuska on June 1, 2016. [EXH 32] **(210)**According to Doc #26, a decision was made prior to June 1, 2016 to bring Margaret Mazur back to work with a time served suspension. **(211)**A decision being made for a time served suspension prior to June 1, 2016 would preclude negotiations between John Galuska and Jennifer McClain-Miller for a time served suspension. **(212)**The Union violated their legal duty to represent Margaret Mazur's best interests by negotiating a more detrimental discipline and agreeing to add an unsubstantiated "Final Warning" to the decision made prior to June 1, 2016 of a time served suspension. [EXH 20 & 33]

SUPPORTING EVIDENCE:
a. Exh 1: McClain-Miller Deposition - Galuska didn't do an RFI Pg 10 (142:23-143:3)
b. Exh 20: Discovery Docs (Doc #26 - Prior to June 1, 2016)
c. Exh 22: May 26, 2016 Mazur Suspension Letter Pg 1 ¶2
d. Exh 27: McClain-Miller 4-page Statement - Warden to receive Oral Reprimand Pg 2, ¶5
e. Exh 32: PGS/June 7, 2016 Email - Plan is for him to sign off on PGS / Interrogatory #8 First contact with Galuska for Negotiations June 1, 2016  / June 6, 2016 Kreiser Email- Try for PGS for Margaret
f. Exh 33: Mazur Final Warning Letter
g. Exh 53: UC Testimony - Strongly opposed Union Representation (Pg 32-33)
h. Exh 58: Mazur Affidavit #20 (Galuska)

## ISSUE NO. 2: RETALIATION

28. <u>ANDREW RUSCAVAGE AUTHORIZED PUSH BACK AGAINST MAZUR</u> **(213-224)**
**(213)**On June 15, 2016, Andrew Ruscavage, the Director of all six Veterans Homes, directed management to "push back" against Margaret Mazur if she continued to push to clear her record. [EXH 37 & 54] **(214)**He also made a statement in an email that Margaret Mazur didn't have any appeal rights. [EXH 38]  **(215)**The "push back" started on Friday, June 17, 2016, **two** days after Andrew Ruscavage's direction to managers and HR personnel to "push back". **(216)**Barry Lowen directed Darren Lindsay to require Margaret Mazur to bring a doctor's note to be able to return to work after two sick days on June 16&17, 2016. [EXH 2] **(217)**Barry Lowen stated in an email that he didn't believe that Margaret Mazur was sick. [EXH 44] **(218)**Margaret Mazur was not under a "Leave Restriction Letter" for abusing sick leave and Jamie Cuthbert, in charge of time and attendance, stated that Margaret Mazur was not one to abuse sick leave. [EXH 5] **(219)**Barry Lowen stated that she had broken Chain of Command so he didn't feel obligated to answer her email where she was requesting to know why she was required to bring a doctor's note. [EXH 45 & 54] **(220)**Margaret Mazur had contacted her supervisor prior to contacting Barry Lowen so she followed the chain of command. [EXH 43] **(221)**Barry Lowen didn't require any other employees to produce a doctor's note to return to work. **(222)**Sharon Warden was not required to bring a doctor's note when she took sick leave. [EXH 54] **(223)**This action was in compliance with the direction and authorization to "push back" and it was taken in proximity for Margaret Mazur

immediately opposing Agency violations of unequal treatment within the first hour of being back to work on June 13, 2016. **(224)**Margaret Mazur opposed the unfair requirement of Barry Lowen not allowing her to return to work without a doctor's note, forcing her to go through the extra cost and having to use another sick day to get a doctor's note. [EXH 58]

SUPPORTING EVIDENCE:

a.  Exh 2: Lindsay Deposition - Barry Lowen required doctor's note Pg 1 (11:21-12:1) / PDC Threats Pg 6 (59:13-16)
b.  Exh 5: Cuthbert Deposition - Mazur doesn't abuse sick leave Pg 14 (108:10-14)
c.  Exh 37: June 15, 2016 (Ruscavage Push Back Email/Mazur June 14, 2016 Email)
d.  Exh 38: Interrogatory #23- Ruscavage Frustrated / Ruscavage Email - No Appeal Process
e.  Exh 43: Text to Lindsay - Questioning Doctor's Note Requirement
f.  Exh 44: Lowen Emails - Mazur Sick Time
g.  Exh 45: Interrogatory #24 - Margaret Mazur broke Chain of Command
h.  Exh 54: Ruscavage Violated Unauthorized Behavior Pg 4, #12 / Lowen Violated Unauthorized Behavior Pg 4, #7 & #10 / Defendants Violated Unauthorized Behavior Pg 4, #7
i.  Exh 58: Mazur Affidavit #21 (Opposed doctor note requirement)

29.  ALLEGED EVIDENCE SHARED OVER PHONE IN CONFERENCE CALL WITH POLICE
**(225-235)**
**(225)**On May 25, 2016 Detective Thomas Nee left a message for Darren Lindsay to call him back. [EXH 11] **(226)**A conference call was held with Darren Lindsay, Rich Adams, Barry Lowen, Kim Kreiser and Legal from DMVA with Detective Thomas Nee. **(227)**This conference call is where Detective Thomas Nee allegedly said that he had enough evidence to charge and take Margaret Mazur out in handcuffs for theft. **(228)**According to Rich Adams, the evidence to support an arrest was turned over to legal. [EXH 4] **(229)**In the UC Transcript, Rich Adams states that Barry Lowen told him the findings of the Police [EXH 53] and Darren Lindsay said the alleged evidence the police had was shared over the phone on the conference call [EXH 2]. **(230)**Defendants ignored the different account of alleged evidence from the police and what was recorded in the May 19, 2016 statements, and they still proceeded to PDC and suspend Margaret Mazur without pay for theft based solely on Thomas Nee's alleged statement that he had enough to arrest Margaret Mazur and take her out in handcuffs. [EXH 9, 11, 18 & 22] **(231)**The Defendants denied asking for the evidence to support an arrest, [EXH 3] but they were provided the alleged evidence in the May 25, 2016 conference call. [EXH 2] **(232)**Barry Lowen stated that the Police evidence was not needed to suspend Margaret Mazur without pay on the charge of theft. **(233)**He indicated that he didn't receive the alleged evidence prior to Margaret Mazur's PDC. [EXH 2 & 53] **(234)**According to discipline rules, the assigned investigator for the charge of theft, Jamie Cuthbert, had the responsibility to obtain the evidence the Police allegedly stated was sufficient to arrest Margaret Mazur and take her out in handcuffs. [EXH 54] **(235)**The Police report shows absolutely no evidence sufficient to arrest and handcuff Margaret Mazur. [EXH 11].

SUPPORTING EVIDENCE

a.  Exh 2: Lindsay Deposition - Police Shared Evidence Over Phone Pg 6-7 (60:21-64:9)
b.  Exh 3: Kreiser Deposition - Conference Call Attendees Pg 2 (14:8-18) / Defendants denied asking for evidence Pg 2 (14:21-24)
c.  Exh 4: Adams Deposition - Nee Enough Evidence to Charge for Theft Pg 2 (31:23-25) / Evidence turned over to legal Pg 2 (32:1-3)

d. Exh 6: Lowen Deposition - Don't need police evidence prior to suspending Mazur Pg 1 (18:3-21:14)
e. Exh 11: Police Report Under Seal on Record, Doc #51
f. Exh 18: Mazur PDC - Kreiser statement, police have enough to charge you Pg 6 ¶19
g. Exh 22: May 26, 2016 Mazur Suspension Letter
h. Exh 53: August 23, 2017 UC Transcript, Pg 40, Ln 10-12
i. Exh 54: Disciplinary Rules, Policies, Procedures - Responsibility to obtain evidence Pg 7(d) and Pg 8, (8)d.

30. <u>KIM KREISER - POLICE HAVE ENOUGH TO CHARGE MAZUR WITH THEFT</u> **(236-241)** **(236)**At the May 26, 2016 PDC, Kim Kreiser, stated that the Police Investigation had enough to charge Margaret Mazur with theft of the missing $500. [<u>EXH 18</u>] **(237)**The Agency is required to have substantial evidence in their possession that the employee acted as charged prior to taking disciplinary actions against an employee according to the DMVA disciplinary rules. [<u>EXH 54</u>] **(238)**Defendants state that they did not request the alleged Police Evidence and they had no evidence to support the theft charges against Margaret Mazur. [<u>EXH 3 & 11</u>] **(239)**Jamie Cuthbert states that employees cannot see the Agency "evidence" until the first step of the grievance but there was no first step grievance meeting conducted. [<u>EXH 5</u>] **(240)**Defendants have no witnesses with first hand knowledge and no valid evidence in their possession to charge Margaret Mazur with any of the charges listed in the May 26, 2016 PDC. **(241)**She has repeatedly requested the "evidence" and nothing has been provided to allow her to exercise her due process rights to rebut. [<u>EXH 58</u>]

SUPPORTING EVIDENCE:
a. Exh 3: Kreiser Deposition - No evidence to charge for theft Pg 1 (13:7-11, 13:20-21) Pg 6 (45:18-25)
b. Exh 5: Cuthbert Deposition - Can't see evidence until Step 1 of Grievance Pg 8 (42:12-43:19)
c. Exh 11: Interrogatory #10 - Police Report Not Obtained
d. Exh 18: PDCs (Mazur/Warden) - Police Have Enough to Charge for Theft Pg 6, Last ¶
e. Exh 54: Disciplinary Rules, Policies, Procedures - Substantial Evidence Employee Acted as Charged Prior to Discipline Pg 5
f. Exh 58: Mazur Affidavit #22 (No Witnesses/No Evidence/Requested Evidence)

31. <u>JUNE 17, 2016 UC CLAIM DENIED WITH FALSE FINDINGS OF FACT</u> **(242-250)** **(242)**Margaret Mazur's UC Claim of May 26, 2016 was denied based on seven false statements given to the UC Representative by Jamie Cuthbert. [<u>EXH 54</u>] **(243)**Jamie Cuthbert read the seven statements of fact and said that it did match the Agency's position. [<u>EXH 1</u>] **(244)**Jamie Cuthbert stated she was contacted on the last day for the UC Representative to make a determination. [<u>EXH 39</u>] **(245)**Jamie Cuthbert falsely stated in interrogatories that on the last day (June 17, 2016)where she was contacted for a phone interview, a decision was still pending on Margaret Mazur's suspension. [<u>EXH 30, 42, 54 & 58</u>] **(246)**Margaret Mazur was also contacted by the UC Representative at 11:38 a.m on the last day for a determination to be made, which was June 17, 2016, the date of the UC Determination Letter. **(247)**Margaret Mazur was back to work on June 13, 2016. [<u>EXH 41 & 58</u>] **(248)**Jamie Cuthbert was present at the June 2, 2016 meeting with Mike Barrett, Andrew Ruscavage, Kim Kreiser, Jennifer McClain-Miller, Rich Adams and Barry Lowen where discipline was allegedly decided to bring Margaret Mazur back with a "time served suspension". [<u>EXH 25</u>] **(249)**Defendants stated in Doc #26 that the decision for a time served

suspension was made prior to June 1, 2016. [EXH 20 & 40] **(250)**The June 2, 2016 meeting was actually to determine how to bring Margaret Mazur back after they had already made a decision to terminate her. [EXH 29]

    SUPPORTING EVIDENCE:

    a.  Exh 1: Cuthbert Deposition - Seven findings of fact Agency's position Pg 2 (49:5-12)

    b.  Exh 20: Discovery Docs (Doc #26 - Prior to June 1, 2016)

    c.  Exh 25: Kreiser email to Jerry Beck - June 2, 2016 Meeting Attendees Pg 1, ¶4

    d.  Exh 29: June 2, 2016 Email - Mazur Termination

    e.  Exh 30: UC (Cuthbert/Emails/Interrogatory #9, #16) - decision still pending for Mazur suspension

    f.  Exh 39: UC Request for Information - 2 weeks for Agency to respond

    g.  Exh 40: May/June 2016 Calendar

    h.  Exh 41: Mazur Phone Log for June 17, 2016

    i.  Exh 42: June 17, 2016 UC Determination / Mazur Appeal Response to 7 Findings of Fact

    j.  Exh 54: Cuthbert Violated Unauthorized Behavior Rule Pg 4, #10 /

    k.  Exh 58: Mazur Affidavit #23 (Contacted by UC - June 17, 2016)

32.   <u>CUTHBERT GAVE ERRONEOUS INFORMATION TO UC ON JUNE 17, 2016</u> **(251-264)** **(251)**Jamie Cuthbert gave false information to the UC Representative on June 17, 2016. [EXH 39-41 & 54] **(252)**The UC Determination was attached to an email sent to Jamie Cuthbert and she verified that she gave the information to the UC Representative. [EXH 30] **(253)**She admits that the Seven Findings of Fact on the June 17, 2016 UC determination letter coincide with the Agency's position and that she read all seven allegations from the PDC but they don't appear in the PDC. [EXH 1] She contradicts herself and says she doesn't know where the UC Representative got the information even though she stated in an email she provided the information to the UC Representative. [EXH 30] **(254)**She said she read the charges from the May 26, 2016 PDC with the exception she falsely attributes to Margaret Mazur saying she admits she didn't count the money at the bank. **(255)**Jamie Cuthbert claims that Margaret Mazur **stated** in her May 19, 2016 witness statement she didn't count the money at the bank. [EXH 5] **(256)**Margaret Mazur's witness statement specifically states that she **did** count the money going "off of Becky's sheet of denominations and amounts". **(257)** Jamie Cuthbert signed an Affidavit stating her thoughts at the time she spoke with the UC Representative was that Margaret Mazur didn't count the money alone at the bank. **(258)**Jamie Cuthbert specifically made the claim that "she **stated** she didn't count the money at the bank". **(259)**Margaret Mazur did not infer/declare/**state** she didn't count the money at the bank in her witness statement, in the PDC or at any time. [EXH 5 & 9] **(260)**Jamie Cuthbert's job description requires her to follow Agency policies and procedures. [EXH 60] **(261)**Making false statements is unauthorized behavior according to DMVA Rules, Policies and Procedures. [EXH 54] **(262)**The seven "statements of fact" in the June 17, 2016 UC determination letter are not listed in the PDC charges. [EXH 18 & 42] **(263)**Jamie Cuthbert was unable to show any document where Margaret Mazur admitted she did not count the money at the bank even after Jamie Cuthbert stated she could provide the document. [EXH 5] **(264)**Margaret Mazur's statement from Jamie Cuthbert's typed PDC notes specifically says that she **did count** the money with the teller. [EXH 1, 18 & 42]

    SUPPORTING EVIDENCE:

    a.  Exh 5: Cuthbert Deposition - Seven Findings of Fact Agency's Position Pg 2 (49:5-12) / Different answers given for Seven Findings of Fact Pg 9-11 (81:11-87:13) Pg 4-5 (85:15-87:17) Pg 12 (91:9-92:9) Pg 6 (94:22-95:24) / All seven allegations read from

PDC Pg 5 (86:15-18) / Didn't Count Money at Bank Pg 5 (86:19-24, 87:4-13) / Can provide document that states Margaret Mazur didn't count money at bank Pg 11 (89:19-20)

b. Exh 9: Witness Statements (Mazur/Warden/Lindsay) - Counted Money Going Off Teller Sheet Pg 1, Ln 21

c. Exh 18: PDCs (Mazur/Warden) - Charges, Page 1 / Mazur Counted Money at the Bank, Pg 6, Ln 7-8

d. Exh 30: UC (Cuthbert Emails/Interrogatories #9, #16) - Gave info to UC Pg 1&2 / Stated case was pending/Don't know where UC person obtained information Pg 3&4

e. Exh 39: UC Request for Information - 2 Weeks for Employer to Respond

f. Exh 40: May/June Calendar

g. Exh 41: May/June 2016 Calendar

h. Exh 42: June 17, 2016 UC Determination - Findings of Fact #1-7

i. Exh 54: Cuthbert Violated Unauthorized Behavior Rule Pg 4, #10

j. Exh 60: Job Descriptions - Cuthbert required to follow Agency Policies and Procedures Pg 11

33. PA STATUTES TITLE 43 P.S. LABOR § 872. FALSE STATEMENTS **(265-267)**
**(265)**UC defines false statements to influence a decision on UC benefits as fraud. **(266)**The Agency disciplinary rules forbid false statements [EXH 54], but the Agency did not PDC or charge Jamie Cuthbert after learning that she provided false information to UC. **(267)**Margaret Mazur opposed this unfair application of the Agency disciplinary rules that no action was taken against Jamie Cuthbert for participating in unauthorized behavior which caused her to lose her UC benefits. [EXH 58]
   SUPPORTING EVIDENCE:
   a. Exh. 54: Cuthbert Violated Unauthorized Behavior Rule Pg 4 #10
   b. Exh. 58: Mazur Affidavit #57 (Contacted by UC June 17, 2016)

34. LINDSAY NOT SUSPENDED FOR VIOLENT SHOOTING INCIDENT **(268-2)**
**(268)**In September 2016, Darren Lindsay was involved in a shooting in New Kensington where he shot people and was shot. **(269)**The gun he used to shoot people was not registered. **(270)**Darren Lindsay was not suspended while his criminal case was pending. **(271)**He was allowed to stay in his supervisory position. [EXH 55] **(272)**He bragged about the shooting to many employees. **(273)**He stated that people from the hood had to take the law into their own hands. **(274)**He became more violent, abrasive and intimidating at work after the incident and regularly threatened Margaret Mazur with PDCs for minor issues, yelled at her for minor incidences, closed her door and exhibited intimidating behavior by blocking Margaret Mazur in her office and yelling at her without the ability for her to have union representation. **(275)**He stood in her office door and sang: "You're no good, You're no good" to her. **(276)**He regularly made the statement to her: "You ain't nobody" even after he said "No more joking". [EXH 2, 53, 54 & 58]
   SUPPORTING EVIDENCE:
   a. Exh 2: Lindsay Deposition - You're No Good Pg 6 (59:3-8) /You Ain't Nobody Pg 6 (60:3-5)
   b. Exh 53: August 23, 2017 UC Testimony (You Ain't Nobody) Pg 56, Ln 6-10
   c. Exh 54: Lindsay Violated Unauthorized Behavior Rule Pg 4, #2
   d. Exh 55: Newspaper Article/Court Case

    e.  Exh 58: Mazur Affidavit #24 (Became More Violent at Work)

**ISSUE NO. 3:  DUE PROCESS VIOLATIONS OF THE 5TH AND 14TH AMENDMENT TO THE CONSTITUTION**

35.  <u>DEFENDANTS MADE DUE PROCESS VIOLATIONS IN MAY 26, 2016 PDC **(277-291)**</u> **(277)**Margaret Mazur's Constitutional due process rights were violated in the May 26, 2016 PDC by Defendants not showing any supporting evidence for the charge/crime of theft/stealing or loss of money and making a determination of termination without any process for Margaret Mazur to rebut the decision. **(278)**She specifically requested any and all evidence in order to review and rebut. **(279)**Margaret Mazur cannot rebut the alleged evidence/proof if Defendants don't present it. **(280)**She was given zero time to gather evidence to present to rebut the listed charges on the PDC notice. [EXH 3 & 58] **(281)**The PDC is called a "Due Process Conference". [EXH 18] **(282)**DMVA disciplinary rules require a thorough and objective investigation into any disciplinary charges prior to effecting discipline. [EXH 54] **(283)**No evidence has ever been provided to support even an alleged charge of theft. [EXH 58] **(284)**Defendants state they didn't suspend Margaret Mazur for theft, but for her role in the loss of $500 but the PDC notice, notes and the proposed discipline letter shows clearly that she was charged with the crime of theft. [EXH 18, 24, 26, 33] **(285)**Defendants had already pre-decided that she had a violation of DMVA Rules:  **2. Loss of or damage to Commonwealth property through carelessness, neglect, or indifferences; Unauthorized Behavior**, so there was no need for further investigation to support a decision or conclusion already made. **(286)**As for theft, Defendants had already spoken to the police on May 25, 2016 and heard their alleged evidence, so there was nothing further to investigate on theft. **(287)**The Defendants (Darren Lindsay, Barry Lowen, Richard Adams, DMVA chief counsel attorneys, and Kim Kreiser were on the phone with the police in a conference call on May 25, 2016 and did hear the evidence of what Thomas Nee considered evidence to arrest Margaret Mazur. **(288)**According to Kim Kreiser, after Defendants heard the police had enough to arrest Margaret Mazur on the conference call and they heard the alleged evidence the police had (according to deposition testimony from Darren Lindsay), they didn't want to press charges. [EXH 2 & 3] **(289)**The charge of theft was still listed on the May 26, 2016 PDC, the suspension letter, and the proposed discipline a day after the conference call with the police. [EXH 22 & 26] **(290)**The effects of the denial of due process and false allegations/charges being made are: loss of UC benefits due to misrepresentation by Jamie Cuthbert, loss of reputation, loss of a career, loss of income and the ability to obtain future equivalent employment. **(291)**Their violations of the Constitution by Defendants have caused severe emotional distress and damages to Margaret Mazur. [EXH 58]

    SUPPORTING EVIDENCE:
    a.  Exh 2: Lindsay Deposition - Defendants hear alleged evidence Pg 6-7 (60:21-64:9)
    b.  Exh 3: Kreiser Deposition - No Evidence for theft Pg 1 (13:7-11, 13:20-21) Pg 2 (14:8-24) Pg 6 (45:18-25) / No Due Process Afforded to Rebut Termination Decision Decided Pg 2 (16:1-25) Pg 3 (18:19-25) Pg 4 (34:9-17)
    c.  Exh 18: PDCs (Mazur/Warden) - #3 Stealing/Theft / Due Process Conference Pg 1
    d.  Exh 22: Mazur Suspension Letter - #3 Stealing/Theft
    e.  Exh 26: Proposed Discipline (Mazur/Warden) - #3 Stealing/Theft
    f.  Exh 54: Disciplinary Rules, Policies, Procedures - Thorough and Objective Investigation Pg 5
    g.  Exh 58: Mazur Affidavit #25 (No evidence to support charge of theft)

36. <u>BUSHINSKI MADE DUE PROCESS VIOLATIONS IN LETTER TO EEOC AND MADE
FALSE STATEMENTS IN VIOLATION OF DMVA RULES, POLICIES AND PROCEDURES
AND</u>  **(292-293)**
**(292)**Bushinski failed to provide attachments to Margaret Mazur from the letter he sent to EEOC
stating the Agency Position. [<u>EXH 19</u>] **(293)**A majority of his letter does not accurately reflect
the timing of events and is void of facts. Some examples of false statements:

[1] "Ms. Warden and Ms. Mazur determined that the bag contained only $4,200.00, instead of
$4,700.00". / Ms. Mazur did not determine that the bag contained only $4,200.00. Ms. Warden
made a statement that $500 was missing and her statement was not verified by a second count of
the money. A mental count by Sharon Warden is not verifiable.

[2] "Ms. Mazur and Ms. Warden immediately began a search for the missing funds". / Ms. Mazur
was sent out to her car immediately after the statement $500 was missing while Sharon Warden
called the bank and then went on a smoke break leaving the replenishment money on the file
cabinet unattended.

[3] "She admitted that she had left the bag containing the cash unattended on Sharon Warden's
desk chair" / Margaret Mazur never admitted leaving any money unattended. She had control and
sight of the funds until Sharon Warden took possession of the funds.

[4] "Ms. Mazur stated that she believed that the money had been stolen by the bank manager" /
Margaret Mazur **never** stated she believed that the money had been stolen by the bank manager.
She stated she believed Sharon Warden set her up.

[5] "Ms Mazur conjectured during the PDC, the bank manager had stolen the funds...if only she
made an accurate count of the money." / Margaret Mazur **never** conjectured the bank manager
stole the funds and the bank manager had nothing to do with Margaret Mazur counting funds with
the teller going off the teller's sheet. Darren Lindsay shared details of the bank footage with
Margaret Mazur and one of the details was that the bank manager approached the teller's station
**after** Margaret Mazur had already counted the money with the teller and left the bank.

[6] "She stated that upon discovering that $500.00 was missing, she searched her car" / Margaret
Mazur did not state that *upon discovering $500 was missing*... Sharon Warden stated she did a
mental count to determine $500 was missing. Sharon Warden making a statement does not
validate or verify that there was $500 missing.

[7] "By her own admission, Ms. Mazur left the money unattended" / Margaret Mazur did not
admit to leaving the replenishment money unattended at **any** time. Margaret Mazur had control
and sight of the replenishment money until Sharon Warden took possession of the money. [<u>EXH
19 & 54</u>]

    SUPPORTING EVIDENCE:
      a.  Exh 9: Witness Statements (Mazur/Warden/Lindsay)
      b.  Exh 18: PDCs (Mazur/Warden)
      c.  Exh 19: Bushinski Letter - Failed to provide attachments Pg 1 / Bag contained only
          $4,200 Pg 3, ¶2 / Immediate search of the funds Pg 3, ¶3 / Admitted leaving money
          unattended Pg 3, ¶5 / Stolen by bank manager Pg 3, ¶5 / Conjectured bank manager stole
          funds Pg 3, ¶7 / Stated upon discovering $500 was missing Pg 4, ¶1 / By her own
          admission Pg 4, ¶2
      d.  Exh 54: Bushinski violated Unauthorized Behavior Pg. 4 #10

37. <u>DEFENDANTS SENT MAZUR TO RIGHT TO KNOW LAW FOR EVIDENCE</u> **(294-295)**
**(294)**Margaret Mazur was sent to the Right to Know Law (RTKL) to attempt to get evidence  that
allegedly supported her unjust suspension without pay, [<u>EXH 46</u>] Defendants knew that the

Internal Investigation folder was not admissible through the RTKL. [EXH 25] **(295)**Margaret Mazur was denied due process to rebut the Defendants "evidence" for the suspension and final warning and Kim Kreiser sent an email soliciting complaints against Margaret Mazur.
SUPPORTING EVIDENCE:
a. Exh 25: Kreiser email to Jerry Beck Pg 1, ¶6
b. Exh 46: RTKL - McClain-Miller Email
c. Exh 57: Kreiser quote, "If she becomes disruptive…"

38. DEFENDANTS IGNORED MAZUR'S REBUTTAL TO CHARGES **(296-301)**
**(296)**Margaret Mazur had proofs to rebut the charges against her but the Defendants refused to take note of her proofs and instead stated that she did not provide an acceptable explanation for her actions. [EXH 33 & 58] **(297)**Margaret Mazur stated in her PDC that: she counted the replenishment money with the bank teller and verified the amount received was correct by looking at the bank teller sheet (which added up to the amount of the replenishment check), she didn't stop anywhere between the bank and SWVC, she brought the whole amount of replenishment money back from the bank to the Accounting office, and she kept the replenishment money in a locked office within her control and sight at all times until Sharon Warden took possession of the replenishment money. [EXH 18 & 58] **(298)**None of these statements can be rebutted by Defendants as Margaret Mazur was alone in the Accounting office. **(299)**In Mr. Bushinski's statement, he said others could have entered the office and took the money. [EXH 52] **(300)**In Margaret Mazur's PDC, Kim Kreiser asked how many people had keys to the Accounting office. [EXH 18] **(301)** Had anyone other than Sharon Warden or Darren Lindsay entered the Accounting office and took or tried to take the money; Margaret Mazur would have notified security which was just outside the Accounting office. and if the video footage of the hallway leading to the Accounting office had been preserved, it would have shown that Sharon Warden was the only individual to enter the office after Margaret Mazur returned from the bank. [EXH 58]
a. Exh 9: Witness Statements (Mazur/Warden/Lindsay) - Counted Money off of Teller's sheet Pg 1, Ln 21
b. Exh 18: PDCs (Mazur/Warden) - Counted Money with Teller Pg 6, Ln 7-8 / No Stops Between Bank and SWVC Pg 2, Ln 26/ Brought Whole Amount Back From Bank Pg 3, Ln 14/ Money Guarded Until Warden Took Control Pg 4, Ln 17-23 / Keys to Accounting Office Pg 3, Ln 24-25
c. Exh 33: Mazur Final Warning Letter Pg 2, ¶2
d. Exh 52: November 17, 2016 Bushinski Statement Pg 4, ¶1
e. Exh 58: Mazur Affidavit #26 (Counted Money with Teller / No Stops Between Bank and SWVC / Brought Whole Amount Back From Bank / Money Guarded Until Warden Took Control / Would Have Notified Security / #7-10 Proofs to Rebut Defendants Charges)

**ISSUE NO. 4:  PRETEXT - FALSE REASONS GIVEN FOR ACTIONS TAKEN**

39. SUSPENSION PRE-DECIDED FOR MAZUR **(302-308)**
**(302)**The May 26, 2016 suspension letter that Margaret Mazur received immediately after the PDC cited theft and violation of work rules and policies. **(303)**The suspension letter was provided to Rich Adams, the deciding official, by the GAP/DMVA and signed by Rich Adams before the PDC was conducted. [EXH 4] **(304)**Jamie Cuthbert printed the pre-signed suspension letter from her computer immediately following the May 26, 2016 PDC and gave it to Margaret Mazur. **(305)** She was then escorted out of the building in front of her coworkers with her belongings by Jamie

Cuthbert and told she was no longer allowed on the premises. [EXH 58] **(306)**Rich Adams stated that the GAP, not Jamie Cuthbert, sent him the letter and he felt comfortable signing the suspension letter charging theft because of the statement from the police. [EXH 4] **(307)**In UC testimony, he stated under oath that he knew Margaret Mazur was not a thief which conflicts with him signing the suspension letter deciding that Margaret Mazur was guilty of theft. [EXH 53] **(308)**The decision to suspend Margaret Mazur without pay was made prior to the PDC based on the conference call where the Detective Nee alleged that he had evidence to arrest Margaret Mazur.

> SUPPORTING EVIDENCE:
> a.  Exh 4: Adams Deposition - Felt Comfortable Signing/GAP directed him to sign Pg 3 (41:2-15)
> b.  Exh 22: Mazur Suspension Letter
> c.  Exh 53: UC Testimony - Adams statement: "I know you're not a thief" Pg 42
> d.  Exh 58: Mazur's Affidavit #27 (Pre-signed Suspension Letter)

40.  <u>CONTRADICTIONS OF DISCIPLINE DECIDED FOR MAZUR</u> **(309-326)**
**(309)**Margaret Mazur's suspension letter stated she was suspended without pay pending an investigation. [EXH 22] **(310)**The proposed discipline for Margaret Mazur given to Rich Adams from Barry Lowen listed the criminal charge of theft. [EXH 26] **(311)**The proposed discipline was to fire Margaret Mazur for theft as theft is a firing offense. [EXH 3 & 18] **(312)**Doc. #26 states that a decision to bring Margaret Mazur back under a "time served suspension" was allegedly decided prior to June 1, 2016. [EXH 25] **(313)**The Defendants didn't need to meet on June 2, 2016 [EXH 25] to decide a "time served suspension" if it had already been decided prior to June 1, 2016. [EXH 20] **(314)**A decision made prior to June 1, 2016 would leave May 27 and 31, 2016 (two work days) to make this decision to bring Margaret Mazur back under a "time served suspension" as May 30, 2016 was Memorial Day. [EXH 40] **(315)**Margaret Mazur had already been awarded discipline for the charge of theft on May 26, 2016 without any supporting proof or evidence for the charges against her. [EXH 22] **(316)**All that would have been necessary prior to June 1, 2016 or the June 2, 2016 meeting would have been a simple letter or phone call directing Margaret Mazur to return to work since the Agency admitted they had no supporting evidence for the charge of theft. **(317)**Kim Kreiser stated she didn't have any evidence that Sharon Warden was careless or negligent with money left in her possession but she was charged with those charges in her PDC and her Oral Reprimand. [EXH 4, 18 & 48] **(318)**The sustained charge of loss of funds for Margaret Mazur was based on the alleged evidence that $500 was lost and it was lost under her care. **(319)**Defendants can neither prove $500 was lost nor when the alleged $500 went missing. [EXH 52 & 58] **(320)**When Margaret Mazur challenged the charge of loss of money, Defendants failed to provide any evidence to support the charge and stated the case was closed, which is a due process violation. **(321)**HR personnel took the lead and caused an additional and unsubstantiated Final Warning Letter as retaliation for Margaret Mazur opposing and protesting the unfair and disparate discipline to her and Sharon Warden. **(322)**Defendants ignored the provable policy violations for Sharon Warden and Darren Lindsay and suspended Margaret Mazur for unprovable violations and charges. **(323)**Kim Kreiser stated she had evidence that Margaret Mazur did not bring the total amount of replenishment back to the facility [EXH 3] **(324)**Sharon Warden is the one that stated money was missing without a second confirming count of the money, so there is no proof that money was actually missing. **(325)**Sharon Warden actually did leave money unattended and Darren Lindsay failed to initiate a lockdown and search immediately upon being made aware of alleged missing money, failed to do a complete count of

money on hand to verify money was missing, and gave known false information to the police. [EXH 58] **(326)**Sharon Warden, in her PDC admitted she had left money unattended on many occasions. [EXH 18]

> SUPPORTING EVIDENCE:
> a. Exh 3: Kreiser Deposition - Termination decided Pg 2 (16:1-25) Pg 3 (18:19-25) Pg 4 (34:9-17) / No Supporting Evidence for Theft Pg 1 (13:7-11, 13:20-21) / Mazur didn't bring money back to facility Pg 6 (45:1-25) / No evidence Warden Careless with Money Pg 6 (43-14-18)
> b. Exh 18: PDCs (Mazur/Warden) - Police Have Enough to Charge Theft Pg 6, Last ¶ / Warden Left Money Unattended Pg 9, Ln 20-21 & Pg 10, Ln 12-16
> c. Exh 20: Discovery Docs (Doc #26 - Prior to June 1, 2016)
> d. Exh 22: May 26, 2016 Mazur Suspension Letter
> e. Exh 23: Interrogatory #20 - PDC only investigation
> f. Exh 25: Kreiser email to Jerry Beck - June 2, 2016 Meeting Attendees Pg 1, ¶4
> g. Exh 26: Proposed Discipline (Mazur/Warden) - Theft Listed Pg 1
> h. Exh 29: June 2, 2016 Email - Mazur Termination
> i. Exh 33: Mazur Final Warning Letter
> j. Exh 40: May/June 2016 Calendar
> k. Exh 48: July 1, 2016 Warden Oral Reprimand
> l. Exh 58: Mazur Affidavit #13, #15, #16 Violations of policy for Sharon Warden and Darren Lindsay / Failed to Initiate Lockdown/Search / Failed to Verify $500 Missing

41.   DEFENDANTS IGNORED VIOLATIONS FROM WARDEN **(327-334)**
   **(327)**Sharon Warden sent Margaret Mazur out to her car immediately after she announced $500 was missing. **(328)**Sharon Warden was left alone with the money unobserved. **(329)**Within minutes of Margaret Mazur leaving the Accounting office, Sharon Warden left the money unattended and went on a smoke break. **(330)**Defendants neglected to ask what Sharon Warden did with the replenishment money when she went on a smoke break. **(331)**Sharon Warden sent Margaret Mazur out to her car when there was no secondary count of the money to confirm Sharon Warden's statement that $500 was missing. [EXH 9 & 58] **(332)**Sharon Warden claiming days later in a witness statement that she counted the money mentally to verify $500 was missing is not verification of $500 missing. **(333)**Sharon Warden should have been considered a suspect in the missing $500, but instead Defendants came to a conclusory decision that they didn't believe Sharon Warden ever had the missing $500 in her possession. [EXH 49] **(334)**Margaret Mazur was not present for a second count of the replenishment money because Margaret Mazur watched Sharon Warden use a calculator for the first and only count of the replenishment money in the Accounting office and then go straight to her phone after she announced $500 was missing. [EXH 10 & 58]

> SUPPORTING EVIDENCE:
> a. Exh 9: Witness Statements (Mazur/Warden/Lindsay) - (Called Bank Immediately) Pg 3, Ln 12-13 / (Sent Mazur to Car) Pg 3, Ln 17-18  / (Warden left money unattended in Accounting office - Smoke Break) Pg 3, Ln 18-19
> b. Exh 10: Warden Mental Count
> c. Exh 58: Mazur Affidavit #25 (Warden Used Calculator) / #27 & 32 (Sent to Car/Warden on Smoke Break)

42.   CUTHBERT STATEMENT ON WORDS THAT ARE INTERCHANGEABLE **(335-338)**
**(335)**Jamie Cuthbert's June 2, 2016 email clearly states Margaret Mazur was terminated. [EXH 57] **(336)**Jamie Cuthbert stated commonly used HR terms - discharge, suspension, termination as interchangeable. [EXH 42] **(337)**She is regularly involved in disciplinary proceedings and her title is HR Analyst. **(338)**Since she sees no difference in the term discharge and suspension, she would not have denied that she told the UC Representative that Margaret Mazur was discharged, because according to her, the terms suspension and discharged are interchangeable.
SUPPORTING EVIDENCE
   a.   Exh 5: Cuthbert Deposition - definitions Pg 3 (55:23-56:3) Pg 6 (94:22-95:24)
   b.   Exh 57: Cuthbert Email - "on the day of her termination"

43.   THERE WAS NO ONGOING INVESTIGATION **(339-342)**
**(339)**Jennifer McClain-Miller stated multiple times in emails starting June 1, 2016 that Margaret Mazur needed to stop contacting employees because she was interfering with an ongoing investigation, she needed to cease and desist. [EXH 27] **(340)**If a decision to bring Margaret Mazur back to work under a time served suspension was made prior to June 1, 2016, there would be no active investigation on June 1, 2016. [EXH 20] **(341)**Jennifer McClain-Miller admitted that the **only** investigation was the May 26, 2016 PDC [EXH 23] which was a hostile attack and not in any way, shape or form a fair and objective investigation as required by DMVA Disciplinary Rules. **(342)**The assigned investigator, Jamie Cuthbert, produced no findings of her alleged investigation. [EXH 54 & 58]
SUPPORTING EVIDENCE:
   a.   Exh 20: Doc #26 - Prior to June 1, 2016
   b.   Exh 23: Interrogatory #20 - PDC was the only investigation
   c.   Exh 27: McClain-Miller 4-page Statement / Emails - Interfering with Ongoing Investigation Pg 1, ¶5, Pg 2, ¶2, Pg 5-7
   d.   Exh 54: Disciplinary Rules, Policies, Procedures - Thorough, Fair and Objective Investigation Pg 5
   e.   Exh. 58: Mazur Affidavit #26 (PDC Was Hostile Attack)

44.   McCLAIN-MILLER AND GALUSKA COLLABORATED A PRE-GRIEVANCE SETTLEMENT **(343-352)**
**(343)**Margaret Mazur was not aware of a June 1, 2016 Grievance that was filed, was not aware that John Galuska already decided on June 7, 2016 to sign a PGS, and was not aware that she would receive a final warning letter upon her return to work, and was not aware that John Galuska did not demand any supporting proof of charges against Margaret Mazur. [EXH 53] **(344)**Jennifer McClain-Miller's statement that Margaret Mazur's case was adjudicated on June 7, 2016 would be incorrect according to Doc #26. [EXH 20] **(345)**If a decision was already made prior to June 1, 2016 to bring Margaret Mazur back to work with a "time served suspension", there would be nothing for Jennifer McClain-Miller to negotiate with John Galuska as her superiors had already decided to bring Margaret Mazur back to work. **(346)**On June 6, 2016, Kim Kreiser directed Jennifer McClain-Miller to contact John Galuska and try for a PGS. [EXH 27] **(347)**When Margaret Mazur spoke with John Galuska on June 7, 2016, he did not say he was in negotiations with Jennifer McClain-Miller and Margaret Mazur did not give him permission to represent her unless he was going to demand proof for all charges against her in support of her suspension without pay. [EXH 53] **(348)**According to Jennifer McClain-Miller's email, [EXH 32] John Galuska had already agreed to sign the PGS prior to speaking with Margaret Mazur.

**(349)**Instead of John Galuska hearing Margaret Mazur's conditions for him to be able to represent her, he ignored what she said and signed off on an agreement that was not in Margaret Mazur's best interest. **(350)**The so called PGS was arranged 7 days after the Agency received the June 1, 2016 grievance filed without Margaret Mazur even knowing about it and more than 7 days from the decision  that had already been made for a time served suspension, which Defendants state was "prior to June 1, 2016". [EXH 20 & 28] **(351)**Jennifer McClain-Miller states that the settlement agreement was explained to Margaret Mazur over the phone on June 8, 2016. **(352)**Margaret Mazur's June 11, 2016 email to John Galuska asking what the agreement was to return to work rebuts Jennifer McClain-Miller's statement that the agreement settlement was explained over the phone. [EXH 35]

    SUPPORTING EVIDENCE:
   a. Exh 20: Doc #26 - Prior to June 1, 2016
   b. Exh 27: McClain-Miller 4-page Statement (Was to Contact Galuska) Pg 2, ¶4
   c. Exh 28: Grievance
   d. Exh 32: PGS / Email - Plan is for him to sign off on PGS / Interrogatory #8 - First contact with Galuska for Negotiations June 1, 2016 / June 6, 2016 Kreiser Email - Try for PGS
   e. Exh 35: Doc Prod #9 - Settlement Agreement Explained June 8, 2016 on Phone / June 11, 2016 Mazur Email to Galuska - Asking what Agreement Was
   f. Exh 53: UC Testimony Pg 32 & 33

45. <u>CHARGES SUSTAINED FOR MAZUR NOT READ OVER THE PHONE **(353-357)**</u>
   **(353)**Jennifer McClain-Miller stated that the charges that were sustained against Margaret Mazur were read over the phone to her on June 8, 2016. [EXH 27 & 35] **(354)**Margaret Mazur had asked John Galuska to send the agreement to return to work to her before he signed anything for her to return to work. [EXH 58] **(355)**On the June 8, 2016 phone call with John Galuska and Jennifer McClain-Miller, Margaret Mazur was only told that the charge of theft was not being sustained against her wherein she concurred saying she was not a thief. [EXH 35] **(356)**John Galuska never sent her the agreement to return back to work. **(357)**Margaret Mazur had to request the signed agreement from the union office and received it about a month from her June 13, 2016 return to work. [EXH 58]

    SUPPORTING EVIDENCE:
   a. Exh 27: McClain-Miller 4-page Statement - Explained terms of settlement Pg 3, ¶6
   b. Exh 35: Doc #9 - Settlement Agreement Explained on Phone / Mazur Email to Galuska
   c. Exh 58: Mazur Affidavit #56 (Not Informed of Charges)

46. <u>MONEY NOT UNATTENDED BY MAZUR / MAZUR DID COUNT MONEY AT BANK **(358-369)**</u>
   **(358)**In Jennifer McClain-Miller's statement, she says that the replenishment money bag was completely out of Margaret Mazur's sight. [EXH 27] **(359)**Jennifer McClain-Miller had never been in the Accounting office and doesn't know what Margaret Mazur was able to see. [EXH 1] **(360)**She also stated that Margaret Mazur admitted she didn't count the money at the bank and referenced the May 26, 2016 PDC where she stated and alleged that Margaret Mazur made that admission. [EXH 27] **(361)**Jennifer McClain-Miller's statement (Mazur admitted she didn't count money…) under penalty of perjury is rebutted by Jamie Cuthbert's typewritten PDC notes which show Margaret Mazur saying: "I counted the money with the teller off of her sheet". [EXH 18] **(362)**Jennifer McClain-Miller said the money was out of her custody/unattended. [EXH 1 & 27] **(363)**The definition of unattended from the online Merriam Webster Dictionary is:

(www.merriam-webster.com/dictionary/unattended) not attended : not watched or looked after : lacking a guard, escort, caretaker, etc.

**(364)**Margaret Mazur's actions do not meet the standard definition of "unattended" as she was alone in a locked office where she had control and sight of the money until Sharon Warden took possession and started counting the money alone. **(365)**She saw Sharon Warden take possession of the money when she returned to the Accounting office approximately 5 minutes after Margaret Mazur entered the Accounting office. [EXH 18] **(366)**Sharon Warden's actions **do** meet the standard definition of leaving money "unattended" by her leaving the Accounting office to go on a smoke break with the replenishment money laid out on top of the file cabinet unsecured and unattended. **(367)**Sharon Warden could not see/guard the replenishment money from the smoke hut in the parking lot. **(368)**Margaret Mazur did **not** admit or state to Jennifer McClain-Miller or anyone else at any time that [1] She did not check the money at the bank with the teller to ensure she had the correct amount [2] She had the money completely out of her line of sight [3] She left money unattended [4] She acknowledged funds were lost under her care. **(369)**Margaret Mazur's witness statement, Affidavit, pictures of office chairs, and Jamie Cuthbert's typewritten version of the PDC rebut Jennifer McClain's recollection of what was said/admitted. [EXH 9, 18, 58]
SUPPORTING EVIDENCE:
   a.  Exh 1: McClain-Miller Deposition - Never Been in Acctg Office Pg 1 (36:12-15) / Mazur Left Money Unattended Pg 2 (38:18-25, 39:8-12) Pg 4 (46:11-25)
   b.  Exh 9: Warden 5/19/16 Witness Statement (Left Money - Smoke Break) Pg 3, Ln 18-19
   c.  Exh 9: Mazur 5/19/16 Witness Statement (Counted off Teller's Sheet) Pg 1, Ln 21
   d.  Exh 18: PDCs (Mazur/Warden) - (Money Bag in Warden's Chair) Pg 2, Ln 26 / (Mazur Counted Money at Bank) Pg 6, Ln 7
   e.  Exh 27: McClain-Miller 4-page Statement (Acknowledged Funds Lost Under Her Care) Pg 3, Ln 1 (Didn't Check Money at Bank, Money Out of Mazur's Custody, Money Completely Out of Mazur's Sight) Pg 4, ¶3
   f.  Exh 58: Mazur Affidavit #14, #16 (Mazur stayed in locked office with money in her line of sight)

47.  <u>MAZUR HELD TO A HIGHER STANDARD THAN WARDEN AND LINDSAY</u> **(370-375)**
**(370)**The reason given for the different discipline was the false charge that Margaret Mazur left money unattended. [EXH 3] **(371)**Sharon Warden admitted to leaving money unattended when she went on a smoke break approximately 3 minutes after Margaret Mazur left the Accounting office. **(372)**In Sharon Warden's PDC she admitted to regularly leaving money unattended. [EXH 18] **(373)**Margaret Mazur did not leave money unattended as she was in a locked Accounting office with the money in her control and sight and did not leave the replenishment money unattended at any time. **(374)**She saw when Sharon Warden came into the Accounting office and when Sharon Warden took possession of the money. **(375)**When Sharon Warden was not in the office (which was frequently due to excessive breaks), Darren Lindsay would routinely leave the money he collected from bank runs on top of the filing cabinet unattended in the unlocked bank bag for Sharon Warden to count when she returned to the Accounting office. [EXH 18 & 58]
SUPPORTING EVIDENCE:
   a.  Exh 3: Kreiser Deposition - Different Discipline Because Mazur Left Money Unattended Pg 4 (35:11-16)
   b.  Exh 18: PDCs (Mazur/Warden) - (Aware of Warden taking possession of money bag) Pg 4, Ln 20-25 / (Kreiser - Mazur left money unattended) Pg 4, Ln 15 / (Left Money to Go On Smoke Break) Pg 9, Ln 20-21 / (Left Money Unattended Regularly) Pg 10, Ln 12-13

c.  Exh 58: Mazur Affidavit #12-22 (Guarded Money) #45 (Lindsay Left Money on File Cabinet)

48.  <u>DEFENDANTS INITIALLY FIRED MAZUR</u> **(376-385)**
**(376)**Defendants fired Margaret Mazur on May 26, 2016 under the guise of a suspension without pay pending investigation. **(377)**Defendants were waiting 15 days to make sure a grievance wasn't filed to send a termination letter. [EXH 3 & 15] **(378)**Jennifer McClain-Miller admitted that the only investigation was the May 26, 2016 PDC. [EXH 23] **(379)**Jamie Cuthbert stated in an email that Margaret Mazur's access  to email was cut off on the day of her "**termination**". [EXH 29] **(380)**"Theft" would not have been listed on Margaret Mazur's Proposed Discipline if theft had not already been decided. [EXH 26] **(381)**A termination is a two step process where the employee is escorted out of the building with her belongings, her work ID is destroyed along with any credit card (which is only done for a termination, not a suspension) and she is later sent a letter of termination normally within two weeks after suspension. **(382)**When the Defendants were confronted with Margaret Mazur's written opposition to violations of SWVC/DMVA rules, policies and procedures, they decided to try to minimize their liability and bring her back to work. [EXH 58] **(383)**Further evidence of Margaret Mazur having been terminated were her work files were deleted and she had to reapply for passwords, re-apply for a credit card and get a new ID card. **(384)**The HR plan along with Andrew Ruscavage's "push back" direction was to create a hostile working environment after Margaret Mazur's return to work so that she would quit or resign. **(385)**The authorization by Andrew Ruscavage to retaliate (push back) against Margaret Mazur evidences that the plan was to make her work life unbearable. [EXH 37]
SUPPORTING EVIDENCE:
a.  Exh 3: Kreiser Deposition - Termination decided Pg 2 (16:1-25) Pg 3 (18:19-25) Pg 4 (34:9-17)
b.  Exh 15: AFSCME Article 28 - Discharge, Demotion, Suspension And Discipline
c.  Exh 22: Mazur Suspension Letter
d.  Exh 23: Interrogatory #20 - PDC only investigation
e.  Exh 26: Mazur Proposed Discipline - #3 Stealing Theft
f.  Exh 29: June 2, 2016 Email - Mazur Termination
g.  Exh 37: June 15, 2016 (Ruscavage Push Back Email)
h.  Exh 58: Mazur Affidavit (#28 No Evidence for Charges / #30 Termination a 2-step process)

49.  <u>INTERROGATORY #12 EXPLAINS REASON FOR MAZUR SUSPENSION</u> **(386-392)**
**(386)**Margaret Mazur's suspension without pay was explained under Interrogatory #12 stating, "initially she was suspended without pay due to her involvement in the alleged missing $500". [EXH 24] **(387)**If she was only suspended for that reason, theft would not have been listed on the suspension letter and an "allegation" is not sufficient to suspend an employee. **(388)**The suspension letter clearly says that Margaret Mazur's "suspension without pay is pending further investigation into allegations of Violations of the Standards of Conduct and Work Rules, more specifically, Work Performance: Neglect of Duty, Use of Property: Loss of Commonwealth property, s**tealing/theft**, and Unauthorized Behavior". [EXH 29 & 31] **(389)**Sharon Warden was also involved in the alleged missing $500 incident, but she was not suspended or given a final warning. **(390)**She was given disparate discipline of an Oral Reprimand. [EXH 33 & 48]

**(391)**Kim Kreiser comes to the conclusion that they're not going to hold Sharon at the same level of discipline that they would hold Margaret Mazur because she was responsible for the money, not Sharon Warden. **(392)**When Sharon Warden handles money unobserved and leaves that same replenishment money unattended laid out on a file cabinet to go on a smoke break, she is **equally responsible** for the money.

    SUPPORTING EVIDENCE:
    a.  Exh 3: Kreiser Deposition - Warden not responsible for money Pg 1(12:22-25)
    b.  Exh 24: Interrogatory #12
    c.  Exh 29: May 26, 2016 Mazur Suspension Letter Pg 1, ¶2
    d.  Exh 31: Disciplinary Actions - Suspension letter permanently in personnel file Pg 2
    e.  Exh 33: Mazur Final Warning Letter
    f.  Exh 48: July 1, 2016 Warden Oral Reprimand

50.  <u>SWVC VIDEO SURVEILLANCE PROCEDURE TO PRESERVE FOOTAGE FOR INVESTIGATIONS (393-406)</u>

**(393)**Margaret Mazur knows the procedures for Management viewing video footage in an investigation. **(394)**When there is an allegation of lost funds for residents, video footage is reviewed for Management to see who went in and out of the resident's room since there are no cameras inside resident rooms. **(395)**Witness statements are then taken from these employees to attempt to find out who took the resident's alleged missing money/possessions. **(396)**The Accounting office is contacted to see if the resident recently took out funds if it's missing money and the family is contacted to see if money was given to the resident or to obtain the value of the missing item(s). **(397)**In all the cases that Margaret Mazur requested replacement money for resident's cash/possessions, Management was not able to pinpoint what employee was responsible for the loss of residents possessions. **(398)**The same procedure would be followed for the alleged missing funds in the Accounting office as there are no cameras inside the Accounting office and the allegation was that resident funds were missing. [<u>EXH 5</u>] **(399)**At the time Margaret Mazur was working at SWVC, the authorized viewers (Defendants Rich Adams, Barry Lowen, Jamie Cuthbert) of the video surveillance had a program on their computer called Bosch (German program) and they are able to view any video footage in the 60 day window before it is overwritten. **(400)**These authorized users can save video footage to a CD and upload video footage to a drive for agents at the GAP/DMVA (Kim Kreiser & Jennifer McClain-Miller) to review for an investigation. **(401)**Defendants counsel has stated Defendants didn't request video footage to be viewed. **(402)**This statement is true in that Defendants don't have to request to view footage. **(403)**Defendants can log on the Bosch program installed on their individual computers any time without requesting to view footage or having to sign a log to do so. **(404)**Barry Lowen states there is a camera that can see the accounting window, which is right next to the door to the Accounting office. [<u>EXH 6</u>] **(405)**Darren Lindsay told Margaret Mazur that he and Barry Lowen viewed the May 16, 2016 video footage from the bank, but neglected to get a copy of the footage for the investigation file. **(406)**Defendants also failed to provide and preserve the email received from the bank that included pictures from the May 16, 2016 video surveillance. [<u>EXH 6 & 58</u>]

    SUPPORTING EVIDENCE
    a.  Exh 5: Cuthbert Deposition - Video Footage Used in Investigations Pg 13 (100:21-102:2)
    b.  Exh 6: Lowen Deposition - Video Camera Able to See Accounting Window Pg 3 (85:21-23) / Bank Pictures of Video Footage emailed to Defendants Pg 5-6 (28:17-30:6)

    c.  Exh 58: Mazur Affidavit #29 (Mazur knows procedure for video surveillance preservation) / May 16, 2016 video footage viewed)

    d.  Exh 59: Video Surveillance PIM

I declare under penalty of perjury (under the laws of the United States of America) that the foregoing is true and correct.


Date: January 17, 2019

/s/Margaret Mazur, Pro Se