IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET MAZUR, | }<br>} No. 2:17-cv-00826-JFC |
| Plaintiff, | }<br>} Judge Conti |
| vs. | } |
| SOUTHWESTERN VETERANS CENTER and DEPARTMENT OF MILITARY AND VETERANS AFFAIRS, | }<br>}<br>} |
| | } ***Electronically Filed.*** |
| Defendants. | } |

**DEFENDANTS' STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE**

AND NOW, come the Defendants, Southwestern Veterans Center and Department of Military and Veterans Affairs ("the Defendants"), by their attorneys, Scott A. Bradley, Senior Deputy Attorney General, and Keli M. Neary, Chief Deputy Attorney General, Chief, Litigation Section, and respectfully submit the following Statement of Material Facts Not in Dispute in support of their Motion for Summary Judgment on the Complaint heretofore filed by Plaintiff:

1. The Pennsylvania Department of Military and Veterans Affairs ("DMVA" or "the Department") is a cabinet level administrative department within the government of the Commonwealth of Pennsylvania. See 71 P.S. § 61.

2. DMVA has its central administrative offices at Fort Indiantown Gap ("FIG"), which is located in Lebanon County, Pennsylvania. Lowen Decl., at ¶ 2 (attached hereto as SMF Exhibit D-45). See 51 Pa. C.S.A. § 708 (relating to Fort Indiantown Gap).

3. Kim Kreiser ("Kreiser") was a Division Chief in DMVA's Human Resources Office at FIG at the times relevant to this litigation. Lowen Decl., at ¶ 3.

4. Jennifer McClain-Miller ("McClain-Miller") was a Labor Relations Analyst in DMVA's Human Resources Office at FIG at the times relevant to this litigation. McClain-Miller Dep., at 8 (attached hereto as SMF Exhibit D-52); Lowen Decl., at ¶ 4.

5. The DMVA has instituted Standards of Conduct and Work Rules. SMF Exhibit D-1. "These work rules constitute the general rules applicable to employees of the Department of Military and Veterans Affairs," and cover topics including Work Performance, Time and Attendance, Safety Standards, Use of Property and Unauthorized Behavior. Id.

6. The DMVA operates six veterans' homes throughout the state, including Southwestern Veterans Center ("SWVC"). Lowen Decl., at ¶ 5. The veterans' homes fall under the jurisdiction of the Bureau of Veterans Homes ("BVH"). Ruscavage Dep., at 7-8 (attached hereto as SMF Exhibit D-50); Lowen Decl., at ¶ 6. This Bureau is headed by a Director. Id. During the relevant time period, Andrew Ruscavage ("Ruscavage") served as the Director for the BVH. Id.

7. Each veterans' home is headed by a Commandant, who is assisted by a Deputy Commandant. Lowen Decl., at ¶ 7. At SWVC, during the relevant time period, Rich Adams ("Adams") served as the Commandant, Adams Dep., at 8 (attached hereto as SMF Exhibit D-49), and Barry Lowen served as the Deputy Commandant ("Lowen"), Lowen Dep., at 8 (attached hereto as SMF Exhibit D-48). See also Lowen Decl., at ¶ 7.

8. Jamie Cuthbert ("Cuthbert") was the Human Resources Analyst at SWVC at the times relevant to this litigation. Cuthbert Dep., at 8 (attached hereto as SMF Exhibit D-51); Lowen Decl., at ¶ 8.

9. SWVC has an Accounting Department that is responsible for aspects of the financial operation of SWVC. At the times relevant to this litigation, Darren Lindsey was the Accountant at SWVC and supervised the Accounting Department. Lowen Decl., at ¶ 9.

10. Margaret Mazur ("Mazur") is the Plaintiff in the instant action. See Complaint (Doc. # 1), at 1. Mazur is "White." Mazur Dep., at 33 (attached hereto as SMF Exhibit D-46).

11. Mazur was employed by the DMVA at SWVC until she resigned on April 27, 2017. See Mazur Dep., at 26; Lowen Decl., at ¶ 10.

12. At SWVC, Mazur was initially employed as a Clerk Typist in the Human Resources Office, but after five months was placed as one of two Accounting Assistants in the Accounting Department. See Mazur Dep., at 23-25. See also Cuthbert Dep., at 11-12; Lowen Decl., at ¶ 10.

13. The Accounting Assistant position was a union position covered by the American Federation of State, County and Municipal Employees ("AFSCME" or "union"). Mazur Dep., at 57; Lowen Decl., at ¶ 11.

14. As an Accounting Assistant at SWVC, Mazur was first supervised by Don Shields and then later, after Shields retired from the position, by Darren Lindsay. Mazur Dep., at 24-26, Lowen Decl., at ¶ 12.

15. Lindsay is "Black." Mazur Dep., at 28-29.

16. Lindsey gave Mazur a very favorable review in her Employee Performance Review on May 18, 2016, and otherwise considered her a dependable, reliable and honest employee. Lindsey Dep., at 45 (attached hereto as SMF Exhibit D-47). See Lindsey Dep., at 59. See also McClain-Miller Dep., at 89-90.

17. Sharon Warden ("Warden") was the other Accounting Assistant at SWVC and she worked under both Shield's and Lindsay's supervision. Mazur Dep. at 24-25; SMF Exhibit D-8b, at 1; Lowen Decl., at ¶ 13.

18. Warden self-identified as "White" on SWVC employment forms. See SMF Exhibits D-2, D-3. See also McClain-Miller Dep., at 96. Mazur identifies Warden as "Black." Mazur Dep., at 27.

19. Warden eventually transferred to the Human Resources Office at SWVC on or about June 6, 2016, and she was replaced in the Accounting Assistant position by Lisa Havrilla. Mazur Dep., at 26-27. See also Lowen Decl., at ¶ 14.

20. As part of their duties as Accounting Assistants, Warden and Mazur would on occasion go to a local bank to make deposits and withdrawals for SWVC. See SMF Exhibits D-8b, at 1; D-8c, at 1.

21. On May 16, 2016, Mazur went to the bank for several transactions, including cashing a check for $4,784.00 to replenish a petty cash fund used by residents. See SMF Exhibits D-7; D-8b, at 1; D-8c, at 1.

22. When Mazur returned from the bank, Warden was not in her office; Mazur –in a departure from her prior practice– placed the money on Warden's desk chair in Warden's office and then went into her own adjacent office. See SMF Exhibits D-6, at 2-3; D-8c, at 2.

23. Warden returned to her office a short while later, noticed the money on her chair and took it over to a filing cabinet and began to count the money. See SMF Exhibits D-6, at 2; D-8b, at 1; D-8c, at 2. Mazur joined Warden in counting the money shortly after Warden came into the office. Id.

24. In the course of counting the money, it was found that it was short $500.00. SMF Exhibit D-8b, at 1. See also Ruscavage Dep., at 20; Adams Dep., at 19-24, 27-29; Lowen Dep., at 23-24, 30, 32-33; Lindsey Dep., at 14-15;

25. A local investigation was subsequently initiated at SWVC. See Lindsey Dep., at 34-36, 51; Lowen Dep., at 24-33; Cuthbert Dep., at 22, 48-52.

26. Cuthbert from SWVC's Human Resources Department was tasked with coordinating several aspects of the investigation, including taking written statements from Mazur, Warden and Lindsey. Cuthbert Dep., at 48-51, 56-60. See SMF Exhibits D-8a, D-8b, D-8c, D-8d.

27. Cuthbert forwarded all materials to the Human Resources office at FIG. See Cuthbert Dep., at 50, 60.

28. On May 18, 2016, a report of the missing $500.00 was made to the Pittsburgh Bureau of Police ("Pittsburgh BOP"). Lindsey Dep., at 31-33. See also Lowen Dep., at 64-65. An officer responded to SWVC and took information regarding the involved employees and the circumstances of the incident. Id.

29. The police report identified both Mazur and Warden as potential suspects. Ruscavage Dep., at 27; Adams Dep., at 40.

30. A detective with Pittsburgh BOP subsequently contacted officials at SWVC, including Adams, Lowen and Lindsey, and advised that there was enough evidence to arrest Mazur. See Adams Dep., at 30-31; Lowen Dep., at 44-47, 63-64; Lindsey Dep., at 19-22, 32-33, 60-64.

31. However, at that point, the determination was made that the matter would be handled internally and the detective was so advised. Adams Dep., at 37-39; Lowen Dep., at 61-64; Lindsey Dep., at 21-22. See also McClain-Miller Dep., at 85-88.

32. On May 26, 2016, Mazur was given notice of a PreDisciplinary Conference ("PDC") to be held that same day. See SMF Exhibit D-5.

33. The notice advised Mazur of suspected violations of DMVA work rules, including:

**Work Performance**
1. Neglect of duty or responsibility, including but not limited to:
    a. Failure to perform assigned tasks or a legitimate work assignment.

**Use of Property**
2. Loss of or damage to Commonwealth property through carelessness, neglect or indifferences.
3. Stealing/Theft

**Unauthorized Behavior**
5. Any action which would reflect unfavorably on or discredit the Commonwealth or Department of Military and Veterans Affairs.

Written Notice of Pre-disciplinary Conference, May 26, 2016, at 1.

34. The PDC was convened on May, 26, 2016; in attendance at the PDC at SWVC, were Lowen and Cuthbert, along with Mazur and her union representative, Sue Kubla. See SMF Exhibit D-6. Kreiser and McClain-Miller also participated in the PDC by telephone from their offices at FIG. Id.

35. At the PDC, Mazur was again notified by Lowen of the previously identified violations of DMVA work rules. See SMF Exhibit D-6, at 1.

36. Mazur was then given the opportunity to explain her actions regarding the missing funds, prompted by questioning from Lowen, Cuthbert and Kreiser. See SMF Exhibit D-6, at 2-6. See McClain-Miller Dep., at 19-61, 127-139.

37. After the PDC, Mazur was provided with a written letter advising her that she was being suspended pending further investigation of the incident. See SMF Exhibit D-9.

6

38. Thereafter, Mazur wrote a letter to Ruscavage, complaining about her treatment during the investigation and her PDC.[1]  See SMF Exhibit D-4.

39. On June 1, 2016, a formal written grievance was filed on Mazur's behalf by the union.  See SMF Exhibits D-10; D-11, at 2.

40. During the course of Mazur's PDC, DMVA became aware that Warden had also been in sole possession of the bank funds for a brief period of time when she took the money from her chair to the filing cabinet, before Mazur joined her for the count.  McClain-Miller Dep., at 81, 123-127; SMF Exhibit D-30, at 3-4.  Consequently, it was determined that Warden would be given a PDC based on her involvement in this situation.  Id.

41. Warden was given her notice of her PDC on June 2, 2016, and the PDC was convened on June 3, 2016.  SMF Exhibit D-18, at 1.

42. In attendance at Warden's PDC at SWVC, were Lowen, Cuthbert, along with Warden and her union representative, Sue Kubla; Jennifer McClain-Miller also participated in this PDC by telephone from her office at FIG.  See SMF Exhibit D-18.

43. At the PDC, Warden was first advised of suspected violations of work rules against her, namely

**Work Performance**
1.  Neglect of duty or responsibility, including but not limited to:
    a.  Failure to perform assigned tasks or a legitimate work assignment.

**Use of Property**
2.  Loss of or damage to Commonwealth property through carelessness, neglect or indifferences.

**Unauthorized Behavior**

---

[1] This typed letter has a handwritten date of May 23, 2016 in the upper right corner; however, the letter references events that did not occur until at least May 26, 2016.  Thus, it appears that this letter was written after Mazur was suspended on May 26, 2016.

7

      5.    Any action which would reflect unfavorably on or discredit the Commonwealth or Department of Military and Veterans Affairs.

Minutes of Pre-Disciplinary Conference, June 3, 2016, at 1.

     44.    Warden was then given the opportunity to explain her actions regarding the missing funds, prompted by questioning from Lowen and McClain-Miller. SMF Exhibit D-18, at 2-3.

     45.    On or about June 2, 2016, a meeting was held at FIG with DMVA Chief Counsel Mike Barrett, Ruscavage, Kreiser, McClain-Miller, and by telephone from SWVC, Adams, Lowen and Cuthbert. See SMF Exhibit D-29. As reported by Kreiser,

> It was decided that we could not charge anyone with theft, but Margaret was ultimately responsible for the money until it was to be counted. She left it unattended on Ms. Warden's chair. Although Ms. Warden found the money on her chair, she was not ultimately responsible for the money; Ms. Mazur placed Ms. Warden in that situation. Ms. Warden was counseled on the matter. It was decided to offer a pre-grievance settlement (PGS) for a time-served suspension with a final warning.

Kreiser Email, August 12, 2016, at 1. See also McClain-Miller Dep., at 85-88, 99-103, 127-131, 139.

     46.    After the AFSCME grievance was filed on Mazur's behalf, McClain-Miller engaged in discussions with Mazur's union representative, John Galuska ("Galuska"), about Mazur's situation. McClain-Miller Dep., at 64-69. See SMF Exhibits D-11; D-12; D-29, at 1; D-30, at 2-3.

     47.    In the course of these discussions, a settlement was considered that would allow Mazur to return to work after a time-served suspension. See SMF Exhibits D-11; D-12; D-29, at 1; D-30, at 2-3.

     48.    McClain-Miller and Galuska thereafter entered into a grievance settlement whereby Mazur was given a time-served suspension. See SMF Exhibits D-11–D-16.

49. Consequently, Mazur was suspended without pay for eight days.  See SMF Exhibits D-16, D-17.  A letter from Lowen to Mazur documented the discipline as "a time-served suspension from May 27, 2016 through June 7, 2016, with a final warning."  SMF Exhibit D-17, at 1.

50. The suspension letter stated in pertinent part:

   This discipline is being issued as a result of a settlement between the Department of Military and Veterans Affairs and AFSCME.  As agreed between the parties, you received a time-served suspension from May 27, 2016 through June 7, 2016, with a final warning.
   The reason for this suspension is your violations of the Department's Standards of Conduct and Work Rules, Work Performance, 1. Neglect of Duty; and Use of Property, 2. Loss or damage.  Specifically, on May 16, 2016 you failed to maintain proper custody and control of the petty cash replenishment.  As a result, $500 was lost.  A Pre-Disciplinary Conference was held with you on May 26, 2016; however, you provided no acceptable explanation for your actions.

Lowen Letter (to Mazur), June 8, 2016.

51. The letter also contained a final warning, indicating that "**THIS IS A FINAL WARNING.  Any infraction(s)/offense(s) of a similar or related nature occurring after the date of settlement will result in your termination.**"  SMF Exhibit D-17, at 1.

52. No immediate action was taken with regard to Warden's PDC; however, by letter dated July 1, 2016, it was documented that Warden was given an oral reprimand based on sustained findings regarding violations of the Department's Standards of Conduct and Work Rules relating to "Work Performance, 1.  Neglect of Duty; and Use of Property, 2.  Loss or damage."  SMF Exhibit D-19, at 1.

53. By prior agreement, Mazur returned to work on June 13, 2016.  See SMF Exhibits D-15, D-16.

9

54. Mazur was dissatisfied with her discipline and almost immediately began to take steps to challenge her suspension and discipline. See SMF Exhibits D-4, D-20. See also SMF Exhibit D-29, at 1-2

55. However, Mazur was advised that the matter was settled and considered a closed subject by management. McClain-Miller Dep., at 92-93. See SMF Exhibits D-4, D-20. See also Mazur Dep., at 50. For example, McClain-Miller advised Mazur by email on June 14, 2016, as follows:

> Furthermore, we resolved the matter and your suspension with your agreement. While we were on the phone together, you authorized Mr. Galuska to sign the settlement agreement for your suspension as time served with final warning. Mr. Galuska specifically stated to you that he was going to sign the agreement if you agreed to the terms and you granted him permission. The Department considers this matter resolved. I sincerely hope this resolves any of your remaining concerns; however, any additional questions you might have, please direct to Mr. Galuska.

McClain-Miller Email, June 14, 2016, at 1.

56. McClain-Miller's email was sent to Mazur at 4:36pm on June 14, 2016. See SMF Exhibit D-20, at 1. At 9:55pm on June 14, 2016, Mazur sent Ruscavage an email that indicated that she had also sent an earlier fax, and that she was claiming she "ha[s] been falsely accused of multiple charges in a PDC that was held at 8:30 a.m. on May 26th. I am requesting that my wages be restored from my time of suspension and the documentation of suspension paperwork/final warning be removed from my OPF." SMF Exhibit D-21, at 1. The rest of the email goes on to explain her concerns. Id., at 2-3.

57. The next morning, Ruscavage forwarded Mazur's email to DMVA and SWVC staff, with the following message:

> I am forwarding this again to you Kim and I copied Rich and Barry. Some questions. Is she returning to work? Did she return to work? Did someone delete her email? What does John Ayers have to do with this? And what does she

> expect Kim? I feel she is threatening me with arbitration if I do not do something about this whole situation, if she wants to push the issue then let's push right back. She is also sent a fax to my office with basically the same statement and a copy of her last EPR to prove she is a good employee. With her statements and attitude for her peers and supervisor do we really think she is going to come back and be a productive employee?

Mazur Email, June 14, 2016; Ruscavage Email, June 15, 2016.

58. Cuthbert sent an email on June 16, 2016, explaining the situation to Kreiser and McClain-Miller at DMVA and to Adams and Lowen at SWVC. See SMF Exhibit D-22.

59. Mazur nonetheless persisted in her efforts, sending emails and letters to several DMVA administrators. See SMF Exhibits D-23–D-29.

60. Kreiser subsequently responded to two separate emails from Mazur on July 13 and 14, 2016, again advising Mazur that "this matter has been closed" and "[t]his matter is closed on our end." See SMF Exhibits D-24, D-25.

61. Mazur contacted the Equal Employment Opportunity Commission ("EEOC") after returning from her suspension, see Mazur Dep., at 47, and eventually filed a formal Charge of Discrimination dated September 8, 2016, see SMF Exhibit D-31. The charge asserted claims of discrimination based on "Race" and "Retaliation." Id., at 1. Mazur indicated that the date of discrimination was May 26, 2016, and she did not check the box for "Continuing Action." Id.

62. In pertinent part, the charge reads as follows:

> I believe that I have been discriminated against because of my race, white, and also retaliated against for complaining of unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that, my co-worker (Sharon Warden, race, black) and I handled the money on May 16, 2016. I was suspended without pay and given a final letter while Sharon Warden received no discipline and was reassigned to the Human Resources Office. Also I was told that I had to bring in a doctor's note for 1 day of illness. I am not under leave restrictions yet I am being held to a different standard than my coworker's.

Charge of Discrimination (EEOC Charge No. 533-2016-01239), at 1.

63. Mazur never advised anyone at SWVC or DMVA that she filed an EEOC Complaint. Mazur Dep., at 47-49.

64. DMVA was notified of the charge of discrimination on August 10, 2016, see SMF Exhibit D-32, and again on October 19, 2016, when a response was requested, see SMF Exhibit D-33.

65. DMVA filed a position statement with the EEOC on November 17, 2016, arguing that "Ms. Mazur's Charge of Discrimination is not supported by any credible evidence" and requesting that the charge be dismissed. See SMF Exhibit D-34.

66. On November 25, 2016, Mazur filed a response to DMVA's position statement with the EEOC. See SMF Exhibit D-35. This response again focused on the circumstances surrounding Mazur's suspension and discipline. Id.

67. An EEOC memo dated April 3, 2017, documented a Determination Interview with Mazur held that same day. See SMF Exhibit D-36. The memo indicated, *inter alia*, that Mazur was advised that she would be receiving a Notice of Right to Sue. Id. The memo also reflects that Mazur "stated that she did not take any money and didn't know what happened to the missing finds but that it was unfair that she was disciplined harder than her co-worker. After this last statement the interview ended." Id.

68. Mazur thereafter received a Dismissal and Notice of Rights from the EEOC, dated April 7, 2016. See SMF Exhibit D-37.

69. On April 17, 2017, Mazur wrote a letter to Adams, the SWVC Commandant, detailing her complaints against various DMVA and SWVC employees, including Lindsey, Kreiser, McClain-Miller and Lowen. See SMF Exhibit D-38.

70. Mazur concluded the letter as follows:

> I am requesting that my record be corrected as the allegations of misconduct are unfounded and that I be paid the amount owed ($1167.00) according to paragraph four of the suspension letter which carries the same weight as a contract. Having false information in my employment file is unacceptable. A simple review of the PDC, Suspension Letter and Final Warning letter will reveal that there is no just cause to have that information in my file. There are no facts/proof to back up the actions taken. Allegations are not facts. The fact that you should look at is Mr. Bushinski's letter stating that there is no evidence to support the wrongful actions taken against me. Either fix my record or provide copies of the Agency investigation results and the results of the Pittsburgh Police investigation to show that you have a valid reason for me being wrongfully labeled as a thief.

Mazur Letter (to Adams), April 17, 2017, at 2.

71. Mazur requested that Adams "acknowledge and respond to this notification in writing by the COB on Wednesday, April 19, 2017." SMF Exhibit D-38, at 2.

72. Adams provided a copy of the letter to Ruscavage, who forwarded it to DMVA's legal department. Adams Dep., at 12-19; Ruscavage Dep., at 67-75. See also SMF Exhibit D-39.

73. Adams emailed Mazur at 11:40pm on April 26, 2017, notifying her that he received her "letter [and] discussed it in detail with my boss who passed it on to our legal department. Sorry you feel your deadlines were missed." SMF Exhibit D-39.

74. Although Mazur reported to work at SWVC on April 27, 2017, she did not see Adams' email. However, on that day, Mazur resigned from her position with SWVC. See SMF Exhibit D-40, at 1-2.

75. Lindsey was not present at SWVC when Mazur resigned and had been "away on business for several days." See SMF Exhibit D-40, at 2.

76. Mazur did not make any formal complaints regarding her employment situation until she placed the letter under Adams' door on April 17, 2017. Mazur Dep., at 55-56.

77. Although her position was covered by a union, Mazur never contacted the union with regard to her complaints about her supervisor's conduct or treatment of her.  Mazur Dep., at 57-58, 60.

78. At her deposition on May 17, 2018, Mazur provided a written document, see SMF Exhibit D-41, that she described as "basically a timeline of what happened to clarify the events of the day and the following day and subsequent days after, until my PDC."  Mazur Dep., at 12-13.

79. This motion for summary judgment follows.

WHEREFORE, it is respectfully requested that summary judgment be granted in favor of the Defendants, Southwestern Veterans Center and Department of Military and Veterans Affairs, and against the Plaintiff, Margaret Mazur.

                              Respectfully submitted,

                              JOSH SHAPIRO
                              Attorney General

| Office of Attorney General | s/ Scott A. Bradley |
|---|---|
| Litigation Section | Scott A. Bradley |
| 1521 Waterfront Place | Senior Deputy Attorney General |
| Mezzanine Level | Attorney I.D. No. 44627 |
| Pittsburgh, PA 15222 | |
| | Keli M. Neary |
| | Chief Deputy Attorney General |

Phone: (412) 565-3586
Fax:   (412) 565-3019

Date:  January 18, 2019