# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARGARET MAZUR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 17-826 |
| | ) | |
| **SOUTHWESTERN VETERANS** | ) | |
| **CENTER & DEPARTMENT OF** | ) | |
| **MILITARY AND VETERANS** | ) | |
| **AFFAIRS,** | ) | |
| | ) | |
| Defendants. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**CONTI, Senior District Judge.**

### I. Introduction

This racial discrimination action filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e(17) and 42 U.S.C. § 1981 arises out of an incident in which $500.00 went missing from the Southwestern Veterans Center ("SWVC") and the Department of Military and Veterans Affairs ("DMVA" and together with the SWVC, "defendants"). Defendants suspected that plaintiff Margaret Mazur ("Mazur") or her coworker Sharon Warden ("Warden") stole or lost the $500.00. Mazur alleges that she did not steal or lose the money and was unfairly disciplined and blamed for the missing money because of her race.

Currently pending before the court is Mazur's motion for sanctions for spoliation. (ECF No. 112.) Mazur in the motion argues that defendants, her former employers, destroyed or lost evidence that is relevant to her claims of racial discrimination and retaliation and, therefore, the court should enter a default judgment against defendants or provide a negative inference jury instruction at trial. Defendants oppose Mazur's motion.

On November 29, 2018, the court held a hearing with respect to Mazur's motion for sanctions. The court for the reasons set forth on the record denied the motion for sanctions with respect to all Mazur's arguments[1] except for her arguments that defendants lost or destroyed a bank teller sheet and *handwritten* notes from Mazur's predisciplinary conference

On January 22, 2019, the court held an evidentiary hearing with respect to those remaining issues. (Hearing Transcript ("H.T.") 1/22/2019 (ECF No.146).) Mazur presented the testimony of five witnesses, including herself, and entered eighteen exhibits into evidence.

On April 6, 2019, Mazur filed proposed findings of fact and conclusions of law. (ECF No. 148.) On April 22, 2019, defendants filed proposed findings of fact and conclusions of law. (ECF No. 152.) On April 30, 2019, Mazur filed a reply brief. (ECF No. 153.) On May 3, 2019, defendants filed a supplement. (ECF No. 154.) The issues remaining in the motion for sanctions are now ripe to be decided by the court.

The court based upon the record makes the following findings of fact and conclusions of law.

## II.   **Findings of Fact**

---

[1]   Mazur in her motion for sanctions argued that defendants fabricated a proposed discipline letter with respect to Warden's role in the missing five hundred dollars. (ECF No. 113 ¶ 6.) The court at the hearing on November 29, 2018, held that Mazur was entitled to a response from defendants about who authored the letter but there was insufficient evidence for a finding that defendants fabricated the proposed discipline letter. (H.T. 11/29/2018 at 24.) Prior to the evidentiary hearing held on January 22, 2019, defendants did not provide discovery to Mazur about who authored the proposed discipline letter. The court at the hearing permitted Mazur to question Jamie Cuthbert ("Cuthbert"), a human resource analyst for the SWVC, about the author of the proposed discipline letter. Cuthbert did not know who authored the proposed discipline letter with respect to Warden. As the court explained at the hearing on November 29, 2018, Mazur may use the evidence at trial or in support of a dispositive motion that defendants do not know who authored the proposed discipline letter. The evidence presented, however, is insufficient for the court to find the proposed discipline letter was fabricated. In the record before the court, defendants did not produce any evidence to authenticate the proposal for discipline letter. Under those circumstances, it may be inadmissible by defendants at trial.

**FOF 1.**     The SWVC is a part of the DMVA. (H.T. 1/22/2019 (ECF No. 146) at 17.)

**FOF 2.**     On May 16, 2016, $500.00 went missing from the SWVC. (Ex. 2 ¶ 5.) The following day Darren Lindsay ("Lindsay"), Mazur's immediate supervisor, and Barry Lowen ("Lowen"), "Deputy Commandant" for the SWVC, initiated an internal investigation into the missing $500.00. (Id.; H.T. 1/22/2019 (ECF No. 146) at 21, 54.)

**FOF 3.**     A police investigation about the missing $500.00 was also initiated. (H.T. 1/22/2019 (ECF No. 146) at 29.)

**FOF 4.**     Lindsay never learned what happened to the missing $500.00. (H.T. 1/22/2019 (ECF No. 146) at 30.)

### Handwritten PDC Notes

**FOF 5.**     Jamie Cuthbert ("Cuthbert") is a "HR Analyst 2" for the SWVC. (H.T. 1/22/2019 (ECF No. 146) at 17.)  She held that position on May 16, 2016. (Id. at 17-18.)

**FOF 6.**     On May 26, 2016, a predisciplinary conference ("PDC") was held with respect to Mazur and her role in the missing $500.00. (H.T. 1/22/2019 (ECF No. 146) at 5.)

**FOF 7.**     Mazur, Cuthbert, Lowen, Kim Kreiser ("Kreiser"), the "Division Chief for Employee Relations and Safety" for the DMVA, and Jennifer McClain-Miller ("McClain-Miller") were present at the PDC. (Id. at 5.)

**FOF 8.**     Lowen, Cuthbert, and Mazur attended the PDC in Cuthbert's office. (H.T. 1/29/2019 (ECF No. 146) at 5.)

**FOF 9.**     Kreiser and McClain-Miller appeared via telephone from Kreiser's office in "Fort Indiantown Gap." (H.T. 1/22/2019 (ECF No. 146) at 5, 41, 44.)

**FOF 10.**     Two persons take notes during PDCs. (H.T. 1/22/2019 (ECF No. 146) at 6, 41.)

**FOF 11.**     Kreiser asked Cuthbert and Lowen to take notes during the PDC. (H.T. 1/22/2019 (ECF No. 146) at 6.)

**FOF 12.**     Mazur testified that during the PDC she "saw notepads" and witnessed Cuthbert and Lowen taking handwritten notes on blank pieces of paper. (H.T. 1/22/2019 (ECF No. 146) at 50.)

### Kreiser's Role

**FOF 13.**     Kreiser wrote down notes on a piece of paper prior to the start of the PDC and took additional notes during the PDC. (H.T. 1/22/2019 (ECF No. 146) at 5, 39-40; Ex. 19.)

**FOF 14.**     On the day of the evidentiary hearing, January 22, 2019, Kreiser's handwritten notes were provided to Mazur by defendants. (H.T. 1/22/2019 (ECF No. 146) at 16.)

### Lowen's Role

**FOF 15.**     Lowen brought his laptop into Cuthbert's office for the PDC. (H.T. 1/22/2019 (ECF No. 146) at 10.) Lowen typed his notes on his laptop during the PDC.  (H.T. 1/22/2019 (ECF No. 146) at 5, 10.)

**FOF 16.**     Mazur testified that Lowen did not have a computer with him at the PDC. (H.T. 1/22/2019 (ECF No. 146) at 51.)

**FOF 17.**     At the conclusion of Mazur's PDC, Lowen provided his notes to Cuthbert. (H.T. 1/22/2019 (ECF No. 146) at 35.)

### Cuthbert's Role

**FOF 18.**     Cuthbert testified that she was not aware of any handwritten notes from Mazur's PDC. (H.T. 1/22/2019 (ECF No. 146) at 6.)

**FOF 19.**     She did not know whether Kreiser or McClain-Miller took notes during the PDC. (H.T. 1/22/2019 (ECF No. 146) at 6, 17.) In other words, neither Kreiser nor McClain-Miller provided Cuthbert with handwritten notes from Mazur's PDC. (Id. at 6, 41.)

**FOF 20.**     Cuthbert testified during a deposition in this case that she could not remember whether her notes were handwritten or typed on her computer. (H.T. 1/22/2019 (ECF No. 146) at 47.)

**FOF 21.**     Cuthbert testified at the evidentiary hearing that after her deposition and prior to the evidentiary hearing, she remembered that she typed notes on her computer during the PDC. (Id. at 48.)

**FOF 22.**     Cuthbert testified that she compared her typewritten notes to Lowen's typewritten notes. (H.T. 1/22/2019 (ECF No. 146) at 12.) One set of notes was sent to "Fort Indiantown Gap." (Id.)

**FOF 23.**     Cuthbert did not remember whether Lowen provided his notes to her via email. (H.T. 1/22/2019 (ECF No. 146) at 13.)

**FOF 24.**     Cuthbert testified at her deposition that she would keep the handwritten notes from which the notes sent to Fort Indiantown Gap were created. (Ex. 1.) Mazur questioned whether Cuthbert still had the handwritten notes from her PDC. (Id.) Cuthbert responded "I would have to look and see. If they are there, then yes." (Id) Cuthbert also testified that the handwritten notes would be destroyed once the employee had separated. (Id.)

**FOF 25.**     Cuthbert maintained employee disciplinary files in a drawer in her office. (H.T. 1/22/2019 (ECF No. 146) at 14.)

**FOF 26.**     A new process was utilized in which disciplinary files were placed on the "R:Drive," i.e., the "Labor Relations file." (H.T. 1/22/2019 (ECF No. 146) at 14.) According to

Cuthbert, the information in Cuthbert's disciplinary file would be the same information stored on the R:Drive. (Id. at 18.)

**FOF 27.**    Cuthbert explained that oral and written reprimands remain in an employee's file for two years. (H.T. 1/22/2019 (ECF No. 146) at 7.) The SWVC then sends the discipline file to "Iron Mountain." (Id. at 9.) Cuthbert does not personally destroy the discipline file. (Id.)

**FOF 28.**    An employee's suspension is indefinitely retained in the personnel file. (Id. at 7.)

**Discovery**

**FOF 29.**    In or about January 2018, Mazur during discovery requested that defendants produce "all versions of notes for the May 26, 2016 PDC." (Ex. 9 at 8.) On February 23, 2018, defendants responded to the request, in pertinent part, as follows: "Defendants stated that personal written notes were purge[d]in July 2016 after the grievance was settled." (Id.) On at least one occasion counsel for defendants signed a letter which provided that response to Mazur's request for the handwritten PDC Notes. (ECF No. 59-1 at 27.)

**FOF 30.**    On February 8, 2018, Mazur filed a motion to compel discovery seeking, among other things, a court order directing defendants to respond properly to her request for all written notes from her PDC. (ECF No. 50 ¶ 7.)

**FOF 31.**    Counsel for defendants responded to Mazur's motion to compel as follows:

> Finally, with respect to Plaintiff's claims of destruction of evidence or spoliation, the Defendants have not destroyed any documents per se related to this matter. As far as undersigned counsel is aware, only personal handwritten notes were purged immediately after being used to draft or supplement official documents. This is a standard and routine business practice. No other documents relevant to this matter have been destroyed or purged.

(ECF No. 59 ¶ 13.)

**FOF 32.**     Counsel for defendants requested Cuthbert to forward to him notes from the PDC. (H.T. 1/22/2019 (ECF No. 146) at 11.) Cuthbert testified that she forwarded to counsel for defendants "[a]nything that was in the file." (<u>Id.</u> at 11-12.)

**FOF 33.**     Attached to defendants' proposed findings of fact and conclusions of law is an affidavit by Cuthbert. (ECF No. 152-1.)[2]

**FOF 34.**     The affidavit, in pertinent part, provides:

a. following the evidentiary hearing Cuthbert, with the assistance of an "IT Specialist," obtained the metadata for the documents on her computer and on the R:Drive related to Mazur's PDC (<u>id.</u> ¶¶ 4, 6);

b. the documents were in ".pdf" format because her "general practice is to initiate the document in Word…scan it into a ".pdf" document…then delete the original Word document" (<u>id.</u> ¶ 5);

c. Cuthbert and the "IT Specialist" performed the same review "for documents in a folder on…[her] computer labeled 'Warden PDC'" (<u>id.</u> ¶ 7);

d. Cuthbert did not locate any documents on her computer "related to any preliminary notes for the minutes from…Mazur's PDC" (<u>id.</u> ¶ 8);

e. Cuthbert, however, also searched the "archived paper files and found the file for Mazur's PDC" (<u>id.</u> ¶ 9);

f. in the archived paper file Cuthbert found her handwritten notes, including "a word-processed document that is used as a starting draft for all PDC minutes" and ten pages of handwritten notes (<u>id.</u> ¶ 9); and

g. Cuthbert also located in the archived paper files a "word-processed document that is used as a starting draft for all PDC minutes," and "two additional pages that appear to be from a word-processed document" (<u>id.</u> ¶ 10).

**<u>Bank Teller Sheet</u>**

---

[2]     The original affidavit produced was unsigned because, according to defendants, Cuthbert was on medical leave. On May 3, 2019, defendants produced a signed copy of the affidavit. (ECF No. 154 -1.)

**FOF 35.**     The missing $500.00 involved Mazur obtaining money from a bank teller named Becky on May 16, 2016. (H.T. 1/22/2019 (ECF No. 146) at 33, 50-51.)

**FOF 36.**     On May 17, 2016, Mazur asked Lindsay "to retrieve the teller sheet from the bank where it showed the denominations of the…replenishment money from May 16, 2016[,]" i.e., the bank teller sheet. (H.T. 1/22/2019 (ECF No. 146) at 50.)

**FOF 37.**     The next day, Mazur asked Lindsay if he retrieved the bank teller sheet. (H.T. 1/22/2019 (ECF No. 146) at 50.) Lindsay told Mazur he obtained the bank teller sheet. (Id.) Mazur asked Lindsay "if the bank teller sheet added up to the amount of the replenishment check." (Id.) He answered in the affirmative. (Id.)

**FOF 38.**     On June 1, 2016, Mazur emailed Cuthbert and requested, among other things, "the bank paper where Becky wrote the denominations and amounts of each denomination." (Ex. 18 at 1.)

**FOF 39.**     On the same day, Cuthbert forwarded Mazur's request to McClain-Miller, Kreiser, Richard Adams, and Lowen and wrote: "Would you care to respond or shall I? Thank you." (Ex. 18 at 1.)

**FOF 40.**     The bank teller sheet requested by Mazur was a "scrap piece…of paper…used to write the denomination of the bills and the quantity of each bill denomination…[that the SWVC] was to retrieve from the bank." (H.T. 1/22/2019 (ECF No. 146) at 26.) The bank teller "would also have a similar typed note which would be on a scrap piece of paper…." (Id.)

**FOF 41.**     The bank teller sheet would show how much money the person receiving the deposit *should* have in his or her possession leaving the bank. (H.T. 1/22/2019 (ECF No. 146) at 33.)

**FOF 42.**     Defendants agreed with Mazur that the bank teller sheet was consistent with her testimony about the amount of money that she should have brought back to the SWVC from the bank. (H.T. 1/22/2019 (ECF No. 146) at 59.)

**FOF 43.**     The SWVC did not "usually" receive a bank teller sheet. (H.T. 1/22/2019 (ECF No. 146) at 26.)

**FOF 44.**     Cuthbert did not know whether the bank teller sheet was brought back to the SWVC. (H.T. 1/22/2019 (ECF No. 146) at 18.)

**FOF 45.**     Cuthbert asked Lindsay whether he had the bank teller sheet referred to by Mazur. (H.T. 1/22/2019 (ECF No. 146) at 18, 31.) She believed he responded that he did not have it. (Id.)

**FOF 46.**     Defendants admitted in response to an interrogatory that Mazur told Lindsay "about the sheet that the bank teller had that listed the demonization amounts of money given to…Mazur" on May 16, 2016. (Ex. 5 ¶ 7.) Lindsay could not remember whether he provided counsel for defendants the answer to that interrogatory. (H.T. 1/22/2019 (ECF No. 146) at 23.)

**FOF 47.**     Defendants admitted in response to an interrogatory that "Lindsay retrieved the bank teller sheet or a copy of this sheet from the bank teller after…Mazur told him about it." (Ex. 6 ¶ 8.) Defendants in the same interrogatory response stated: "Lindsay does not recall." (Id.)

**FOF 48.**     Lindsay testified that although he saw the bank teller sheet he did not recall whether he "actually had it" or retrieved it from the bank. (H.T. 1/22/2019 (ECF No. 146) at 23, 26.)

**FOF 49.**     Lindsay testified that he did not know what happened to the bank teller sheet and that he did not intentionally destroy it, intentionally lose it, or remember giving it to someone. (H.T. 1/22/2019 (ECF No. 146) at 31, 32.)

**FOF 50.**     Lindsay advised Lowen that the bank teller sheet was "a scrap piece of paper." (H.T. 1/22/2019 (ECF No. 146) at 25.)

**FOF 51.**     Lindsay did not believe the bank teller sheet "had any relevance to the missing money." (H.T. 1/22/2019 (ECF No. 146) at 27.) He conceded that it may be relevant to Mazur to show that she obtained the correct amount of money from the bank. (Id. at 28.)

### III.     Conclusions of Law

**COL 1.**     Mazur's motion for sanctions raises a number of issues under the Federal Rule of Civil Procedure and this court's inherent authority to sanction a party for noncompliance with the rules of discovery. The law implicated by Mazur's motion for sanctions and its application to this case will be discussed below.

**COL 2.**     Federal Rule of Civil Procedure 26 sets forth a party's duties for producing evidence during discovery.

**COL 3.**     Rule 26(g), for example, sets forth that discovery responses must be personally signed by an attorney of record or by the party. FED. R. CIV. P. 26(g). The signature is a certification that, among other things, a party's disclosure is complete and correct and a party's response is based upon a reasonable inquiry into the facts of the case. FED. R. CIV. P. 26(g).

**COL 4.**     Rule 26(g)(3) provides that unless a party provides "substantial justification" for noncompliance with the rule, the court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." FED. R. CIV. P. 26(g)(3).

"The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Id.

COL 5.    The Federal Rules of Civil Procedure were amended in 2015 to address, among other things, spoliation of electronically stored information. FED. R. CIV. P. 37(e).[3] There is no rule of civil procedure, however, that addresses spoliation of physical evidence such as in this case, i.e., the handwritten notes and the bank teller sheet. With respect to physical evidence, the court has the inherent power to issue sanctions when it finds that a party has committed spoliation of that evidence. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 72 (3d Cir. 2012); Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994); CIGNEX Datamatics, Inc. v. Lam Research Corp., No. CV 17-320 (MN), 2019 WL 1118099, at *5 (D. Del. Mar. 11, 2019).

COL 6.    "Spoliation occur when evidence is destroyed or altered, or when a party fails to preserve evidence in instances where litigation is pending or reasonably foreseeable." Bull, 665 F.3d at 73 (citing Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1320 (Fed. Cir. 2011)).

---

[3]    Concerns have been raised in federal courts about whether a court may sanction a party for spoliation of electronically stored information based upon its inherent authority as opposed to Rule 37(e). CIGNEX Datamatics, Inc. v. Lam Research Corp., No. CV 17-320 (MN), 2019 WL 1118099, at *3 (D. Del. Mar. 11, 2019). The court in Cignex explained:

> The Advisory Committee Notes to the 2015 Amendment to Rule 37(e) state that the rule "forecloses reliance on inherent authority or state law to determine when certain measures should be used" as a sanction for a party's loss of ESI that should have been preserved. See Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment. The Supreme Court, however, has made clear that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Chambers v. NASCO, Inc., 501 U.S. 32, 49 (1991).

Id.

COL 7.        The party seeking sanctions bears the burden of proving by a preponderance of the evidence that spoliation of evidence occurred. Universal Underwriters Ins. Co. v. Dedicated Logistics, Inc., Civ. A. No. 11–1153, 2014 WL 7335668, at *4 (W.D. Pa. Dec. 19, 2014).

COL 8.        In order to establish spoliation, it must be shown that: (1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and (4) the duty to preserve the evidence was reasonably foreseeable to the party. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012) (citation omitted).

COL 9.        With respect to actual suppression of evidence, a court must determine that the relevant actor suppressed or withheld the evidence in bad faith. Id. at 79.

COL 10.        A finding of bad faith is therefore "pivotal" to a spoliation determination. Id.

COL 11.        In Bull, the Third Circuit Court of Appeals discussed the "key issue" of bad faith in the context of spoliation. Id. at 76-77. The court observed: "'*No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.*'" Id. (quoting Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir.1995) (emphasis in original)).

COL 12.        "[S]poliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance— misplaced. Withholding requires intent." Bull, 665 F.3d at 79. Negligence will not suffice. Lucia v. McClain & Co., No. CIV.A. 11-930 CCC, 2013 WL 4517976, at *16 (D.N.J. Aug. 23, 2013).

**COL 13.** Consistent with this principle, district courts within the Third Circuit have routinely distinguished between situations where "the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth," and those where "the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Brewer, 72 F.3d at 334.

**COL 14.** That a party does not know what happened to evidence that may have existed does not by itself demonstrate bad faith. Flanders v. Dzugan, No. CIV.A. 12-1481, 2015 WL 5022734, at *5-6 (W.D. Pa. Aug. 24, 2015) (failure to institute a litigation hold without a showing of bad faith not sufficient despite foreseeability of litigation); Bozic v. City of Washington, 912 F.Supp.2d 257, 270 (W.D. Pa. 2012) (finding spoliation sanctions warranted where the party's conduct "rises well above inadvertence, negligence, inexplicable foolishness, or part of the normal activities of business or daily living, any of which arguably fall outside of the spoliation definition set forth in Bull.").

**COL 15.** If the party seeking sanctions proves spoliation, the court may sanction the offending party. Dunn v. Mercedes Benz of Ft. Wash., Inc., Civ.A. No. 10–1662, 2012 WL 424984, at *4 (E.D. Pa. Feb. 12, 2012) (citing Schmid, 13 F.3d at 78–79).

**COL 16.** To determine the appropriate sanction, the court must consider: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the party seeking sanctions; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the aggrieved party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. Bull, 665 F.3d at 73 n. 5; Schmid, 13 F.3d at 79.

**COL 17.** Potential spoliation sanctions include dismissal of a claim or granting judgment in favor of the prejudiced party, suppression of evidence, an adverse inference instruction that the spoiled evidence was harmful to the offending party's case, fines, and attorneys' fees and costs. <u>Anderson v. Bd. of Sch. Dirs. of Millcreek Twp. Sch. Dist.</u>, Civ. A. No. 07–111, 2013 WL 4455496, at *33 (W.D. Pa. Aug. 16, 2013).

### Handwritten PDC Notes

**COL 18.** Defendants did not intentionally withhold Kreiser's handwritten notes, Cuthbert's handwritten notes or Lowen's typed notes from the PDC from Mazur; rather, defendants made a belated production of those documents to Mazur and those documents are now in her possession. The court, therefore, does not find that defendants engaged in spoliation with respect to the handwritten PDC Notes.

**COL 19.** Defendants' belated production of the handwritten PDC notes by Kreiser, Cuthbert, and Lowen, however, is subject to sanctions under Rule 26(g).

**COL 20.** A party in discovery has the duty to conduct a "reasonable inquiry" into the facts of a case. <u>Younes v. 7-Eleven, Inc.</u>, 312 F.R.D. 692, 705 (D.N.J. 2015).

**COL 21.** One court has explained:

> Rule 26(g) does not require perfection and does not impose an unreasonably high burden on litigants. It simply requires that a **<u>reasonable inquiry be made into the factual basis of a discovery response and that responses to discovery be complete and correct when made</u>**. Litigants must act responsibly and avoid abuse. Parties must "stop and think" about the legitimacy of a discovery response.

<u>Id.</u> (emphasis added).

**COL 22.** If a party fails to conduct a reasonable investigation of the facts of a case and the party's counsel certifies via his or her signature that the discovery responses are complete and accurate, the party, the counsel, or both may be subject to sanctions. <u>Id.</u> at 703-704

("Pursuant to the Rule an attorney's signature certifies that any disclosures were complete and accurate at the time they were made and that a reasonable inquiry was made.").

**COL 23.**     Here, the record shows that defendants in response to Mazur's discovery request for handwritten PDC notes failed to make a reasonable inquiry into the facts of this case as required by Rule 26(g).

**COL 24.**     As early as January 2018, Mazur requested the handwritten PDC notes from defendants.

**COL 25.**     Defendants, who were aware[4] of Mazur's request, knew that there existed a paper-copy personnel file and an electronic copy personal file on the R:Drive. Both files should have been searched as part of a reasonable inquiry into Mazur's request.

**COL 26.**     Cuthbert, who during her deposition could not remember whether she had handwritten or typed notes from Mazur's PDC, maintained the paper copy personnel file. Cuthbert during her deposition (at the latest) learned that Mazur was requesting the handwritten notes; indeed, Cuthbert told Mazur that she could "look and see" if she still had the handwritten notes. (Ex. 1.) Thus, when defense counsel requested that Cuthbert forward to him notes from the PDC, Cuthbert should have searched for the paper copy personnel file as well as the electronic file on the R:Drive.

**COL 27.**     Despite the failure by Cuthbert or any other agent of defendants to conduct a reasonable inquiry into whether there existed handwritten notes from the PDC in the paper personnel file, counsel for defendants certified (via his signature) defendants' discovery

---

[4]     Defendants are "charged, with knowledge of what its agents known and what is in the documents available to it." <u>Younes</u>, 312 F.R.D. at 707. Defendants, therefore, are charged with the knowledge of Cuthbert.

responses, which provided that the handwritten notes from the PDC were purged as part of defendants' standard business practices. Defendants' conduct is, therefore, sanctionable under Rule 26(g).

**COL 28.**     Before imposing sanctions, however, the court must decide whether defendants' violation of Rule 26(g) is substantially justified.

**COL 29.**     "'Substantial justification…for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" Grider v. Keystone Health Plan Central, Inc., 580 F.3d 119, 140 n.23 (3d Cir. 2009) (quoting Tolerico v. Home Depot, 205 F.R.D. 169, 175-76 (M.D. Pa. 2002)).

**COL 30.**     "The test of substantial compliance is satisfied if there is a genuine dispute concerning compliance." Id. (quoting Tolerico, 205 F.R.D. at 176).

**COL 31.**     Here, the court cannot discern a genuine dispute about whether defendants were required to search for the paper copy personnel file in order to comply with Rule 26(g).

**COL 32.**     Defendants were aware that Mazur requested the handwritten notes from the PDC, Cuthbert maintained copies of the handwritten notes in the personnel file, and Cuthbert, at the time of her deposition, had not searched for the handwritten notes in the paper copy of the personnel file.

**COL 33.**     Counsel for defendants certified (via his signature) as complete and accurate defendants' response that they did not possess the handwritten notes from the PDC.

**COL 34.**     Following this court's evidentiary hearing Cuthbert—without any objection about proportionality or burden—located the paper copy of the personnel file, which contained the Cutbert's handwritten notes and what appear to be Lowen's typed notes from the

PDC. Under those circumstances, reasonable minds would not differ about whether defense counsel's certification of defendants' discovery response, which was provided without a reasonable inquiry, violated Rule 26(g); it did.

**COL 35.**       Defendants failed to conduct a reasonable inquiry into whether there existed handwritten notes from the PDC. Thus, defendants' responses to Mazur's various requests for the handwritten PDC notes were objectively incomplete and inaccurate. Certification by defendants' counsel via his signature that the discovery responses were complete and accurate, therefore, violated Rule 26(g). Defendants' violation of Rule 26(g) is without substantial justification.[5]

**COL 36.**       Mazur's motion for sanctions will be granted with respect to the handwritten PDC notes.

**COL 37.**       The court must determine which sanction to impose upon defendants[6] as a result of their violation of Rule 26(g).

**COL 38.**       Mazur in her motion for sanctions requests a default judgment or negative inference jury instruction with respect to the handwritten PDC notes.

**COL 39.**       Default judgment, however, is an "'extreme' sanction, reserved for cases where a party has acted in 'flagrant bad faith' and 'callous disregard of [his] responsibilities.'"

---

[5]       In other words, defendants "failed to provide clearly responsive information that should have been disclosed if a reasonable investigation was done. The information at issue was readily available." Younes, 312 F.R.D. at 710.

[6]       As discussed above, the court may impose a sanction upon the party, the counsel or both. Defendants' counsel has the responsibility "to coordinat[e]…the client's discovery efforts so that responsive documents are located and produced." Younes, 312 F.R.D. at 707. Here, the court is without an adequate factual basis to determine whether imposing sanctions against the counsel is appropriate. The record is clear, however, that defendants did not undertake a reasonable inquiry into Mazur's discovery request. Defendants will, therefore, be sanctioned.

<u>Younes</u>, 312 F.R.D. at 712 (quoting <u>Nat'l Hockey League v. Metro Hockey Club</u>, 427 U.S. 639, 643 (1976)).

**COL 40.**     Here, the court does not find that defendants' behavior, which arguably was negligent or reckless, rises to the level that warrants a default judgment being entered in Mazur's favor.

**COL 41.**     The request for a negative inference jury instruction is denied as moot because defendants provided Mazur the evidence she requested, and, thus, the court cannot find defendants committed spoliation in this case.

**COL 42.**     In light of defendants' belated production of the handwritten PDC notes, the court considered, but declines to impose, the sanction of excluding the evidence in consideration of a dispositive motion or at trial. Mazur now possesses the evidence she requested and the Third Circuit Court of Appeals disfavors the sanction of exclusion of important evidence. <u>See</u> <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 749-50 (3d Cir. 1994) (applying a "more stringent review of" the district court's decision to exclude evidence).

**COL 43.**     Defendants' failure to conduct a reasonable inquiry to respond to Mazur's request for the handwritten PDC notes caused Mazur to expend money and resources to repeatedly request the evidence from defendants. Defendants will, therefore, be required to pay Mazur's out-of-pocket costs, i.e., monies Mazur paid from her own funds, to issue those repeated requests. For example, Mazur is entitled to reimbursement for monies paid to make photocopies of documents related to the motion to compel and motion for sanctions and monies paid to travel to the courthouse to argue the motion to compel and motion for sanctions. Mazur, who is pro se, is not entitled to reimbursement for her time. <u>Gomez v. Markley</u>, Civ. Action No. 07-868, 2011

WL 112886, at *3 (W.D. Pa. Jan. 13, 2011) (recognizing that a pro se litigant is not entitled to attorney's fees).

**COL 44.** Mazur within fourteen days of the issuance of these findings of fact and conclusions of law shall submit to defendants a certified affidavit setting forth an itemized statement of her reasonable out-of-pocket costs incurred each time she requested the handwritten PDC notes after her initial request and her travel expenses. Any dispute about Mazur's itemized statement shall be brought to the attention of the court via the filing of a motion to determine the reasonableness of the costs.[7]

### Bank Teller Sheet

**COL 45.** Mazur's request for sanctions with respect to the bank teller sheet is addressed under this court's inherent power to sanction a party for spoliation. Bull, 665 F.3d at 72; Schmid, 13 F.3d at 78; CIGNEX, 2019 WL 1118099, at *5.

**COL 46.** Mazur satisfied her burden to show that it is more likely than not that the bank teller sheet was in defendants' control. Mazur produced evidence to show that upon her request, Lindsay requested the bank teller sheet from the bank, acquired the bank teller sheet, and knew about contents of the bank teller sheet.

**COL 47.** Mazur satisfied her burden to show that it is more likely than not that the bank teller sheet is relevant to her claims in this case. Mazur alleges that defendants disciplined her because of her race. Defendants contend, however, that she was disciplined because of her

---

[7] Mazur in her reply brief argues that the PDC notes produced by defendants after the evidentiary hearing were manufactured. (ECF No. 153 ¶ 17.) That allegation, however, is not properly before the court, Kwasi A. v. Edwards, No. CV 18-15029 (SRC), 2019 WL 3219157, at *6 n.3 (D.N.J. July 17, 2019), and Mazur does not present any evidence in support of that allegation. To the extent Mazur has evidence to support the allegation that defendants fabricated the belatedly-produced PDC notes, she may raise the issue in an appropriately filed motion.

role in stealing or losing the $500.00. The parties dispute whether Mazur counted the money prior to leaving the bank. Mazur must prove that defendants' proffered reason for discipling her, i.e., her role in stealing or losing the $500.00, is pretext for race discrimination.

**COL 48.**    Mazur argued at the evidentiary hearing that she used the bank teller sheet to count the money at the bank. Defendants agreed that the total monetary amount on the bank teller sheet corresponded with the amount of money Mazur was to retrieve from the bank. Mazur, therefore, could rely upon the bank teller sheet to support her testimony that she counted the money prior to leaving the bank and, thus, rebut defendants' position that she was disciplined, in part, because she failed to follow protocol and count the money at the bank.

**COL 49.**    Mazur satisfied her burden to show that the duty to preserve the evidence was reasonably foreseeable to defendants. Lindsay initiated an internal and police investigation into the missing $500.00 and suspected two of his employees of wrongdoing with respect to the missing money. Mazur in an email asked Lindsay to obtain the bank teller sheet from the bank. Thus, the duty to preserve evidence relevant to those investigations would have been reasonably foreseeable to Lindsay at the time he obtained the bank teller sheet.

**COL 50.**    Mazur did not satisfy her burden to show that Lindsay or defendants in bad faith withheld or destroyed the bank teller sheet. Lindsay testified that the bank teller sheet was a scrap piece of paper. His recollection of what happened to the bank teller sheet was poor. Lindsay and defendants, however, conceded that the bank teller sheet corroborated Mazur's testimony about the denominations and total amount of the money Mazur secured from the bank. In other words, the court cannot infer from the alleged contents of the bank teller sheet that Lindsay or defendants had any incentive to purposefully destroy or withhold it from Mazur or that they had a desire to suppress the truth. Brewer, 72 F.2d at 334; Giuliani v. Springfield Twp.,

No. CIV.A. 10-7518, 2015 WL 3604343, at *8 (E.D. Pa. June 9, 2015) ("Because a finding of spoliation requires more than mere negligence I cannot here conclude that there has been spoliation of evidence given the absence of evidence that there was some bad intent or ill motive behind defendants' failure to preserve the requested evidence.").

COL 51.     Under those circumstances, Mazur cannot show that defendants' failure to produce the bank teller sheet will cause her sufficient prejudice to warrant the court granting her the extreme remedy of default judgment or instructing the jury that defendants' alleged destruction of the bank teller sheet reflects a "consciousness of guilt." Ward v. Lamanna, 334 F. App'x 487, 492 (3d Cir. 2009) ("Spoliation is a negative inference drawn from a party's destruction of relevant evidence, reflecting a 'consciousness of guilt.'"); Thompson v. Bridgeton Bd. of Educ., 9 F. Supp. 3d 446, 453 (D.N.J. 2014), aff'd, 613 F. App'x 105 (3d Cir. 2015) (explaining that even if the plaintiff could show spoliation based upon the defendants not being able to locate relevant evidence in their possession, the plaintiff could not show that he was sufficiently prejudiced to establish an entitlement to sanctions).

COL 52.     The motion for sanctions will, therefore, be denied with respect to Mazur's allegations that defendants in bad faith destroyed or withheld from her the bank teller sheet. Defendants, however, will be precluded from presenting evidence to contradict Mazur's testimony that the total monetary amount on the bank teller sheet corresponded with the amount of money she was supposed to retrieve from the bank; indeed, defendants must stipulate to that fact.

### IV.     Conclusion

The court will grant in part and deny in part Mazur's motion for sanctions. The court will sanction defendants for their failure to comply with Rule 26(g) with respect to the handwritten

PDC notes. Defense counsel certified that defendants' discovery responses were complete and accurate. Defendants, however, did not conduct a reasonable investigation to find the handwritten notes from Mazur's PDC. Defendants must, therefore, pay the reasonable out-of-pocket costs incurred by Mazur in repeatedly requesting the handwritten PDC notes from defendants and attending the hearings with respect to those requests. Mazur within fourteen days of the issuance of these findings of fact and conclusions of law shall submit to defendants a certified affidavit setting forth an itemized statement of her reasonable out-of-pocket costs, including travel costs, incurred each time she requested the handwritten PDC notes after her initial request. Any dispute about Mazur's itemized statement shall be brought to the attention of the court via the filing of a motion to determine the reasonableness of the costs on the court's docket.

Mazur did not satisfy her burden to show that defendants in bad faith destroyed the bank teller sheet. The motion for sanctions with respect to the bank teller sheet will, therefore, be denied. Defendants, however, must stipulate that the total monetary amount on the bank teller sheet corresponded with the amount of money Mazur was to retrieve from the bank.

An appropriate order will be entered.

BY THE COURT,

Dated: August 7, 2019

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Court Judge